1  Thomas R. Burke (CA State Bar No. 141930)
   DAVIS WRIGHT TREMAINE LLP
2  505 Montgomery Street, Suite 800
   San Francisco, California  94111
3  Telephone:      (415) 276-6500
   Facsimile:      (415) 276-6599
4  Email:          thomasburke@dwt.com

5  Matt Zimmerman (CA State Bar No. 212423)
   ELECTRONIC FRONTIER FOUNDATION
6  454 Shotwell Street
   San Francisco, CA 94110
7  Telephone:      (415) 436-9333
8  Facsimile:      (415) 436-9993
   Email:          mattz@eff.org
9

10  Attorneys for Defendant Council on American-Islamic
    Relations of Santa Clara, Inc.
11

12              IN THE UNITED STATES DISTRICT COURT

13              THE NORTHERN DISTRICT OF CALIFORNIA

14                   SAN FRANCISCO DIVISION

15  MICHAEL SAVAGE,                    )  Case No. CV07-06076 SI
                                       )
16            Plaintiff,               )  **DEFENDANT'S NOTICE OF MOTION
                                       )  AND MOTION FOR JUDGMENT ON
17       v.                            )  THE PLEADINGS; MEMORANDUM OF
                                       )  POINTS AND AUTHORITIES
18  COUNCIL ON AMERICAN-ISLAMIC        )  SUPPORTING MOTION FOR
    RELATIONS, INC., COUNCIL ON        )  JUDGMENT ON THE PLEADINGS**
19  AMERICAN ISLAMIC RELATIONS ACTION  )
    NETWORK, INC., COUNCIL ON AMERICAN )  **[Fed. R. Civ. P. 12(c)]**
20  ISLAMIC RELATIONS OF SANTA CLARA,  )
    INC., and DOES 3-100,              )  Date:  March 7, 2008
21                                     )  Time: 9:00 a.m.
              Defendants.              )  Courtroom 10, 19th Floor
22  _____)  Honorable Susan Illston

23  TO PLAINTIFF MICHAEL SAVAGE AND HIS COUNSEL OF RECORD:

24       PLEASE TAKE NOTICE that on March 7, 2008, at 9:00 a.m. or as soon thereafter as

25  counsel may be heard in the Courtroom of the Honorable Susan Illston, located at 450 Golden

26  Gate Avenue, San Francisco, California, defendant Council on American-Islamic Relations of

27  Santa Clara, Inc., referred to herein as ("CAIR"), will and hereby does move this Court, pursuant

28  to Federal Rule of Civil Procedure 12(c), for an order granting judgment on the pleadings to it on

DAVIS WRIGHT TREMAINE LLP

1  the ground that Plaintiff Michael Savage has failed to state a claim upon which relief can be

2  granted.

3      Plaintiff fails to plead a claim for copyright infringement (his first cause of action) because

4  CAIR's use of limited audio excerpts of Plaintiff's radio program is protected by the First

5  Amendment and the Copyright Act.  17 U.S.C. § 107; *see Hustler Magazine Inc. v. Moral*

6  *Majority, Inc.*, 796 F.2d 1148, 1153-1155 (9th Cir. 1986).

7      Plaintiff also fails to plead a claim for civil RICO (his second cause of action) for four

8  independent reasons:

9      (1)    Plaintiff has no standing because he has not alleged an injury (i.e., an actual, out-

10  of-pocket financial loss) resulting from any conduct by CAIR, and any possible injury was self-

11  inflicted;

12      (2)    Plaintiff has failed to give CAIR notice of the portions of the RICO statutes upon

13  which he is making his claims, as he must, and has failed to meet the heightened pleading

14  requirements mandated by Federal Rule 9(b) for racketeering claims that are predicated on mail

15  fraud, wire fraud, or any other type of fraud;

16      (3)    Plaintiff has substantively failed to alleged an association-in-fact enterprise against

17  CAIR with the necessary shared purpose;

18      (4)    Even if Plaintiff could show some injury as a result of CAIR's alleged conduct,

19  which he cannot, Plaintiff still has not stated a RICO claim because he has not pled (and cannot

20  plead) that CAIR's conduct proximately caused any injuries to Plaintiff.

21      Finally, Plaintiff's claims for copyright infringement and RICO are also independently

22  barred by the protections for free speech guaranteed by the First Amendment and California's

23  Constitution.

24      CAIR's Motion for Judgment on the Pleadings is based on this Notice; on the attached

25  Memorandum of Points and Authorities; on the accompanying declaration of Dr. Parvez Ahmed

26  and attached exhibits, all pleadings, files and records in this action; and on such other argument as

27  may be received by this Court at the hearing on this Motion.  CAIR respectfully requests that this

28  Court grant its Motion for Judgment on the Pleadings and enter judgment in its favor against

DAVIS WRIGHT TREMAINE LLP

2

1    Plaintiff Michael Savage on each of his claims.

2         DATED this 30th day of January 2008.

3                                    DAVIS WRIGHT TREMAINE LLP

4                                    ELECTRONIC FRONTIER FOUNDATION

5                                    By:    /s/  Thomas R. Burke
6                                         THOMAS R. BURKE
                                          Attorneys for Defendant Council on
7                                         American-Islamic Relations of Santa
                                          Clara, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV07-06076 SI
CAIR'S MEM. OF PTS & AUTH. ISO MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT ................................................................................................ 1

II.   FACTUAL SUMMARY ....................................................................................................... 3

III.  ARGUMENT ....................................................................................................................... 4

    A.    Savage's Copyright Infringement Claim is Barred by the
        Doctrine of Fair Use. ............................................................................................. 4

        1.    Factor 1:  The Purpose and Character of the Use
              Favors CAIR. ........................................................................................... 6

        2.    Factor 2:  The Nature of the Copyrighted Work Favors
              CAIR. ....................................................................................................... 9

        3.    Factor 3:  The Amount and Substantiality of the
              Portion Used Favors CAIR. ..................................................................... 10

        4.    Factor 4:  The Effect of the Use Upon the Potential
              Market For or Value of the Copyrighted Work Favors
              CAIR. ..................................................................................................... 11

    B.    Savage's RICO Claim Fails and Should be Dismissed As a
        Matter of Law. ....................................................................................................... 12

        1.    Savage Lacks Standing To Bring A RICO Claim
              Against CAIR Because He Has Not And Cannot
              Allege a Cognizable Injury. .................................................................... 13

        2.    Savage Fails to Satisfy the Heightened Pleading
              Requirements For a RICO Claim. ............................................................ 14

        3.    Savage Fails to Properly Plead the Required Elements
              of a RICO Claim. ..................................................................................... 17

    C.    The First Amendment Independently Bars Savage's Baseless
        Claims. ................................................................................................................... 21

IV.   CONCLUSION ..................................................................................................................... 24

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abend v. MCA, Inc.*,
    863 F.2d 1465 (9th Cir. 1988)................................................................................... 7

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ................................................................................................ 23

*Ass'n of Wash. Pub. Hosp. Dists. v. Phillip Morris Inc.*,
    241 F.3d 696 (9th Cir. 2001) .................................................................................. 23

*Binghamton Masonic Temple, Inc. v. Bares*,
    168 F.R.D. 121 (N.D.N.Y. 1997) .............................................................................. 3

*Blatty v. New York Times Co.*,
    42 Cal.3d 1033 (Cal. 1986) ............................................................................. 25, 27

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ................................................................................ 18

*Bose Corp. v. Consumers Union of United States, Inc.*,
    466 U.S. 485 (1984) ................................................................................................ 25

*Burnett v. Twentieth Century Fox Film Corp.*,
    491 F.Supp.2d 962 (C.D.Cal. 2007)..................................................................... 4, 7

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ........................................................................................ passim

*Castle Rock Entertainment. Inc. v. Carol Publishing Group, Inc.*,
    150 F.3d 132 (2d Cir. 1998) .................................................................................... 11

*Daly v. Viacom, Inc.*,
    238 F.Supp.2d 1118 (N.D. Cal. 2002) ..................................................................... 5

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) .................................................................................. 15

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2004)................................................................................. 18

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) .................................................................................................. 6

*Elvis Presley Enterprises v. Passport Video*,
    357 F.3d 896 (9th Cir. 2003).................................................................................... 6

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
    12 F. Supp. 2d 1068 (C.D. Cal. 1998)................................................................... 25

*Fireman's Fund Insurance Co. v. Stites*,
    258 F.3d 1016 (9th Cir. 2001)................................................................................ 15

*Fisher v. Dees*,
    794 F.2d 432 (9th Cir. 1986)............................................................................. 6, 13

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002)................................................................................ 26

*Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary Workers*,
    542, F.2d 1076 (9th Cir. 1976)............................................................................... 26

DAVIS WRIGHT TREMAINE LLP

ii

DAVIS WRIGHT TREMAINE LLP

*H.G. Gallimore, Inc. v. Abdula,*
   652 F. Supp. 437 (N.D. Ill. 1987) ............................................................. 22

*H.J., Inc. v. Northwestern Bell Tel. Co.,*
   492 U.S. 229 (1989) ................................................................................. 21

*Harper & Row, Publishers, Inc. v. Nation Enterprises,*
   471 U.S. 539 (1985) ........................................................................... 6, 10

*Holmes v. Securities Investor Protection Corp.,*
   503 U.S. 258 (1992) ........................................................................... 14, 23

*Hustler Magazine Inc. v. Moral Majority, Inc.,*
   796 F.2d 1148 (9th Cir. 1986) ......................................................... passim

*Jartech, Inc. v. Clancy,*
   666 F.2d 403 (9th Cir. 1982) ..................................................................... 9

*Keep Thomson Governor Committee v. Citizens for Gallen Committee,*
   457 F. Supp. 957 (D.N.H. 1978) .............................................................. 10

*Los Angeles News Service v. Reuters Television Intern., Ltd.,*
   149 F.3d 987 (9th Cir. 1998) ................................................................... 11

*Lubin v. Sybendon Corp.,*
   688 F. Supp. 1425 (S.D. Cal. 1988) .......................................................... 3

*Maxtone-Graham v. Burtchaell,*
   803 F.2d 1253 (2d Cir. 1986) .................................................................... 9

*Metabolife Int'l v. Wornick,*
   213 F. Supp. 2d 1220 (S.D. Cal. 2002) .................................................... 25

*Nat'l Ass'n of Gov't Employees v. BUCI Television, Inc.,*
   118 F. Supp. 2d 126 (D. Mass. 2000) ...................................................... 11

*Neitzke v. Williams,*
   490 U.S. 319 (1989) ................................................................................... 2

*New Era Publications Int'l Aps v. Carol Pub. Group,*
   904 F.2d 152 (2d Cir. 1990) ...................................................................... 9

*New York Times Co. v. Sullivan,*
   376 U.S. 254 (1964) ........................................................................... 25, 27

*NXIVM Corp. v. Ross Institute,*
   364 F.3d 471 (2nd Cir. 2004) .................................................................... 6

*Odom v. Microsoft Corp.,*
   486 F.3d 541 (9th Cir. 2007) ................................................................... 20

*Ove v. Gwinn,*
   264 F.3d 817 (9th Cir. 2001) ................................................................... 19

*Pelletier v. Zweifel,*
   921 F.2d 1465 (11th Cir. 1991) ............................................................... 16

*Plount v. American Home Assurance Co.,*
   668 F. Supp. 204 (S.D.N.Y. 1987) ........................................................... 22

*Reddy v. Litton Industries, Inc.,*
   912 F.2d 291 (9th Cir. 1990) ................................................................... 16

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ................................................................................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

*Roth Greeting Cards v. United Card Co.*,
    429 F.2d 1106 (9th Cir. 1970)........................................................................................ 5

*S.O.S., Inc. v. Payday Inc.*,
    886 F.2d 1081 (9th Cir. 1989)........................................................................................ 5

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ..................................................................................................... 16

*Slattery v. Costello*,
    586 F. Supp. 162 (D.D.C. 1983) .................................................................................. 16

*Taus v. Loftus*,
    40 Cal.4th 683 (2007)................................................................................................... 24

*Trollinger v. Tyson Foods, Inc.*,
    370 F.3d 602 (6th Cir. 2003)........................................................................................ 23

*United Energy Owners Comm., Inc. v. United Energy Management Sys.*,
    837 F.2d 356 (9th Cir. 1988)........................................................................................ 21

*United States ex rel Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (1999)...................................................................................................... 24

*United States v. Turkette*,
    452 U.S. 576 (1981) ..................................................................................................... 20

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)...................................................................................... 17

*Wall Data Inc. v. Los Angeles County Sheriff's Dept.*,
    447 F.3d 769 (9th Cir. 2006)........................................................................................ 10

*Wasco Prods. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2005)........................................................................................ 17

**Statutes**

17 U.S.C. § 107 ...................................................................................................... passim

17 U.S.C. § 411 ............................................................................................................... 5

18 U.S.C. § 1961(1) ................................................................................................. 14, 15

18 U.S.C. § 1962 ............................................................................................... 14, 15, 17

18 U.S.C. § 1962(a) – (d) ....................................................................................14, 17, 18

18 U.S.C. §§ 1961 – 1968 ............................................................................................. 15

28 U.S.C. § 1653 ............................................................................................................ 5

Cal. Code of Civ. Proc. § 425.16 ................................................................................. 22

Federal Rule of Civil Procedure 12(d) .......................................................................... 5

**Other Authorities**

Pierre Leval, *Toward a Fair Use Standard*,
    103 Harv. L. Rev. 1105, 1110 (1990) ............................................................................ 6

DAVIS WRIGHT TREMAINE LLP

iv

# MEMORANDUM OF POINTS & AUTHORITIES

## I.    SUMMARY OF ARGUMENT

In Plaintiff Michael Savage's view, Muslims in this country are "throwbacks" who should be deported "without due process." He believes the Quran is a "book of hate" that teaches slavery. Savage is not at all secretive about these beliefs: taking full advantage of his First Amendment freedoms, he broadcast these views on his nationally syndicated daily radio talk show – "The Savage Nation" – which reportedly reaches millions of listeners. It should go without saying that Savage's critics have an equally strong First Amendment right to criticize and even condemn what they believe is Savage's outright bigotry. After all, even Savage believes that "[i]t is the essence of freedom that voices can be raised strongly and without fear of illegal retaliation." *See* Plaintiff's Amended Complaint[1] ("Compl.") at ¶ 42.

But Savage cannot handle criticism. Not content with his talk show megaphone, he filed a 172-paragraph legal broadside laced with falsities and xenophobic fantasies to punish and intimidate the Council for American-Islamic Relations ("CAIR").[2] In CAIR's role as the nation's largest Muslim civil rights organization, it responded to anti-Muslim and anti-CAIR remarks broadcast by Savage with a detailed criticism on its web site (www.cair.com) that included audio excerpts from Savage's radio program. *See* Declaration of Dr. Parvez Ahmed ("Ahmed Decl."), Exhibit A. CAIR's actions, Savage alleges, led several national advertisers to abandon his program. Compl. at ¶ 36. Notably, Savage does not bring any claims that CAIR made any false or tortious statement about him. Instead, he complains that CAIR infringed his copyright and engaged in a fantastic RICO scheme. This Court should immediately recognize Savage's frivolous copyright and RICO claims for what they are: an assault on CAIR's First Amendment-protected free speech rights – claims that should be summarily dismissed with prejudice.

---

[1] Savage's original Complaint for copyright infringement only, against defendant Council on American-Islamic Relations, Inc., was filed on December 3, 2007. On December 25, 2007, Savage amended his action to name additional defendants and added the civil RICO claim. No other CAIR entity has been served by Savage.

[2] For the purposes of this motion, defendant Council on American-Islamic Relations of Santa Clara, Inc. is referred to as ("CAIR").

DAVIS WRIGHT TREMAINE LLP

1    CAIR's use of limited audio excerpts from Savage's radio program is, without question,

2  speech protected not only by the First Amendment but explicitly by the Copyright Act. 17 U.S.C.

3  § 107; see *Hustler Magazine Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1153-55 (9th Cir. 1986).

4  The fair use doctrine exists precisely to prevent copyright holders from doing what Savage attempts

5  here – abusing a limited monopoly granted to encourage creativity to punish dissenters and to chill

6  speech aimed at criticizing copyrighted works. For all of his ironic appeals to the First Amendment,

7  Savage asks this Court to punish CAIR for publicly criticizing the offensive content of his radio

8  program. That CAIR's criticism might result in Savage losing popularity (and advertisers) is of no

9  moment to either a free speech or copyright infringement analysis and indeed, should be expected in

10 the marketplace of ideas that the First Amendment and Copyright Act strongly protect. As a matter

11 of law, Savage's copyright infringement claim must be dismissed.

12    In his second claim for alleged civil RICO violations, Savage casts CAIR as a menacing

13 hydra, alleging – without any justification – CAIR's connection to every terrorist attack of the last

14 fifteen years and, most incredibly, blaming this *civil liberties organization* for the 9/11 attacks in

15 New York City and at the Pentagon. Savage's RICO claim must be dismissed as a matter of law for

16 several independent reasons, including Savage's lack of standing (*e.g.*, he has not alleged any injury

17 and any loss of advertisers he may have suffered was self-inflicted); his failure to provide CAIR

18 with the required Rule 9 notice of what his RICO claims are based on or to satisfy the rule's

19 heightened pleading requirements; failure to allege an association-in-fact enterprise against CAIR;

20 and failure to plead how CAIR's conduct proximately caused him any injury. *See infra* at 12 - 21.

21 While Savage's wholly unsubstantiated RICO allegations – based on innuendo and patently false

22 assertions of fact – may pass as entertainment on "The Savage Nation," in this legal forum it is

23 obvious that his RICO claim was added to harass and intimidate CAIR for exercising its

24 constitutionally-protected rights. This Court should not countenance Savage's delusional scenarios

25 and should summarily dismiss this claim.[3]

26

27 [3] *See, e.g.*, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (dismissal of complaint appropriate when based on "fanciful factual allegation[s]"); *Lubin v. Sybendon Corp.*, 688 F. Supp. 1425, 1443 (S.D. Cal. 1988) (dismissing RICO causes of action for failure to state a claim and lambasting plaintiff for

28 the "dragnet tactic of indiscriminately grouping all of the individual defendants into one *wrongdoing monolith*") (emphasis added); *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 127

2

DAVIS WRIGHT TREMAINE LLP

## II.    FACTUAL SUMMARY

Plaintiff Michael Savage is the host of "The Savage Nation," a nationally-syndicated radio program that Savage alleges "reaches eight million listeners per week." Compl. at ¶ 2.[4]  On October 29, 2007, during his two-hour long radio program, among other things, Savage said the following about Muslims and, specifically, about CAIR:

> I'm not gonna put my wife in a hijab and I'm not gonna put my daughter in a burqa. And I'm not getting on my all fours and praying to Mecca. And you can drop dead if you don't like it. You can shove it up your pipe. I don't want to hear any more about Islam. I don't want to hear one more word about Islam. Take your religion and shove it up your behind. I'm sick of you....

> Your Bible has been revised several times. The Jewish Bible has been revised several times. Not the Quran though. They still live in the 7th century. Kill homosexuals. Cut the clitoris off women. Put women in dark clothing. Cut off anyone's head who doesn't agree with you. [Yells] What kind of religion is this? What kind of world are you living in that you let them in here with that throw back document in their hand, which is a book of hate. Don't tell me I need reeducation. They need deportation. I don't need reeducation. Deportation not reeducation. You can take C-A-I-R and throw them out of my country. I'd raise the American flag, and I'd get out my trumpet if you did it. Without due process. You can take your due process and shove it....

> Throwback bastards. I'm so sick of them. I'm so sick of the brainwashing about Islam and Muslims and the Quran [Yells] shove it! Shove it all! I'm sick of it! Take the music off. I have never lived through a brainwashing like I've lived through for the past 5 years. Everyday another story sweet-selling Islam and the Quran. It goes in the face, it's so counter-intuitive. Wherever you look on the Earth there's a bomb going off or a car going up in flames, and its Muslims screaming for the blood of Christians or Jews or anyone they hate. And everyday we're told the opposite here. Everything we know to be true, we're told 'oh don't believe what your mind tells you, believe what the diversity trainers tell you, believe what the government tells you: it's a religion of peace.' Well why don't they prove it's a religion of peace? Why don't they put down their hateful little book for a few minutes and tell us why when we pick up their hateful little book. I can read chapter and verse. I can see what it says in their book of hate. It says that if you see a stranger who is not a Muslim, either convert him or kill him. You want me to quote the Sutra? [Yells] I'll quote the Sutra! Page after page after page is about religion, a religion that teaches convert or kill, a religion that says oppress women, kill homosexuals, kill the Jew, kill the Christian, kill the infidel, page after page after page, and we're supposed to sit here and listen to this rubbish about a religion of peace, and every day Bush brings in thousands or more of these throwbacks. Throwbacks! Wearing medieval costumes, walking around, spitting on the ground every time they see a Christian or a Jew or a so-called infidel. These throwbacks think they're better than you underneath it all. And 90% of them are on welfare. [Yells] 90% of them come in here, and all they do is breed more bombers. [Yells] More bombers and more

---

(N.D.N.Y. 1997) (finding plaintiffs' RICO claim "has no chance of success" and sanctioning plaintiffs because they "believed that a *compilation of unsubstantiated allegations* was all that was necessary to bring a claim before the Court") (emphasis added).

[4] Savage further alleges that his web site, www.MichaelSavage.com, where his radio program may be heard every weekday, "receives 2.3 million page views per month." Compl. at ¶ 2.

3

DAVIS WRIGHT TREMAINE LLP

1    bombers!  And you're telling me this is a sane country?  There I gave it to you from the bottom of my heart.  If you don't like it, it's too damn bad.  Go write the FCC….

2    It's time to stop hiding behind your pillow.  [Yells] Speak it out at the supermarket!  Tell
3    them what you think of Islam.  Tell them what you think of Muslims.  Tell them what you think of these things.  Stop hiding what you feel.  Say it to everybody that you meet.  Let
4    them prove it's a religion of peace!  Say it on the supermarket line, and don't care what stares you get from those dumb idiots who are checking out behind you with their Cracker Jacks.
5    Say it to everybody you meet wherever you go.  If America started to say it like it is, we could take the country back from the maniacs who are bringing them in by the tens of
6    thousands.  What sane nation that worships the U.S. Constitution, which is the greatest document of freedom ever written, would bring in people who worship a book that tells them
7    the exact opposite?

8    Make no mistake about it, the Quran is not a document of freedom.  The Quran is a document of slavery and chattel.  It teaches you that you are a slave.

9    In response to Savage's remarks, CAIR posted on its website, www.cair.com, a detailed

10   criticism of Savage's anti-Muslim and anti-CAIR commentary entitled, "National Radio Host Goes

11   On Anti-Muslim Tirade," explaining CAIR's vigorous objections to Savage's remarks and placing

12   its criticisms in a larger cultural and historical context.  *See* Ahmed Decl., Exhibit A.  CAIR also

13   posted an audio file containing the above-quoted excerpts from "The Savage Nation," which when

14   played in its entirety, runs for four minutes and 13 seconds.  Compl. at ¶ 24.  Savage alleges that

15   CAIR's unauthorized use of his remarks was taken out of context and that CAIR's "misportrayals"

16   destroyed the value of his material and led to lost advertisers.  Compl. at ¶¶ 34, 35; *see also* Ahmed

17   Decl., Exhibits A & B.

18   When considering a motion on the pleadings, courts may consider exhibits submitted or

19   referenced in the complaint and matters that may be judicially noticed pursuant to Federal Rule of

20   Evidence 201.  *See, e.g., Burnett v. Twentieth Century Fox Film Corp.*, 491 F.Supp.2d 962, 966

21   (C.D.Cal. 2007).  Indeed, "documents specifically referred to in a complaint, though not physically

22   attached to the pleading, may be considered where authenticity is unquestioned."  *Id.*, citing *Daly v.*

23   *Viacom, Inc.*, 238 F.Supp.2d 1118, 1121-22 (N.D. Cal. 2002) (considering television program

24   referenced in, but not attached to, complaint).  *See e.g.,* Ahmed Decl., Exhibits A & B.

25   ### III.    ARGUMENT

26   **A.    Savage's Copyright Infringement Claim is Barred by the Doctrine of Fair Use.**

27   Savage's copyright infringement claim alleges that CAIR "misappropriated copyright

28   protected material from Michael Savage and made this material available on its website."

DAVIS WRIGHT TREMAINE LLP

4

1    Complaint at ¶ 27.[5]  Savage's copyright claim is barred as a matter of law by the doctrine of fair use.

2    Section 107 of the Copyright Act of 1976 protects the fair use of another's copyrighted work:

3    [T]he fair use of a copyrighted work ... for purposes such as criticism [and] comment ... is
      not an infringement of copyright.  In determining whether the use of a made work in any
4    particular case is a fair use the factors to be considered shall include:

5    (1)  the purpose and character of the use, including whether such use is of a
           commercial nature or is for nonprofit educational purposes;
6
      (2)  the nature of the copyrighted work;
7
      (3)  the amount and substantiality of the portion used in relation to the copyrighted work
8          as a whole; and

9    (4)  the effect of the use on the potential market for or value of the copyrighted work.

10   17 U.S.C. § 107.

11        The fair use doctrine is a necessary limitation to the exclusive rights granted to copyright

12   holders and "is intended to preserve the values enshrined in the First Amendment." *Elvis Presley*

13   *Enterprises v. Passport Video*, 357 F.3d 896, 898 (9th Cir. 2003).  *See also Eldred v. Ashcroft*, 537

14   U.S. 186, 219-20 (2003) ("copyright law contains built-in First Amendment accommodations,"

15   including the fair use defense, which "allows the public to use not only facts and ideas contained in

16   a copyrighted work, but also expression itself in certain circumstances."); *Campbell v. Acuff-Rose*

17   *Music, Inc.*, 510 U.S. 569, 579 (1994) (parody and other forms of criticism "can provide social

18   benefit, by shedding light on an earlier work, and, in the process, creating a new one."); *NXIVM*

19   *Corp. v. Ross Institute*, 364 F.3d 471, 482 (2nd Cir. 2004) ("If criticisms on defendants' websites kill

20   the demand for plaintiffs' service, that is the price that, under the First Amendment, must be paid in

21   the open marketplace for ideas.")  As now Second Circuit Judge Pierre Leval put it, "[f]air use

22   should not be considered a bizarre, occasionally tolerated departure from the grand conception of

23   ───────────────
      [5] Savage fails to plead that he has registered the copyright to the material in question, a prerequisite
24   to bringing a copyright infringement claim.  17 U.S.C. § 411.  *See e.g., S.O.S., Inc. v. Payday Inc.*,
      886 F.2d 1081, 1085 (9th Cir. 1989) ("Registration is not a prerequisite to a valid copyright,
      although it is a prerequisite to a suit.").  However, based on a review of the Copyright Office's
25   online searchable database, it appears that registration for the October 29, 2007 broadcast was
      granted to Savage on December 12, 2007.  Without waiving its right to contest Savage's ownership
26   of the work should this action not be dismissed, CAIR hereby consents to a supplementation of
      Savage's Complaint (under, for example, Federal Rule of Civil Procedure 12(d) and/or 28 U.S.C. §
27   1653) to include an allegation that Savage has registered the copyright to the October 29, 2007,
      episode of the "Michael Savage Show."  *See, e.g., Roth Greeting Cards v. United Card Co.*, 429
28   F.2d 1106, 1009 (9th Cir. 1970) (pretrial conference order constituted in effect an amended pleading
      resolving jurisdictional problems related to copyright registration requirement).

DAVIS WRIGHT TREMAINE LLP

5

SFO 401564v1 0050022-000041

1  the copyright monopoly.  To the contrary, it is a necessary part of the overall design."  Pierre Leval,

2  *Toward a Fair Use Standard*, 103 Harv. L. Rev. 1105, 1110 (1990).

3      Fair use is a "mixed question of law and fact."  *Harper & Row, Publishers, Inc. v. Nation*

4  *Enterprises*, 471 U.S. 539, 560 (1985).  However, the Court may make a fair use determination as a

5  matter of law – and should not hesitate to do so in this case where the operative facts are presumed

6  or admitted.  *See, e.g., Fisher v. Dees*, 794 F.2d 432, 435-36 (9th Cir. 1986) (finding fair use where

7  the material facts were not at issue or were admitted; judgments pertaining to fair use "are legal in

8  nature" and are to be made by the court); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1468 (9th Cir. 1988)

9  (stating that appellate court may decide fair use defense as a matter of law if the district court found

10  sufficient facts to evaluate each of the statutory factors); *Burnett v. Twentieth Century Fox Film*

11  *Corp.*, 491 F.Supp.2d 962, 967 (C.D. Cal. 2007) (finding fair use for defendant at motion to dismiss

12  stage where all allegations in the complaint were viewed in the light most favorable to the plaintiff).

13      Applying the four fair use factors to this case, there can be no question that CAIR is entitled

14  to dismissal of Savage's copyright infringement claim.

15      **1.**    **Factor 1:  The Purpose and Character of the Use Favors CAIR.**

16      The first factor examines the "purpose and character of the use."  The use of copyrighted

17  works for criticism and commentary is expressly contemplated by the Copyright Act.  *See* 17 U.S.C.

18  § 107; *see, e.g., Campbell,* 510 U.S. at 583 (commentary and criticism "traditionally have had a

19  claim to fair use protection").

20      There is no dispute that the purpose and character of CAIR's use of the limited audio

21  excerpts of "The Savage Nation" was to publicly criticize and comment on Savage's anti-Muslim

22  commentary.  Savage alleges, for example:

23  •    "At all times relevant herein, CAIR was and is a political organization that advocates
   a specific political agenda on behalf of foreign interests."  Compl. at ¶ 26.

24

25  •    "The CAIR misappropriation was done for political purposes unrelated to civil rights
   and unrelated to CAIR's tax exempt status."  Compl. at ¶ 28.

26  •    "The stolen material as repackaged by CAIR was intended to portray both the
   material and the creator of the material, Michael Savage as having a blanket

27      opposition to a particular religion."  Compl. at ¶ 32.

28  •    "The conduct of CAIR (in addition to raising money) in violating the copyright

*DAVIS WRIGHT TREMAINE LLP*

6

1    interests of Michael Savage was to gain media attention and control so that CAIR would be see as the 'moderate' voice in the media." Compl. at ¶ 42.

2    Collectively, these paragraphs and the other paragraphs in the Complaint merely allege that

3    CAIR used the limited audio excerpts to attract public criticism of Savage's comments. The

4    monopoly bestowed by copyright does not entitle the copyright holder to insulate himself from

5    criticism of his work. Indeed, the fair use doctrine assures just the opposite.

6    That Savage further alleges that CAIR's posting of the limited audio excerpts on its web site

7    was for "fundraising" purposes is of no consequence. First, the CAIR materials referenced in the

8    Complaint[6] do not support this conclusion and instead underscore that CAIR primarily posted the

9    audio excerpts on its web site to publicly criticize Savage's repeatedly articulated negative opinions

10    of Muslims and the Islamic faith. Its online criticism to which Savage objects in his Complaint – a

11    web page entitled, "National Radio Host Goes On Anti-Muslim Tirade" – explains CAIR's

12    vigorous objections to Savage's rants against Islam, Muslims, and CAIR, and places its criticisms in

13    a larger cultural and historical context. *See* Ahmed Decl., Exhibit A. Similarly, in the letter to

14    advertisers also cited by Savage (*see* Complaint at ¶ 36), CAIR criticizes the content of Savage's

15    radio program and asks Savage's national advertisers to consider withdrawing their support; no

16    discussion of fundraising is made. *See* Exhibit B (CAIR's letter to AT&T). Situated to the right of

17    CAIR's detailed criticism is a single small "Donate" button, the entirety of the "fundraising" to

18    which Savage could object on the relevant web page. *See* Ahmed Decl., Exhibit A.

19    Second, even assuming *arguendo* that CAIR used the limited audio excerpts as part of its

20    "fundraising" efforts, that fact would not invalidate the fair use protection of CAIR's commentary

21    and criticism. The Ninth Circuit has refused to extend copyright liability when a defendant uses

22    allegedly copyrightable material to criticize or comment on the material – even when the use

23    includes a direct solicitation for money. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d

24    1148, 1153-55 (9th Cir. 1986) is squarely on point. *Hustler* published a parody of Jerry Falwell

25    depicting him as engaged in an incestuous relationship. In response, Moral Majority, Inc. and Old

26

_____

27    [6] *See* Ahmed Decl., Exhibits A & B. The specific CAIR web page referenced in the Complaint can also be found at

28    <http://www.cair.com/ArticleDetails.aspx?mid1=777&&ArticleID=23608&&name=n&&currPage=

DAVIS WRIGHT TREMAINE LLP

1   Time Gospel Hour mailed hundreds of thousands of copies of the parody as part of a solicitation

2   drive.  Falwell also solicited contributions while displaying the parody on the Old Time Gospel

3   Hour, a television show.

4       *Hustler* sued Moral Majority, Old Time Gospel Hour, and Falwell for copyright

5   infringement.  The Ninth Circuit affirmed the district court's granting of summary judgment, holding

6   that the copying by Falwell and the other defendants constituted fair use.  The Ninth Circuit stated

7   that, "Section 107 expressly permits fair use for the purposes of criticism and commentary."

8   Although *Hustler* claimed "Falwell copied more than was necessary for his response," the court

9   found that:

10      [An] individual in rebutting a copyrighted work containing derogatory information about
        himself may copy such parts of the work as are necessary to permit understandable
11      comment.  Falwell did not use more than was reasonably necessary to make an
        understandable comment when he copied the entire parody from the magazine.  Therefore,
12      the public interest in allowing an individual to defend himself against such derogatory
        personal attacks serves to rebut the presumption of unfairness.
13

14  *Id.* at 1153.

15      Similarly, other courts around the country (including the Supreme Court ) have routinely

16  rejected, on fair use grounds, copyright infringement claims that are based on commentary and

17  criticism of copyrighted works.  *See e.g., Campbell*, 510 U.S. at 578 (finding that use of some of

18  Roy Orbison's "Oh Pretty Woman" lyrics by 2 Live Crew in the song "Pretty Woman" was a

19  protected fair use because it commented on and criticized Orbison's work); *Jartech, Inc. v. Clancy,*

20  666 F.2d 403 (9th Cir. 1982) (affirming jury verdict of fair use where defendant made still

21  photographs and sound recordings of motion pictures on behalf of City Council seeking to abate

22  movies as obscene nuisance); *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253 (2d Cir. 1986) (court

23  held that copying of portions of plaintiff's pro-abortion book containing interviews of women with

24  unwanted pregnancies by defendant in anti-abortion book is criticism or comment that is protected

25  by fair use); *New Era Publications Int'l Aps v. Carol Pub. Group*, 904 F.2d 152 (2d Cir. 1990)

26  (court held that critical biography of L. Ron Hubbard is strongly entitled to fair use in quoted

27  passages from Hubbard's published works to show boastfulness, deceitfulness, and other undesirable

28  characteristics of Hubbard).  Political comment or criticism – like CAIR is sued for engaging in here

DAVIS WRIGHT TREMAINE LLP

8

SFO 401564v1 0050022-000041

1   – is especially entitled to fair use protection because of its importance as a favored freedom of

2   speech right. *See Keep Thomson Governor Committee v. Citizens for Gallen Committee*, 457 F.

3   Supp. 957 (D.N.H. 1978) (reversing district court and finding that political advertisement using

4   portions of opponent's copyrighted song is excused as fair use, especially considering that use of the

5   song is part of a political message of advertisement).

6        The Ninth Circuit's decision in *Hustler* is controlling in this case. CAIR used the limited

7   audio excerpts from "The Savage Nation" to criticize and comment in response to Savage's political

8   commentary on Muslims and Islam as well as to directly address Savage's assault on CAIR as a

9   civil rights organization. Just as the Ninth Circuit recognized the Moral Majority defendants' right

10  under the fair use doctrine to completely republish *Hustler*'s parody to rebut *Hustler*'s attacks and to

11  raise money, CAIR's actions at issue here are squarely protected by the fair use doctrine.

12       In light of the extensive commentary and criticism that CAIR provided to accompany the

13  limited audio excerpts on its web site, even assuming the *de minimis* "fundraising" activities to

14  which Savage alleges in his Complaint, the first fair use factor heavily weighs in CAIR's favor.

15       **2.    Factor 2:  The Nature of the Copyrighted Work Favors CAIR.**

16       The second fair use factor considers the nature of the copyrighted work at issue.

17  Traditionally, this factor distinguishes "informational" and works from "creative" works,

18  considering creative works as falling "closer to the core of intended copyright protection."

19  *Campbell*, 510 U.S. at 586. *See also Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d

20  769, 780 (9th Cir. 2006) (same). In addition, published works enjoy lesser protection from

21  unauthorized uses than do unpublished ones. *See, e.g., Harper*, 471 U.S. at 563-64.

22       There is no dispute that the work at issue is a radio talk program about matters of public

23  affairs. For the purpose of this motion, even assuming the purported uniqueness of Savage's radio

24  program, for copyright infringement purposes it amounts to little more than a forum for Savage and

25  his listeners to comment on matters of public interest. As a matter of law, "The Savage Nation" is

26  less creative than a work of fiction and thus less worthy of strong protection from uses by

27  unauthorized parties. Indeed, courts have repeatedly found that newspapers, television news

28  reporting broadcasts, and the content of talk shows are subject to liberal appropriation for fair use

DAVIS WRIGHT TREMAINE LLP

9

SFO 401564v1 0050022-000041

1    purposes. *See, e.g., Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 994

2    (9th Cir. 1998) ("factual and informational nature" of television news footage weighed in favor of

3    fair use determination); *Nat'l Ass'n of Gov't Employees v. BUCI Television, Inc.*, 118 F. Supp. 2d

4    126, 129 (D. Mass. 2000) (reporter's acquisition, alteration, and distribution of videotape of

5    copyrighted talk show program constituted fair use). Regardless, given CAIR's unambiguous use of

6    the limited audio excerpts as a part of its public criticism and commentary in direct response to

7    Savage's remarks, "this factor may be of less (or even of no) importance when assessed in the

8    context of certain transformative uses," *e.g.*, as here, for purposes of criticism. *Castle Rock*

9    *Entertainment. Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 144 (2d Cir. 1998). The second

10   factor too, strongly supports CAIR.

**3.    Factor 3: The Amount and Substantiality of the Portion Used Favors CAIR.**

12   The third fair use factor considers "the amount and substantiality of the portion used in

13   relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). This factor considers both the

14   quantity and importance of the material used. *See Campbell, supra*, at 586. Specifically, courts

15   consider whether the portion used is reasonably necessary to accomplish the purpose of the second

16   work and whether it supersedes or constitutes the heart of the original work. *Id.* at 587.

17   On both amount and substantiality grounds, the third fair use factor also strongly favors

18   CAIR. Savage alleges, for example, that CAIR excerpted a segment "in excess of four minutes" of

19   the October 29, 2007, episode of his daily talk show. Complaint at ¶ 24. Not only does this only

20   amount to a small fraction of this particular show's two hour total length, Savage's own allegations

21   confirm that the limited audio excerpts do not amount to a substantial portion of the copyrighted

22   material.

23   If anything, Savage alleges that CAIR misrepresented "The Savage Nation" by excerpting

24   too *little* of his program. Repeatedly, Savage alleges that the true meaning of his commentary was

25   obscured by the fact that CAIR chose not to excerpt more of the broadcast. *See, e.g.*, Compl. at ¶ 31

26   ("The CAIR repackaging damaged the work and damaged the public image of the work because it

27   was taken out of context, the introductory remarks were omitted and the context of 'The Savage

28   Nation' were removed."); Compl. at ¶ 32 ("The stolen material as repackaged by CAIR was

DAVIS WRIGHT TREMAINE LLP

10

1    intended to portray both the material and the creator of the material, Michael Savage as having a

2    blanket opposition to a particular religion.  This was not the context of the statement and it is not

3    consistent with the content of the programming as a whole."). *See also* Compl. at ¶¶ 33, 35, 36, 37,

4    39, and 42.  Indeed, in the Complaint, in his sole attempt to cast a more favorable light to his

5    remarks, Savage compares the limited audio excerpts that CAIR posted on its website with nearly

6    four pages worth of transcripts of other portions of "The Savage Nation" from November 29, 2006

7    and March 27, 2007.  CAIR presumably *could* have excerpted these additional audio excerpts to

8    provide what Savage believes to be a more accurate representation of his positions and beliefs.  *See*

9    Compl. at ¶ 34.

10        Nothing that Savage alleges can support a conclusion that CAIR has excerpted the "heart" of

11   the October 29, 2007, episode of his radio program, nor could he.  Savage's own allegations confirm

12   just the opposite.  This factor too weighs heavily in CAIR's favor.

### 4.    Factor 4:  The Effect of the Use Upon the Potential Market For or Value of the Copyrighted Work Favors CAIR.

15        The fourth and final fair use factor considers "the effect of the use upon the potential market

16   for or value of the copyrighted work."  17 U.S.C. § 107(4).  This factor "requires courts to consider

17   not only the extent of market harm caused by the particular actions of the alleged infringer, but also

18   'whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would

19   result in a substantially adverse impact on the potential market' for the original."  *Campbell*, 510 US

20   at 590 (citing Nimmer § 13.05[A] [4], p. 13-102.61 (footnote omitted)).

21        Savage does not allege that CAIR's use of his work has impaired any market for the

22   October 29, 2007, broadcast.  Rather his allegation is that CAIR's posting of the limited audio

23   excerpts of one of Savage's radio shows caused him financial harm because it led advertisers to

24   withdraw their financial support of the program.  This alleged harm is not cognizable under

25   copyright law and is legally irrelevant to the fourth fair use factor.  As the Supreme Court noted in

26   *Campbell*:

27        [W]hen a lethal parody, like a scathing theater review, kills demand for the original, it does
         not produce a harm cognizable under the Copyright Act.  Because "parody may quite
28       legitimately aim at garroting the original, destroying it commercially as well as artistically,"

*DAVIS WRIGHT TREMAINE LLP*

1    … the role of the courts is to distinguish between "[b]iting criticism [that merely] suppresses demand [and] copyright infringement[, which] usurps it."

2    *Id.*, 510 U.S. at 591-92 (quoting *Fisher v. Dees*, 794 F.2d 432, 438 (9th Cir. 1986)) (internal

3    citations omitted).  As courts have long recognized, there is no protectible market for criticism.  *Id.*

4    Savage likely does not sell licenses to critics to comment on his work, nor does CAIR need to wait

5    for such permission to be granted.  *See e.g., Hustler Magazine,Inc.*, 796 F.2d at 1153-1155.

6    Accordingly, any loss of advertising revenue to Savage that flows from CAIR's commentary

7    regarding and criticism of "The Savage Nation" is not only self-inflicted but legally irrelevant to the

8    Court's fair use analysis in this case.  The fourth fair use factor, as do the other three, weighs

9    strongly in CAIR's favor.

10    Savage's copyright infringement claim fails every step of the fair use analysis.  His

11    transparent attempt to misuse copyright law to punish and silence CAIR's criticisms cannot prevail,

12    even assuming all of his allegations are true.  A robust marketplace of ideas does not guarantee a

13    perpetual stream of advertiser-subsidized speech, and Savage's attempt to transform declining

14    revenue – purportedly a direct result of CAIR's effective criticisms – into a basis for squelching this

15    criticism must be dismissed as a matter of law.

16    **B.    Savage's RICO Claim Fails and Should be Dismissed As a Matter of Law.**

17    Savage's RICO claim is littered with procedural and substantive deficiencies.  First, Savage

18    has no standing to bring this RICO claim because he has not alleged an injury (i.e., an actual, out-of-

19    pocket financial loss) resulting from any conduct by CAIR, and any possible injury was self-

20    inflicted.  As explained in more detail below, filing lawsuits and amicus briefs – constitutionally-

21    protected petitioning and free speech activity – is not a cognizable injury under the RICO statutes.

22    Second, Savage has made no effort to give CAIR notice of the portions of the RICO statutes upon

23    which Savage is making his claims, as he must, and Savage has failed to meet the heightened

24    pleading requirements mandated by Federal Rule 9(b) for racketeering claims that are predicated on

25    mail fraud, wire fraud, or any other type of fraud.  Third, substantively, Savage has failed to allege

26    an association-in-fact enterprise with the necessary shared purpose.  Moreover, Savage's stringing

27    together of a disparate and unproven set of asserted "facts" is insufficient as a matter of law to show

28    a pattern of racketeering activity.  Fourth, even if Savage could show some injury as a result of

DAVIS WRIGHT TREMAINE LLP

12

1  CAIR's alleged conduct, which he cannot, Savage still has not stated a RICO cause of action

2  because he has not pled (and cannot plead) that CAIR's conduct proximately caused any injuries to

3  him.  In other words, Savage has done nothing to establish (and could not) that the purported

4  wrongful conduct was a substantial and foreseeable cause of the injury alleged and that the

5  connection to this injury was logical and not speculative.

6      **1.    Savage Lacks Standing To Bring A RICO Claim Against CAIR Because He Has Not And Cannot Allege a Cognizable Injury.**

7

8        The United States Supreme Court held in *Holmes v. Securities Investor Protection Corp.*,

9  503 U.S. 258, 268-69 (1992), that a plaintiff has standing only if he or she has suffered an injury

10  caused "by reason of" defendant's RICO violations.  The key inquiry is whether a direct relationship

11  exists between the injury asserted and the injurious conduct alleged.  "A plaintiff who complains of

12  harm flowing merely from the misfortunes visited upon a third person by the defendant's acts

13  generally stands at too remote a distance to recover," the Court stated.  *Id.*  The Ninth Circuit has

14  further explained that under the *Holmes* notion of injury, "the plaintiff must show that he has

15  suffered a concrete financial loss." *Fireman's Fund Insurance Co. v. Stites*, 258 F.3d 1016, 1021

16  (9th Cir. 2001).  In *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc), the Ninth Circuit

17  clarified that an injury is only compensable under RICO if the injury constitutes "harm to a specific

18  business or property interest," and if the alleged business or property interest is cognizable under

19  state law.

20        Here, fundamentally, Savage has not pled any financial injury to his business or property

21  that he has suffered by reason of any of the purported RICO "violations" by CAIR.  While the

22  Complaint is awash with incredible leaps of logic to blame CAIR for 9/11 and the terrorist actions

23  of Hamas and Al Qaeda, among others, *even if* Savage's fictional tales were to be believed, he still

24  lacks standing under RICO because he does not – and cannot – allege that he suffered a concrete

25  monetary injury as a result of these unfortunate events (which, in any case, have <u>nothing</u> to do with

26  CAIR).  While Savage may allege that he lost revenue because of advertisers abandoning his radio

27  program, any such losses are immaterial to his RICO claim because they did not come about as a

28  result of any purported relationship with a RICO enterprise involving Al Qaeda and/or Hamas.  *See*

DAVIS WRIGHT TREMAINE LLP

13

1    Compl. at ¶¶ 36, 42. With regard to the advertisers, Savage pleads that "[a]ny success in this area

2    was due to the copyright infringement and the false context in which the material was presented."

3    *See id.* Neither of those claims has anything to do with an injury caused by reason of a RICO

4    violation. Moreover, Savage's purported loss of national advertising is self-inflicted – he would not

5    have lost any advertisers if he had not made the offensive remarks on his show.

6          In any event, the primary "injury" that Savage identifies in his Complaint does not have to

7    do with advertisers but involves CAIR's alleged filing of "frivolous lawsuits" and amicus briefs.

8    *See* Compl. at ¶ ¶ ¶ ¶ 45, 47, 50, 168. Savage does not establish that he has suffered any financial

9    loss because of any lawsuits filed by CAIR, nor could he. Filing lawsuits and amicus briefs does

10   not create any cognizable injury under the RICO statutes anyway. *See, e.g.*, 18 U.S.C. § 1961(1)

11   (listing the predicate crimes upon which a RICO claim must be based, none of which involves filing

12   "frivolous" lawsuits). To hold otherwise would be to criminalize CAIR's constitutionally-protected

13   petitioning activity, a time-honored American tradition, and to ensnare the tens of thousands of

14   organizations who file lawsuits and amicus briefs every day, a group that ranges across the political

15   and social spectrum, from the American Civil Liberties Union to the United States Chamber of

16   Commerce to the Federalist Society. Savage's attempt to turn the exercise of a critical right of our

17   legal system into "racketeering activity" is patently frivolous and grounds for immediate dismissal

18   with prejudice.

19          **2.    Savage Fails to Satisfy the Heightened Pleading Requirements For a RICO
20                 Claim.**

                **a.    Savage Fails to Specify Which RICO Causes of Action Apply to His
21                    Claim.**

22          For recovery under the RICO statute, the plaintiff must plead that the defendant violated one

23   or more of the four RICO causes of action set forth in 18 U.S.C. § 1962(a) – (d) and then set forth

24   the specific elements of each claimed violation, which differ according to which § 1962 claim is

25   involved. *See Reddy v. Litton Industries, Inc.*, 912 F.2d 291 (9th Cir. 1990) (quoting *Sedima,*

26   *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Courts have dismissed RICO complaints that fail

27   to distinguish among the four separate prohibited acts specified in section 1962 and even found that

28   "shotgun" pleading of all four violations without a good-faith effort to satisfy the elements of each

DAVIS WRIGHT TREMAINE LLP

14

1  individually can result in sanctions. *See, e.g., Pelletier v. Zweifel*, 921 F.2d 1465, 1518-19 (11th

2  Cir. 1991); *Slattery v. Costello*, 586 F. Supp. 162, 168 (D.D.C. 1983).

3      Here Savage fails to allege which of the separate RICO causes of action specified in section

4  1962 CAIR has allegedly violated and made no effort to satisfy the requirement in section 1962 that

5  he identify the elements of each act individually.  This omission is fatal to his RICO claim as a

6  matter of law.  Savage's shotgun pleading of "Racketeer Influenced and Corrupt Organizations

7  (RICO) Act (18 U.S.C. §§ 1961 – 1968)" does not give CAIR the required notice of which portions

8  of the RICO statutes are at issue, nor does it explain how CAIR  purportedly breached those

9  provisions of section 1962. *See* Compl. unnumbered paragraph between ¶ 115 and ¶ 116.  For this

10  reason alone, this Court should dismiss Savage's RICO claim as inadequately pled.

11          **b.     The Sheer Volume of Savage's Fanciful, Non-Specific RICO Allegations
                Is Insufficient to Satisfy Rule 9(b)'s Particularity Requirement.**

13      To show that a defendant has violated the RICO statutes, the plaintiff must prove that the

14  defendant engaged in "racketeering activity."  Racketeering activity is defined in U.S.C. § 1961(1)

15  and includes the different species of fraud including mail and wire fraud.  Savage alleges that CAIR

16  engaged in racketeering activity through the predicate acts of mail, financial institution,

17  identification documents, and wire fraud, as well as "defrauding the United States Government,"

18  among other claims. *See* Compl. at ¶ 124.  However, Savage has failed to allege *with any specificity*

19  the predicate acts of mail, financial institution, identification documents, and wire fraud, as well as

20  defrauding the government.  Merely listing these purported predicate offenses in the Complaint with

21  no explanation of the time, place, and manner of the purported misrepresentations, nor what

22  Defendant gained by any alleged fraud, is insufficient as a matter of law to state a claim under the

23  RICO statute. *See id.*  Savage's RICO claim must therefore be dismissed.

24      When a Complaint, as here, incorporates fraud allegations, Federal Rule of Civil Procedure

25  9(b) obligates the plaintiff to plead with a heightened degree of particularity. *Wasco Prods. v.*

26  *Southwall Techs., Inc.*, 435 F.3d 989, 990 (9th Cir. 2005).  Failure to plead with particularity

27  provides grounds for dismissal. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)

28  (dismissal with prejudice is proper where the defect is not curable by amendment).  To satisfy the

DAVIS WRIGHT TREMAINE LLP

15

1  requirements of Rule 9(b), the plaintiff must provide details "specific enough to give defendants

2  notice of the particular misconduct which is alleged to constitute the fraud charged so that they can

3  defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v.*

4  *California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  In the Ninth Circuit, Rule 9(b) has been read to

5  require an account of the "time, place, and specific content of the false representations as well as the

6  identities of the parties to the misrepresentations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058,

7  1066 (9th Cir. 2004).

8  Savage's Complaint is utterly devoid of descriptions giving the time, place, and specific

9  content of these purported predicate acts of mail fraud, wire fraud, financial institution fraud,

10  defrauding the government, and fraud with identification documents.  Cutting through the *sturm und*

11  *drang* of the RICO allegations, the only three places that Plaintiff mentions fraud within 172

12  paragraphs include (1) asserted "fraud" through filing of "frivolous" lawsuits, which is not fraud and

13  is not actionable for the reasons stated above, *see* Compl. at ¶ 45; (2) the listing of mail fraud, wire

14  fraud, financial institution fraud, defrauding the government, and fraud with identification

15  documents as predicate acts without any specification of the basis for these claims as required under

16  Federal Rule 9(b), *see* Compl. at ¶ 124; and (3) the allegation that a former CAIR employee,

17  Bassam Khafasi, pleaded guilty to visa fraud and bank fraud for passing bad checks, which is

18  irrelevant (and also denied by CAIR; see Answer at ¶ 152) since Savage has not pled (and cannot

19  plead) that CAIR had anything to do with the alleged former employee's alleged visa fraud or bank

20  fraud.  By failing to plead the time, place and manner of each claimed fraud violation and CAIR's

21  purported connection to it, Savage has failed to meet the heightened pleading requirements of

22  Federal Rule 9(b), and his RICO claim therefore should be dismissed.

23  **c.    The Complaint Does Not Allege Any Facts Sufficient to Establish The Non-Fraud Predicate Acts Mentioned Therein Such As Conspiracy to Commit Murder.**

24

25  Savage also alleges CAIR committed the RICO predicate acts of "[c]onspiracy to commit

26  murder, … [c]onspiracy to commit arson, … [i]llegal transactions in monetary instruments, …

27  [m]oney laundering, … Travel Act [violations]… [f]iling false or materially false tax returns, …

28  [e]ngaging in a corrupt endeavor to impede and impair the due administration of the internal

DAVIS WRIGHT TREMAINE LLP

16

1  revenue laws, … [p]roviding material support of [t]errorism. … [c]riminal infringement of

2  Copyright." Compl. at ¶ 124. Again, Savage made no attempt to plead any facts to support these

3  nine purported predicate acts. The alleged acts are not set forth with any specific allegations as to

4  time, place, and manner, nor does Savage explain CAIR's alleged role in any such acts. For

5  example, Savage fancifully alleges CAIR engaged in conspiracy to commit murder and conspiracy

6  to commit arson, but Savage does not explain anywhere what agreement CAIR made with whom to

7  commit murder and/or arson, nor any sufficient acts in furtherance of such "conspiracies." Savage's

8  assertion that CAIR conspired to commit the murders and arson that occurred on 9/11/2001 is

9  particularly gross, offensive and without any factual foundation. Indeed, this Court should not

10  permit Savage to get away with making these wholly conclusory assertions that CAIR was

11  "providing funding for" Al Qaeda in support of the 9/11 attacks and "was a necessary component to

12  the 9/11 Attack" without any facts supporting those obviously scurrilous assertions. *See* Compl. at

13  ¶¶ 128, 131. Moreover, the few acts mentioned in the Complaint that Savage may argue would go

14  in furtherance of such a "conspiracy" are baldly inadequate – calling for removal of a billboard in

15  Los Angeles and advocating for religion are exercises of CAIR's constitutionally-protected free

16  speech rights, not acts in furtherance of conspiracies to commit mass murder and arson. *See* Compl.

17  at ¶¶ 87, 88, 89.

18  **3.    Savage Fails to Properly Plead the Required Elements of a RICO Claim.**

19  To state a civil RICO claim, plaintiffs "must allege (1) conduct (2) of an enterprise (3)

20  through a pattern (4) of racketeering activity." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001).

21  Savage has failed to plead facts indicating that CAIR was engaged in an enterprise, and fails to

22  allege facts that CAIR participated in a pattern of racketeering activity.

23  **a.    Savage Has Not And Cannot Meet the "Enterprise" Pleading Requirement.**

24

25  The main RICO statute under which plaintiffs usually sue, Section 1962(c), makes it

26  unlawful "for any person employed by or associated with any enterprise engaged in . . . interstate or

27  foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

28  enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. 1962(c). The Supreme

DAVIS WRIGHT TREMAINE LLP

1    Court has explained that liability under Section 1962(c) requires that a defendant be a participant "in

2    the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185

3    (1993) (finding that "to participate, directly or indirectly in the conduct of [an] enterprise's affairs,

4    one must have some part in directing those affairs"). The Ninth Circuit further clarified last year

5    that to meet the "enterprise" element of a RICO claim, a plaintiff must allege facts which will

6    demonstrate (1) that defendants have "associated for a common purpose of engaging in a course of

7    conduct"; (2) that there is an "ongoing organization either formal or informal which "is a vehicle for

8    the commission of two or more predicate crimes"; and (3) "that the various units function as a

9    continuing unit," meaning that the "associates' behavior was ongoing rather than isolated activity."

10   *Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc). *See also United States v.*

11   *Turkette*, 452 U.S. 576, 583 (1981) ("[t]he existence of an enterprise at all times remains a separate

12   element which must be proved by the government" or, in a civil case, by the plaintiff).

13        Here, Savage has pled <u>no</u> facts that demonstrate, nor could he, that CAIR "associated for a

14   common purpose of engaging in a course of conduct" with Al Qaeda, Hamas, or any other terrorist

15   group mentioned in the Complaint. *See id.*  Nor has Savage offered facts that indicate CAIR

16   participated in or directed any "ongoing organization" that is a "vehicle for the commission of …

17   crimes." *See id.*  Just as a San Francisco Giants fan saying he likes the Giants and Barry Bonds does

18   not factually associate the fan in an enterprise with the Giants and Bonds, CAIR's members making

19   comments in favor of Islam or an independent Palestine does not associate CAIR in fact in an

20   enterprise with terrorist groups such as Al Qaeda and Hamas. For all of the fanciful and spiteful

21   rhetoric in Savage's Complaint, he has utterly failed to present <u>any</u> facts indicating an actual

22   relationship between CAIR and Al Qaeda or Hamas, let alone an association. Savage goes on for

23   pages seeking to tether CAIR to Al Qaeda and Hamas, alleging facts that have nothing to do with

24   CAIR. Without establishing *through facts* any association between CAIR and these groups, Savage

25   utterly cannot show that CAIR played a role in any organization that was the vehicle for crimes.

26   Having failed to establish the existence and the identity of an enterprise involving CAIR, Savage's

27   RICO claim cannot survive.

28

DAVIS WRIGHT TREMAINE LLP

Case No. CV07-06076 SI
CAIR'S MEM. OF PTS & AUTH. ISO MOTION FOR JUDGMENT ON THE PLEADINGS

**b.     Savage Fails to Adequately Plead A "Pattern Of Racketeering Activity."**

Savage's failure to allege even a <u>single</u> predicate act necessarily means that he has failed to allege a "pattern" of such acts. The failure to allege *facts* is even more critical when examining the RICO pattern requirement. To establish a pattern, the plaintiff must allege "two or more predicate acts occurring over a significant period of time, evidencing a threat of continuing activity.... Unrelated or discontinuous predicate acts will not suffice." *United Energy Owners Comm., Inc. v. United Energy Management Sys.*, 837 F.2d 356, 361 (9th Cir. 1988). As the Supreme Court has stated, a pattern allegation requires facts sufficient to demonstrate "continuity" of the conduct, plus a relationship between the predicate acts. *See H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-41 (1989). The Court further explained the test for relatedness of predicate acts: "Criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events." *See id.*

As explained above, Savage has failed to set forth the elements of any of the predicate acts that he listed in a conclusory fashion, and he has not identified any of the participants in the supposed predicate "crimes." Because Savage has failed to identify the time, place and manner of each purported predicate act, it follows logically that he has pled nothing about how any predicate acts are related. Without demonstrating that any predicate acts are related, Savage cannot begin to satisfy the pattern requirement that is a necessary element of any RICO claim. Boilerplate language tracking the language of the statute will not save his Complaint, either. The Complaint, for example, contains the conclusory allegation that "the predicate acts form a pattern of racketeering in that they are repeated, ongoing, continuous, and are a part of the Rico Enterprise's regular way of doing business." *See* Compl. at ¶ 126. Comparable allegations have been found inadequate because "[n]o details of any separate schemes, other victims, or distinct injuries are provided." *H.G. Gallimore, Inc. v. Abdula*, 652 F. Supp. 437, 451 (N.D. Ill. 1987) (finding that "all [plaintiff] has done is plead that the predicate offenses occurred repeatedly, and … that is not enough to allege a pattern"); *see also Plount v. American Home Assurance Co.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987) ("Missing are allegations of how long the association lasted. Likewise, … the complaint … never

DAVIS WRIGHT TREMAINE LLP

1  alleges who did what when, and consequently, fails in any meaningful way to show how the acts are

2  related to the common purpose of the enterprise"). The acts described in Savage's Complaint relate

3  to the wrongful conduct of Al Qaeda and Hamas and are patently unrelated in any way to the

4  legitimate civil rights advocacy work performed by CAIR, which includes filing lawsuits, and

5  involve individuals other than Savage. As a matter of law, what Savage describes in his Complaint

6  cannot constitute a RICO pattern, and the claim must be dismissed.

### c.    Savage Fails to Allege Proximate Cause.

8         Even if Savage could allege some injury as a result of CAIR's alleged conduct, which he

9  cannot, he *still* could not state a RICO cause of action because he has not alleged any proximate

10 causation between the purported RICO violations and any injury. The United States Supreme Court

11 has stressed repeatedly that civil RICO claims can survive as a matter of law "only if the alleged

12 RICO violation was the proximate cause of the plaintiff's injury." *Anza v. Ideal Steel Supply Corp.*,

13 547 U.S. 451 (2006) (quoting *Holmes v. Securities Investor Trust Protection Corp.*, 503 U.S. at 268.

14 Courts in the Ninth Circuit have further explained that proximate cause requires a causal link

15 between the conduct alleged and the injury suffered. *Ass'n of Wash. Pub. Hosp. Dists. v. Phillip*

16 *Morris Inc.*, 241 F.3d 696, 701 (9th Cir. 2001) (finding three "relevant" factors in determining

17 whether plaintiff has shown proximate cause: (1) whether there are more direct victims of the

18 alleged conduct who can be counted on to vindicate the law as private attorneys general; (2) whether

19 it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's

20 wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning

21 damages to obviate the risk of multiple recoveries"). If the injury was unforeseeable, illogical, or

22 speculative in nature, courts may hold that a plaintiff's injury was not proximately caused by the

23 defendant's conduct. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612-14 (6th Cir. 2003)

24 (finding that RICO plaintiffs must "set out a reasonable and principled basis of recovery that is not

25 based on mere speculation and surmise"). As such, the RICO plaintiff who shows a direct injury

26 may nevertheless suffer a dismissal if the injury alleged does not satisfy the other traditional

27 requirements of proximate cause; namely, that the wrongful conduct was a substantial and

28

DAVIS WRIGHT TREMAINE LLP

1  foreseeable cause of the injury alleged and that the connection to this injury was logical and not

2  speculative. *See id.*

3        Savage's Complaint is devoid of <u>any</u> proximate cause pleading, but even if it had, the

4  Complaint would still have to be dismissed as a matter of law because it is delusional and entirely

5  baseless for Savage to claim that CAIR's filing of lawsuits and amici briefs and engaging in

6  constitutionally protected speech regarding Islam would play a role in a "RICO conspiracy" that

7  "caused" the 9/11 attacks and terrorist activities allegedly perpetrated by terrorist groups. *See*

8  Compl. at ¶¶ 123, 124. Savage no doubt intentionally ignores the obvious intervening factors

9  between the alleged "misconduct" (i.e., filing lawsuits and engaging in speech that Savage does not

10  like) and the claimed injury (i.e., the 9/11 attacks and the alleged terrorist activities, which in any

11  case did not injure Savage personally in a concrete financial sense, as they must have for him to

12  satisfy the standing requirements explained above). These intervening factors include the plotting

13  of Osama bin Laden with the acquiescence of the Afghan Taliban government, the death of Yasser

14  Arafat and accompanying political vacuum that led to the takeover by Hamas in the Gaza Strip, the

15  failure of security at pre-9/11 U.S. airports to screen for terrorists, the missteps of the Federal

16  Bureau of Investigation and the Central Intelligence Agency in sharing information about several of

17  the 9/11 hijackers, and a hundred other factors too numerous to list here – none of which Savage

18  alleges (or could allege) involved CAIR in any way. In short, because Savage's <u>entire</u> RICO claim

19  is based on speculation and surmise, he cannot show a direct causal relationship between CAIR's

20  activities and the injuries caused by 9/11 and the other terrorist attacks. Since proximate cause is

21  entirely lacking, immediate dismissal of Savage's RICO claim – with prejudice – is warranted.

22  **C.    The First Amendment Independently Bars Savage's Baseless Claims.**

23        Viewed in its entirety, Savage's Complaint is simply a camouflaged defamation or

24  disparagement claim dressed as bogus copyright and RICO claims. As such, Savage's Complaint is

25  cleverly calculated to avoid the protections for free speech recognized in California's anti-SLAPP

26  statute for defendants facing lawsuits that target First Amendment activity.[7] Savage, however,

27  ───────────────

28  [7] Although the Ninth Circuit, with virtually no discussion, stated in *United States ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (1999), that the anti-SLAPP statute does not apply to a federal question claim, the principles behind the statute still have resonance since they

*DAVIS WRIGHT TREMAINE LLP*

21

cannot evade the First Amendment through the expedient of alleging claims under these two federal statutes instead of making a defamation claim.  Constitutional protections "are not peculiar to [defamation] actions but apply to all claims *whose gravamen is the alleged injurious falsehood of a statement.*"  *Blatty v. New York Times Co.*, 42 Cal.3d 1033, 1042-43 (Cal. 1986) (recognizing that if the constitutional limitations protecting free speech were not broadly applied to different causes of action, litigants would plead claims other than defamation to avoid the First Amendment restrictions, thereby "frustrat[ing] the[] underlying purpose" of the constitutional protections); *see also Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (dismissing causes of action that, like the defamation claim, targeted defendant's free speech rights, and court wanted to avoid "'creative pleading' from 'rendering nugatory the First Amendment limitations placed on litigation against speech'") (quoting *Blatty*, 42 Cal.3d at 1045).

For more than four decades, the Supreme Court has recognized that First Amendment protection does not depend on the labels given to causes of action.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964); *see also Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984) (treating the fact that the case before it was one of product disparagement rather than defamation as *immaterial* and discussing the importance of "independent judicial review").  In *Hustler v. Falwell*, 485 U.S. 46, 50, 54-57 (1988), the Court held that the First Amendment barred not only the Reverend Jerry Falwell's defamation claim arising from a satirical feature in *Hustler* magazine that depicted Falwell as engaged in an incestuous relationship, but also his intentional infliction of emotional distress claim arising from the same publication.

---

are a means of protecting Californians' free speech rights as guaranteed by the federal and California constitutions.  Undeniably, Savage's Complaint targets CAIR for engaging in constitutionally-protected free speech that publicly criticized CAIR for responding to his anti-Muslim and anti-CAIR tirade and for advocating political and social views that CAIR found repugnant.  So that such speech may not be chilled, Section 425.16 of the California Code of Civil Procedure provides for quick disposal of those claims that do not "demonstrate[] a probability of prevailing on the claim," as well as the awarding of attorneys' fees and costs to the targeted defendant.  *See Taus v. Loftus*, 40 Cal.4th 683 (2007); *Metabolife Int'l v. Wornick*, 213 F. Supp. 2d 1220, 1228 (S.D. Cal. 2002).  While the anti-SLAPP statute may not apply here, the Court should still use existing federal law and procedures to vindicate the statute's core values of early dismissal of non-meritorious lawsuits targeting speech and the awarding of attorneys' fees.

DAVIS WRIGHT TREMAINE LLP

22

1    Savage's legal broadside specifically targets CAIR as a civil rights organization and its core

2    political speech responding to and criticizing Savage's inflammatory political rhetoric.  As the

3    nation's largest civil rights organization for Muslims, CAIR appropriately characterized Savage's

4    own words as an "Anti-Muslim Tirade" and publicly communicated a detailed response as part of its

5    advocacy work.  *See* Parvez Decl., Exhibit A.  In response, Savage filed this lawsuit.

6    Although weakly pled as copyright and RICO violations,[8] Savage's allegations confirm his

7    real grievance.  Specifically, Savage complains that CAIR's communication to its members "was

8    intended to portray both the material and the creator of the material, Michael Savage [,] [sic] as

9    having a blanket opposition to a particular religion.  This was not the context of the statement and it

10   is not consistent with the content of the programming as a whole."  Compl. ¶ 33.  After lamenting

11   CAIR's alleged "misportraying" of his views, Savage pleads that the "misportrayals" have injured

12   him financially, "destroyed" the value of his material, and caused him to lose advertisers.  Compl. at

13   ¶¶ 34, 35.  In other words, Savage's *real* complaint is that CAIR portrayed him in a false light,

14   disparaged him, misrepresented him, published false statements that injured him financially (i.e.,

15   defamation) or that CAIR intentionally interfered with his economic relations, e.g., caused his

16   national advertisers to withdraw their sponsorship of his radio show.  However characterized, the

17   common thread between these unstated causes of action is that they are all subject to the

18   constitutional limitations protecting free speech because the "gravamen" of Savage's Complaint is

19   the "alleged injurious falsehood of a statement."  *See Blatty*, 42 Cal.3d at 1042-43.

---

[8] Because CAIR's First Amendment rights are implicated by this action, the Complaint is also subject to heightened pleading requirements that Savage has not met – and cannot meet.  "Where a plaintiff seeks damages … for conduct which is *prima facie* protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required," the Ninth Circuit held in *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) (quoting *Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary Workers*, 542, F.2d 1076, 1082-83 (9th Cir. 1976)).  Here, Savage's Complaint is silent on how CAIR's limited use of the audio excerpts to respond to his public criticisms violated his purported copyright interest.  His pleading of the RICO claim is patently deficient for the multitude of reasons discussed *infra* at 12 - 21.  Savage's complete failure to meet these basic pleading requirements, let alone the heightened ones, is independent grounds for dismissing his Complaint with prejudice.

DAVIS WRIGHT TREMAINE LLP

23

1    In essence, Savage sued because CAIR's constitutionally-protected opinions have harmed

2    him professionally. *See* Compl. ¶ 35.  The First Amendment protects such speech no matter the

3    label placed on the claim.  To hold otherwise would eliminate the required "breathing space"

4    afforded by the First Amendment. *See Hustler*, 485 U.S. at 52.  The Supreme Court recognized

5    long ago that this country's embrace of free speech "reflects a profound national commitment to the

6    principle that debate on public issues should be uninhibited, robust, and wide-open...." *New York*

7    *Times Co. v. Sullivan*, 376 U.S. at 270.  Savage is, without question, a public figure, a nationally

8    syndicated talk show host and the self-proclaimed "leader of the public opposition to the purchase of

9    major U.S. ports by Dubai." *See* Compl. at ¶ ¶ 2, 44.  Both Savage's remarks and CAIR's public

10   commentary and criticism at issue in this litigation relate to a public issue, the role of Muslims in

11   post-9/11 American society and Savage's apparently dim view of it.  To allow Savage's baseless

12   lawsuit to move forward in these circumstances would contravene the bedrock principle of allowing

13   robust debate set forth in *New York Times Co.,* 376 U.S. at 270.

## IV.    CONCLUSION

15   For each of the reasons stated herein, Savage's Complaint against CAIR should be

16   summarily dismissed with prejudice.

17   DATED this 30th day of January 2008.

DAVIS WRIGHT TREMAINE LLP

ELECTRONIC FRONTIER FOUNDATION

By:    */s/   Thomas R. Burke*
THOMAS R. BURKE
Attorneys for Defendant Council on
American-Islamic Relations of Santa Clara,
Inc.

DAVIS WRIGHT TREMAINE LLP

24