1  DANIEL A. HOROWITZ State Bar No. 92400
Attorney at Law
2  P.O. Box 1547
3  Lafayette, California 94549
   (925) 283-1863
4

5  Attorney for Plaintiff

6

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9

10

11 MICHAEL SAVAGE,
   aka (Michael Weiner)
12                                    No.  CV 07 - 06076 SI

13         Plaintiff,

14 vs.                                Date: March 7, 2008
                                      Time: 9:00 am
15                                    Dept: Courtroom 10
   Council on American-Islamic
16 Relations, Inc. and Does                 Hon. Susan Illston
   1-100
17

18         Defendants.
19 _____/

20

21     **OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
        PURSUANT TO Fed. Rule Civ. Proc. 12 (c)**

22

23

24

25

26

27

28

# *TABLE OF CONTENTS*

Introduction ................................................................................................ 1

Summary of RICO Arguments .................................................................... 2

Issues to Be Decided .................................................................................. 3

Points and Authorities ................................................................................ 3

Legal Standard(s) and Burdens of Proof .................................................... 3

    A. Standards Governing Rule 12(c) .................................................... 3

    B. "Fair Use" is an Affirmative Defense ............................................ 3

    C. "Fair Use" Requires a Fact Based, Case by Case Analysis ........... 4

    D. 17 U.S.C. 107 Cites Four Key Factors in the Fact Based Inquiry ............. 4

II. None of the Four Factors Under 17 U.S.C. 107 Favor the Defendant ................... 4

III. Analysis Under the Four Enumerated Factors in 17 U.S.C. 107 ........................ 5

    (1) The purpose and character of the use, including whether such
    use is of a commercial nature or is for nonprofit educational purposes .......... 5

    (2) the nature of the copyrighted work ............................................ 7

    (3) the amount and substantiality of the portion used in relation to the
    copyrighted work as a whole ........................................................ 8

    (4) the effect of the use upon the potential market for or value
    of the copyrighted work ................................................................ 10

IV. CAIR's Conduct is Not Absolutely Protected by the First Amendment ............... 11

V. Hustler v. Moral Majority Does Not Supoort A Dismissal ...................... 13

RICO Claim ............................................................................................. 16

VI. Damages Are Properly Pled ............................................................................... 16

VII. Savage Properly Alleges the Existence of a Conspiracy Involving
CAIR and Other Groups Involved in Terror ....................................................... 17

    A. CAIR Knowingly Participated in a Massive Conspiracy .............................. 17

    B. CAIR'S Foreign Funding is Documented ...................................................... 17

    C. CAIR's Interlocking Directorates and Cooperation with
    Terror Groups is Documented ............................................................................. 17

VIII. RICO Predicate Acts Were Pled and Described ...................................... 18

    A. 18 U.S.C. 1341 (mail fraud) and 1343 (wire fraud) Have Been Pled .............. 18

    B. FARA Violations and a Fraudulent Charitable Status Have Been Pled .......... 18

    C. Criminal Copyright Infringement Has Been Pled ............................................ 19

    D. Overview of Predicate Act Allegations ............................................................ 19

IX. CAIR Has Notice of Each Applicable RICO Section ................................... 21

    A. 1962(a) ............................................................................................................. 21

    B. 1962(b) ............................................................................................................. 22

    C. 1962(c) ............................................................................................................. 24

    D. 1962(d) ............................................................................................................. 24

Conclusion .................................................................................................................. 25

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT**

Campbell v. Acuff-Rose Music, 510 U.S. 569 (1994) ......................................... 4

Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539 (1985) ..................... 4, 5, 10

NOW v. Scheidler, 510 U.S. 249 (1994) ................................................. 16

Reves v. Ernst & Young, 507 U.S. 170 (1993) ........................................ 22

Salinas v. United States, 522 U.S. 22 (1997) .................................... 24, 25

Sedima v. Imrex Co., 473 U.S. 479 (1985) ........................................... 24

**NINTH CIRCUIT COURT OF APPEAL**

Howard v. American Online Inc., 208 F.3d 741 (2000) ........................................ 25

Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148 (1986) ....... 12, 13, 15

Humanitarian Law Project v. United States DOJ, 352 F.3d 382 (2003) ................ 12

Los Angeles News Service v. KCAL-TV Channel 9, 108 F.3d 1119 (1997) ......... 9

**SECOND CIRCUIT COURT OF APPEAL**

Roy Export Co. Estab. of Vaduz v. Columbia Broadcasting Sys., Inc.
672 F.2d 1095 (1982) ............................................................ 9

United States v. Rahman, 189 F.3d 88 (1999) ...................................... 11

**UNITED STATES DISTRICT COURT - CALIFORNIA**

Berryessa for All v. US Bureau of Reclamation,
2007 U.S. Dist. LEXIS 90228 (D. Cal. 2007)) ..................................... 3

**UNITED STATES DISTRICT COURT - NEW YORK**

United States v. Bin Laden, 2001 U.S. Dist. LEXIS 959 (D.N.Y. 2001)........... 20, 21

Video-Cinema Films, Inc. v. Lloyd E. Rigler-Lawrence E. Deutsch Foundation ..  8
2005 U.S. Dist. LEXIS 26302 (S.D. N.Y. 2005)

**UNITED STATES DISTRICT COURT - MICHIGAN**

Whaley v. Auto Club Ins. Assoc., 891 F. Supp. 1237, 1240-41 (E.D. Mich. 1995) 23

**UNITED STATES CODE**

17 U.S.C. 107 ................................................................................... 4-10

18 U.S.C. 1957 ...................................................................    18

18 U.S.C. 1503 ...................................................................    19

18 U.S.C. 1510 ...................................................................    19

18 U.S.C. 1511 ...................................................................    19

18 U.S.C. 2319 ...................................................................    19

18 U.S.C. 1961(1) ...............................................................    19

18 U.S.C. 1341 ...................................................................    18

18 U.S.C. 1343 ...................................................................    18

# INTRODUCTION

Defendant Council on American-Islamic Relations of Santa Clara, filed its Motion to Dismiss for failure to state a claim upon which relief can be granted. Their attack on the First Cause of Action for Copyright Infringement argues that the affirmative defense of "Fair Use" is established as a matter of law also making the closely related argument that the conduct is protected by the First Amendment.

The attack on the Second Cause of Action (RICO) is very broad claiming among other things that Savage has not alleged damages, that RICO predicates have not been plead and that CAIR cannot ascertain which subsections of the RICO statute apply.

**Summary of Copyright Arguments**

Plaintiff asserts that the "Fair Use" and First Amendment arguments turn on a variety of factors that cannot be determined in CAIR's favor in the context of a Rule 12(c) motion. They are trial defenses. The "Fair Use" argument fails for many reasons. Plaintiff has alleged that the amount and nature of the segment(s) used by CAIR far exceed that necessary for "Fair Use". He also preemptively challenges any claim of a good faith "Fair Use" by alleging that the infringement was not done for genuine criticism or comment but in order to facilitate an unfair economic attack against him done for illegal purposes as outlined in the lawsuit.

Savage further asserts that CAIR is not a charity but in fact a corporation that is a Foreign Agent. Rather than register under the Foreign Agents Registration Act and pay taxes, CAIR falsely conducts itself as a charity when it is not. Savage asserts that the improper use of his work was done as part of a broader pattern and practice to target media persons and political figures for economic and other personal attacks in order to silence criticism of foreign entities, primarily (but not exclusively), Hamas.

Savage argues and submits pleadings (that if true) establish that CAIR's false charitable purpose and foreign agent status were created at the moment of its inception, by plan and through open discussion of creating such a false charity.

**OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1

1    **Summary of RICO Arguments**

2    The RICO action and the copyright action focus on one key common point.  Savage

3    alleges that CAIR was founded by Hamas members for the purpose of creating a benign face to a

4    group whose purpose was to advance the Hamas agenda in the United States.  The RICO action

5    provides extensive detail to support these allegations.

6    The RICO c/o/a alleges that in 1993, about 20 members of Hamas and related terrorist

7    groups met in Philadelphia.  The group agreed that Hamas was spoken about only by its code

8    name, "Samah" (Hamas spelled backwards).  The members, decided that there should be two

9    divisions of their organization.  Their Middle East organization would have a true Islamic face

10   and directly express its Islamist views.  This is because their audience was primarily radical and

11   they would lose credibility if they softened their views.  For the American public and for work in

12   America, the group agreed to form a group with a charitable face.  This would allow them to

13   accomplish the goals of their organization in America without creating resistance.  CAIR was

14   thus, from its inception, a wolf in sheep's clothing.

15   The allegations in the complaint are well documented.  It cites the criminal convictions

16   for terrorism (and related activities) of the persons involved with CAIR including its founders.

17   The complaint cites United States government State Department designations of Foreign

18   Terrorist Organizations (FTO's), designations of charities that aid terror by the Treasury

19   Department, statements of federal judges, criminal convictions and other material from reliable

20   sources.  The lawsuit cites CAIR's status as an unindicted co-conspirator in a federal criminal

21   prosecution in Texas.  It also documents numerous specific instances of misconduct by CAIR

22   including the posting of a "9/11 survivor" complete with burning twin towers, where the

23   donation button linked to the Hamas based charity, the Holy Land Foundation.

24   The RICO action alleges that part of CAIR's role in the conspiracy is to use economic

25   coercion and other means to silence voices that criticize violent Islamists.  It alleges that there

26   was a piracy and alteration of the work and its context that was intended to destroy the value and

27   credibility of the work.   The lawsuit cites numerous instances of this type of conduct by CAIR.

28   **OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

2

These people are labeled as victims of CAIR and include Congressman Ballenger, Dr. Laura

Schlessinger, ordinary citizens who reported suspicious conduct by passengers on aircraft (the

"Flying Imam" case), a student news reporter and other vulnerable targets.   The lawsuit also

alleges that there is flow of money from CAIR to illegal organizations and a support function for

CAIR for arrested terrorists.

# ISSUES TO BE DECIDED

1. Whether defendant establishes its affirmative defense of "Fair Use" purely by reference
to the pleadings.

2. Whether a First Amendment defense applies in this case so that CAIR's conduct
is absolutely protected as a matter of law.

3. Whether the RICO pleadings are sufficient in alleging damages, a RICO recognized
violation and whether the RICO pleadings give notice that RICO sections a-d inclusive
are alleged against defendant.

# POINTS AND AUTHORITIES

## I. LEGAL STANDARD(S) AND BURDEN OF PROOF

**A. Standards Governing Rule 12(c)**

A Rule 12(c) motion for judgment on the pleadings may be brought at any time after the

pleadings are closed.  Fed. R. Civ. P. 12(c). The standard applied to decide a Rule 12(c) motion

is the same as the standard used in a Rule 12(b)(6) motion to dismiss for failure to state a claim.

Judgment on the pleadings is appropriate when, even if all material facts in  the pleading are

accepted as true, the moving party is entitled to judgment as a matter of law.  Hal Roach Studios,

Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1989).   (*Berryessa for All v. US*

*Bureau of Reclamation*, 2007 U.S. Dist. LEXIS 90228 (D. Cal. 2007))

**B. "Fair Use" is an Affirmative Defense**

"Fair Use" is an affirmative defense so it would be very rare for the pleadings to establish

**OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1    such a defense. *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 590 (U.S. 1994).

2

3    **C. "Fair Use" Requires a Fact Based, Case by Case Analysis**

4         "Fair use" is not generally decided in a Rule 12(c) motion because it "calls for a

5    case-by-case analysis." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 577 (1994)) The "Fair Use"

6    examples provided in § 107 are "illustrative and not limitative" and "provide only general

7    guidance about the sorts of copying that courts and Congress most commonly had found to be

8    fair uses." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 577 (1994)).

9

10    **D. 17 U.S.C. 107 Cites Four Key Factors in the Fact Based Inquiry**

11         Though not exclusive, (*Harper & Row, Publishers, Inc. v Nation Enterprises* (1985) 471

12    US 539) the statute requires that a "Fair Use" analysis include consideration of the following

13    factors.

14         (1) the purpose and character of the use, including whether such use is of a
           commercial nature or is for nonprofit educational purposes;
15

16         (2) the nature of the copyrighted work;

17         (3) the amount and substantiality of the portion used in relation to the copyrighted
           work as a whole; and
18

19         (4) the effect of the use upon the potential market for or value of the copyrighted
           work.
20         (17 U.S.C. § 107)

21

22    **II. NONE OF THE FOUR FACTORS UNDER 17 U.S.C. 107 FAVOR THE DEFENDANT**

23         While defendant has made excellent *trial arguments* in its brief, these arguments are

24    premature since this motion presumes the truth of the allegations in the complaint and nothing as

25    establishes (as a matter of uncontested fact) any aspect of CAIR's affirmative defense.

26         Defendant attached a webpage as Defendant's Exhibit A.  This page contains three

27    paragraphs that quote the material from Michael Savage's show.  If CAIR were conceded to be a

28    **OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1  genuine charity and if these were the only materials cited, there could be serious consideration as
2  to whether the pleadings conceded "Fair Use".

3       However, the copyright cause of action is not directed to those written words.  The
4  copyright lawsuit focuses on four minutes and Thirteen seconds of Michael Savage's
5  performance whose link appears in the upper right corner of the web page, next to the
6  "Subscribe/Donate" button.   Right next to the donate button, the webpage has a link to hear
7  "...these and other bigoted statements".   It is that link, next to the donation button and the four
8  minutes and Thirteen seconds of performance which then airs, which constitute the copyright
9  violation.   Even if CAIR were a genuine charity with the highest of purposes, this much use and
10 this type of use raises serious questions which only a jury can resolve.  In the context of the
11 allegations against CAIR that are contained in the complaint, the jury issues are equally present,
12 albeit more damaging to CAIR.  Either way, the Rule 12(c) motion fails.

13 **III. ANALYSIS UNDER THE FOUR ENUMERATED FACTORS IN 17 U.S.C. § 107**
14 **(1) the purpose and character of the use, including whether such use is of a commercial**
15 **nature or is for nonprofit educational purposes;**

16      CAIR's affirmative defense relies upon a jury believing that CAIR is a charity and a civil
17 rights group.   Only then will their allegation that their comments were for public discourse and
18 fair comment be believed.   Savage's pleading preemptively negates this defense. Savage alleges
19 that CAIR falsely claims to be a 501(c)(3) charity but is in fact a foreign agent for international
20 terror.  These allegations are not simply conclusory, he provides facts to support the claims. FAC
21 28 alleges that there is a non-charitable, political purpose in the use of the segment.  When these
22 two elements are considered as a whole, there is no possible "Fair Use".

23      In *Harper & Row, Publishers. v. Nation Enterprises*, 471 U.S. 539, (U.S. 1985) the court
24 held that "fair use presupposes good faith and fair dealing,".   The Court then determined that
25 because the defendant magazine knowingly exploited a purloined manuscript with the intended
26 purpose of displacing plaintiff's right of first publication, defendant's actions weighed against a
27 finding of fair use.

28 **OPPOSITION TO MOTION FOR JUDGMENT**
   **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

5

1    The Philadelphia meeting of 1993 is the start of the CAIR portion of this conspiracy. 20

2    members of terror groups met in Philadelphia and developed strategies to deal with the apparent

3    breakdown of war in the Middle East.  At that time, the Oslo Agreements made it appear that

4    there would be a Palestinian state and peace with Israel.  This greatly upset the participants at the

5    Philadelphia meeting as their goal was the annihilation of Israel by force and political means.

6        To accomplish this goal, the agreed that they must maintain at full force, their extremist

7    rhetoric when they spoke to a Middle East audience but they recognized that this would used

8    against them in the United States.  Their solution was to create a wolf in sheep's clothing,

9    (CAIR) to do the radicals work in the United States.  (FAC 100, 101) The people at the meeting

10    represented Hamas (which they code named "Samah").  Hamas is a designated terror group in the

11    United States, Canada, Israel, European Union and Japan.  It is banned in Great Britain, Jordan

12    and Australia. (FAC 72)   As the F.B.I. surreptitiously recorded this meeting, we know what took

13    place in Philadelphia.  Many of the transcripts of these meetings were introduced into evidence at

14    the Holy Land Foundation criminal trial in Texas.

15        FAC 58-71 detail how CAIR uses its false charitable facade to evade the requirements of

16    the Foreign Agents Registration Act.  The Foreign Agents Registration Act (FARA) is a

17    disclosure statute that requires persons acting as agents of foreign principals in a political or

18    quasi-political capacity to make periodic public disclosure of their relationship with the foreign

19    principal, as well as activities, receipts and disbursements in support of those activities.

20        The complaint specifically alleges that the use of Savage's performance is part of a dance

21    done by CAIR to support the false charitable facade.  He is alleging that the destruction of the

22    value of his work was part of a clever but ultimately simple plan in which CAIR plays a

23    particular role in a major international terror conspiracy.

24        CAIR's motion belittles the claims of an international conspiracy.  "This Court should

25    not countenance Savage's delusional scenarios and should summarily dismiss this claim." (Rule

26    12 Motion, page 2).  However, these scenarios are neither delusional nor Michael Savage's alone.

27    The complaint is carefully written to provide detailed source information for its claims against

28    **OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

6

CAIR. These sources include (but are not limited to):

FAC 64 cites the decision by the United States Attorney to declare CAIR an unindicted co-conspirator in the criminal trial of the Holy Land Foundation (HLF)[1]. The lawsuit cites Executive Order 12947 (January 24, 1995) which designated Hamas a terrorist organization and it cites the head of the FBI Terrorism unit declaring (in 1998) that one of the parent organizations of CAIR, the IAP is an Hamas based group. FAC 70 reveals that CAIR was initially funded by the HLF. At FAC 71 the statement favorable to Hamas made by one of CAIR's founders, Nihad Awad. FAC 74 cites the fact that CAIR donated money to yet another unindicted co-conspirator in the HLF trial, the group called "Islamic Relief". FAC 83 asserts that CAIR invests money with the "North American Islamic Trust" and connects that group with the Muslim Brotherhood, a terrorist group. Paragraphs 100 and 101 of the FAC describe the founding of CAIR by Hamas members, in Philadelphia in 1993. The paragraphs specifically state that CAIR agreed to operate under the "ostensible banner of apolitical humanitarian exercise in order to support Hamas vital social recruitment effort.

Whether the above facts are true should be determined by a jury. If these facts are true, plaintiff will prevail. Against this amount and diversity of evidence, CAIR is hard pressed at this pleading stage, to justify its request for a dismissal on grounds that essentially say, "We are a charity, Michael Savage said bad things and we have a 1st Amendment right to defend Muslims." At this pleading stage, CAIR is stuck with being a terror group in sheep's clothing. With these presumed facts, the law is not favorable to CAIR.

**(2) the nature of the copyrighted work**;

The complaint alleges that Michael Savage's show is a performance. (FAC 3) Plaintiff has not sued for the written quotation of some of Michael Savage's statements (See defendant's Exhibit A). FAC 4 compares the performance to live theater and it notes that the program starts

---

[1]

While a jury did not reach a unanimous verdict in the HLF criminal trial, they also did not acquit. The accusations survived a Rule 29 attack as well.

**OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1   with a warning that the show contains "adult language, adult content and psychological nudity.

2   Listener discretion is advised. The lawsuit focuses on the taking of four minutes and thirteen

3   seconds of his performance.  It therefore raises the factual issue not only of the length of what

4   was taken, it also raises the issue of whether the performance has value beyond the words and

5   ideas conveyed.

6   **(3) the amount and substantiality of the portion used in relation to the copyrighted work as**

7   **a whole;**

8       By analogy, a music CD can have many songs.  On a theoretical album, some songs will

9   be personal, some will be nonsensical and some political.   The Savage Nation like most radio

10  has breaks and commercials.  Each portion between breaks and commercials is a segment, almost

11  like a song at a concert or on a CD.  The content may or may not be the same from segment to

12  segment (or even within a segment).  Sometimes a segment will be political, other times

13  religious.  At times Michael Savage talks about his childhood or the healing benefits of herbs.

14      The relationship of the material used by CAIR to the totality of the performance cannot be

15  decided on the pleadings.   In terms of amount and substantiality, reported cases show that there

16  is very wide variation in the factual scenarios which support (or do not support) the affirmative

17  defense of "Fair Use".

18      In *Video-Cinema Films, Inc. v. Lloyd E. Rigler-Lawrence E. Deutsch Foundation* 2005

19  U.S. Dist. LEXIS 26302 (S.D. N.Y. 2005),  a genuine nonprofit foundation presented a program

20  called "Classic Arts Showcase,".  This program was essentially MTV for fine arts (especially

21  classical music, dance and opera).  The program broadcast principally to public television and

22  cable.  Unlike CAIR whose motives are questioned, no one questioned the good faith of this

23  foundation.  They wanted to elevate the artistic content of television and serve the viewers.

24      In this instance, the foundation used an 85 second portion of a five-minute performance

25  by an opera singer from a two-hour movie, "Carnegie Hall."   The court agreed that the use of

26  the material was educational, noncommercial and consisted of an extremely small portion of the

27  total work.  Despite this, the court ruled against the Foundation because those factors were

28  **OPPOSITION TO MOTION FOR JUDGMENT**
    **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1   outweighed by the potential loss of licensing revenue.   The copyright owners had previously

2   licensed portions of the work for broadcast and the court determined that the foundation's use

3   affected the potential market.

4          Savage makes this same damage allegation in his complaint.    Paragraph 31 alleges that

5   CAIR "repackaged and damaged the work" and the paragraph describes how this damage was

6   inflicted.  Paragraph 32-35 further details this damage.  It contrasts the repackaged CAIR product

7   with Michael Savage's actual performance which he deems an attack on violent Islamists who

8   murder of homosexuals or mutilate women are despicable to him.

9          To show how the presentation of his work damaged its value, Savage at FAC 34, cites

10  positive statements that he has made about non-violent Islam.  He alleges that "CAIR destroyed

11  the value of the copyright material and the performance as a whole". (FAC 35) Paragraph 37

12  again emphasizes the harm caused by the misportrayal of the meaning of the performance.

13         These are pled factors that a jury must assess and give weight and value to.  A Rule 12(c)

14  motion is not the appropriate venue to resolve them.

15         *In  Roy Export Co. Estab. of Vaduz v. Columbia Broadcasting Sys., Inc.* , 672 F.2d 1095,

16  1100 (2d Cir. 1982) a television news program copied just one minute and 15 seconds from a

17  72-minute Charlie Chaplin film and used it in a news report about Chaplin's death. Important

18  factors: The court felt that the portions taken were substantial and part of the "heart" of the film.

19  The meaning of "heart" of the Savage performance may be determined by the length of the entire

20  show in the abstract or a jury may be more interested in the length of the segment.

21         In *Los Angeles News Service v. KCAL-TV Channel 9*, 108 F.3d 1119 (9th Cir. 1997) a

22  television station's news broadcast used 30 seconds from a four minute copyrighted videotape of

23  the 1992 Los Angeles beating of Reginald Denny.   The "Fair Use" defense was rejected because

24  the use was commercial and because it took the heart of the work and affected the copyright

25  owner's ability to market the video.   Plaintiff points out that there was never any dispute that

26  KCAL was a legitimate news station nor was there a dispute that KCAL used the material for

27  news reporting.

28  **OPPOSITION TO MOTION FOR JUDGMENT**
    **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1  **(4) the effect of the use upon the potential market for or value of the copyrighted work.**

2      Michael Savage alleges that CAIR deliberately tried to damage the value of his work.

3  He alleges that CAIR "... damaged the work and damaged the public image of the work" (FAC

4  31). FAC 32-36 details the damages further including the loss of advertisers. Exhibit A shows

5  how Savage's statements are taken out of the context of Savage's work (at least as Savage sees

6  it). Paragraph 34 is included in the complaint to prove Savage's point. That paragraph contains

7  two of many segments where Savage is supportive of and respectful of the Muslim religion (and

8  Muslim callers). Savage states in his lawsuit that the segment was a "scream of outrage" at the

9  murder of homosexuals and mutilation of women by the "Hitler of Iran". (FAC 37-39) This is

10  one reason that the performance aspect of the piece is so important in understanding how the use

11  of the segment by CAIR is damaging to the overall marketability of the work. To support these

12  points, Savage's lawsuit includes verbatim quotations from other shows which includes

13  statements such as:

14      "There are areas of unity between the religions and I think we need to strengthen those."

15  He then goes on to have a discussion with a Muslim caller which he ends with, "Mohammed,

16  God Bless you. Alechem Salam. Thanks for listening to the Savage Nation."

17      "[T]o negate fair use one need only show that if the challenged use "should become

18  widespread, it would adversely affect the potential market for the copyrighted work." Sony Corp.

19  of America v. Universal City Studios, Inc., 464 U.S., at 451 cited in *Harper & Row, Publishers.*

20  *v. Nation Enterprises.*, 471 U.S. 539, 568 (U.S. 1985). Just as CAIR has the burden of showing

21  "Fair Use", once Savage has demonstrated his damages, the burden shifts to infringer to show

22  that damage would have occurred had there been no taking of copyrighted expression. (*Harper*

23  *& Row, Publishers, Inc. v Nation Enterprises* (1985) 471 US 539) However, given the deceptive

24  packaging, the deliberate misrepresentation of Savage's context, CAIR cannot prevail on this

25  point (at least without negating Savage's factual allegations and this cannot be done at this stage

26  of the process).

27

28  **OPPOSITION TO MOTION FOR JUDGMENT**
    **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1

## IV. CAIR's CONDUCT IS NOT ABSOLUTELY PROTECTED

2

## BY THE FIRST AMENDMENT

3    A bank robber saying "Hand over the cash" is not protected by the First Amendment and

4   as pled, CAIR is a terrorist organization whose actions against Michael Savage had no First

5   Amendment purpose.  Extortion, blackmail and threats are not protected speech.  CAIR may

6   dispute these claims, but they are clearly and extensively pled.   Should CAIR be able to prove at

7   trial that it is a real charity and a real civil rights organization it will have a rational "Fair Use"

8   argument at trial.  But at this pleading stage, Savage has established CAIR as a terrorist

9   organization.  CAIR must argue from that perspective but in general their pleading relies upon an

10   assumption that CAIR is a genuine charity and not a terror group.

11    The First Amendment defense has been tried many times to justify criminal conduct and

12   it is often rejected.   In *United States v. Rahman*, 189 F.3d 88 (2d Cir 1999), the Court of Appeals

13   affirmed the conviction of the "Blind Sheik" Omar Abdel Rahman[2] for the first World Trade

14   Center bombing. Rahman claimed that his conviction was based on his religious and political

15   point of view as expressed in his writings and sermons.  Neither the jury nor the Court of Appeal

16   were impressed.  The Court of Appeal commented that:

17    "It remains fundamental that while the state may not criminalize the expression of

18    views--even including the view that violent overthrow of the government is

19    desirable--it may nonetheless outlaw encouragement, inducement, or conspiracy

20    to take violent action… freedom of speech and of religion do not extend so far as

21    to bar prosecution of one who uses a public speech or a religious ministry to

22    commit crimes. Numerous crimes under the federal criminal code are, or can be,

23    committed by speech alone…. Notwithstanding that political speech and religious

24    exercise are among the activities most jealously guarded by the First Amendment,

25

26    ─────────────────

27    [2]Rahman is a potential witness in our case.  He attended the 1993 Philadelphia meeting
with CAIR founders.

28   **OPPOSITION TO MOTION FOR JUDGMENT**
**ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1    one is not immunized from prosecution for such speech-based offenses merely

2    because one commits them through the medium of political speech or religious

3    preaching." 189 F.3d at 115, 117.

4         The allegations of Savage that the charitable nature of CAIR is a ploy is not

5    unprecedented.  CAIR is an unindicted co-conspirator in the Holy Land Foundation trial.   It is

6    therefore not unfair for plaintiff to mirror the assertions of the United States and assert that CAIR

7    funds terrorist organizations.

8         The courts have found that the United States has the right to stop self named charities

9    from providing material support to terrorists.  *Humanitarian Law Project v. United States DOJ*,

10   352 F.3d 382 (9th Cir. 2003) involved organizations and individuals who sought to provide

11   "material support" to designated "foreign terrorist organizations".   The contributors felt that their

12   contributions went to good purposes and disagreed with the government's assessment of the

13   use(s) of their money.  The court disagreed and held that the government could in fact make and

14   enforce such designations.

15        The Humanitarian Law Project's First Amendment arguments were considered and

16   rejected by the Ninth Circuit which wrote that "[w]e therefore do not agree with ADC II's

17   implied holding that the First Amendment requires the government to  demonstrate a specific

18   intent to aid an organization's illegal activities before attaching liability to the donation of funds."

19   Id. at 1134.)  (*Humanitarian Law Project v. United States DOJ*, 352 F.3d 382, 407-408 (9th Cir.

20   2003, emphasis added))

21        The government has made various determinations regarding CAIR's activities and the

22   activities of CAIR related groups.  While CAIR may disagree with the government's conclusions,

23   it is reasonable for plaintiff to reference these findings and to incorporate them in pleadings.

24   There is certainly a good faith basis for plaintiff's allegations.

25        Savage's claim that his work has been misappropriated so that CAIR can raise funds for

26   its terror related purposes is supported by CAIR's admissions with respect to FAC 91.   FAC 91

27   alleges that after 9/11, CAIR's website (which the complaint alleges was maintained by CAIR-

28   **OPPOSITION TO MOTION FOR JUDGMENT**
     **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**
     12

1    SC and physically housed by CAIR-Texas), had an appeal for funds to assist the victims of 9/11.

2    The webpage contained "a picture of the World Trade Center in flames" and a button for

3    donations to the "survivors of this disaster".    Savage has alleged and CAIR has now admitted in

4    its answer that the donation button linked to the Holy Land Foundation (which the United States

5    government ties directly to Hamas).

6        If CAIR has misappropriated the goodwill of people toward 9/11 survivors to funnel

7    money to Hamas, Michael Savage is not without reason in asserting that CAIR has taken his

8    performance and used it to raise money for similar improper purposes.  (And Savage alleges that

9    all purposes of CAIR are in fact, improper purposes under the law.)  CAIR may be a genuine

10   charity or it may be a wolf in sheep's clothing.  For purposes of the Rule 12(c) motion, the only

11   evidence before the Court supports the wolf scenario.  Perhaps on summary judgment or at trial,

12   CAIR can convincingly make a different case.

13       **V. HUSTLER v. MORAL MAJORITY DOES NOT SUPPORT A DISMISSAL**

14       CAIR loves the case of Hustler v. Moral Majority[3] and who can blame them.  It is

15   probably as generous an extension of "Fair Use" as we will see in the near future.  However,

16   there is no bad law in the case for Savage, only bad facts for Hustler.   Essentially, the Hustler

17   case is about a minister that the adult magazine painted as a sick, perverted fool. The court ruled

18   that the Minister, Jerry Falwell, had the right to distribute the document to raise money to fight

19   Hustler.

20       The analysis in *Hustler v. Moral Majority* serves to distinguish that case from the Savage

21   case.  Some of the distinctions are obvious.  Savage did not attack a particular individual except

22   to the degree that his comments reflected negatively upon Iran's dictator.   Savage did not name a

23   teddy bear "Mohammed" in a deliberate or accidental violation of a dictate of the Muslim

24   religion.  Savage did not denigrate Mohammed the Prophet of Islam. He did not call him names.

25   He did not create a picture of Mohammed in violation of Muslim beliefs.  He did not name a

26

27       [3](Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148 (9th Cir. 1986))

28   **OPPOSITION TO MOTION FOR JUDGMENT**
     **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

teddy bear, Mohammed.  The graphic imagery of the Hustler piece might be matched by some of the above actions but Savage made comments whose content allegedly disturbed CAIR.  His comments were significantly quoted by CAIR and no copyright infringement claim has been filed for that.

But, if CAIR objects to Savage's performance itself, they cannot post it and ask for donations.  If a group likes Michael Savage, they cannot post his performance next to a button that says "I love Michael Savage.  If you love Michael Savage, click and donate money to me !"

While CAIR has arguments to be made at trial regarding just how much as to be infringed in order to convey a legitimate message, that is a jury issue and Falwell only stands for the point that in an extreme case a large amount of content can be taken.

While Savage strongly attacked conduct and violently opposed the imposition of a religious based ideology on Americans, he did not humiliate an individual.  Compare that to the Falwell case.

In Falwell, the Hustler parody featured a picture of Falwell, and an "interview" in which "Falwell" describes his first sexual experience as occurring "with Mom" in an outhouse while both were "drunk off our God-fearing asses on Campari." In the spoof interview, "Falwell" goes on to say that he was so intoxicated that "Mom looked better than a Baptist whore with a $100 donation," that he decided to have sex with his mother since she had "showed all the other guys in town such a good time," and that they had intercourse regularly afterwards. Finally, when asked if he had tried Campari since, "Falwell" answered, "I always get sloshed before I go out to the pulpit. You don't think I could lay down all that bullshit sober, do you?"

Many Muslims may not like what Michael Savage said but there is a difference between Savage's performance and the complete degradation of Falwell in the Hustler article.[4]

The court found that "the public interest in allowing an individual to defend himself

---

[4]This may be the only issue of Hustler where anyone ever bought the magazine for the articles.

**OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

14

1    against such derogatory personal attacks serves to rebut the presumption of unfairness." *(Hustler*

2    *Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1153 (9th Cir. 1986)) This means that

3    Michael Savage has a presumption in his favor that CAIR must rebut.  CAIR cannot do this on

4    the pleadings alone.

5        The greatest legal distinction between *Hustler* and the Savage case is that the *Hustler*

6    court found that Jerry Falwell's use did not affect the market value of Hustler's product.  This

7    determination was a fundamental basis for the decision.

8        Finally, we must consider "the effect of the use upon the potential market for or

9        value of the copyrighted work." 17 U.S.C § 107(4). "This factor is undoubtedly

10       the single most important element of fair use." Harper & Row, 105 S. Ct. at 2234.

11       See also 3 Nimmer § 13.05[A] at 13-76. "The purpose of copyright is to create

12       incentives for creative effort." Sony Corp., 464 U.S. at 450. "[A] use that has no

13       demonstrable effect upon the market for, or the value of, the copyrighted work

14       need not be prohibited in order to protect the author's incentive to create." Id.

15       Therefore, "fair use, when properly applied, is limited to copying by others which

16       does not materially impair the marketability of the work which is copied." Harper

17       & Row, 105 S. Ct. at 2234 (quoting 1 Nimmer § 1.10[D] at 1-87).

18       (*Hustler Magazine, Inc. v. Moral Majority, Inc*., 796 F.2d 1148, 1155 (9th Cir.

19       1986))

20       As discussed at length in this brief, CAIR has substantially damaged Michael Savage and

21   diminished the value of his product.  Unlike Jerry Falwell, CAIR did not defend itself or any

22   individual.  It disagreed with Michael Savage's statements, annointed itself the protector of those

23   criticized and then took his performance and located it next to a donation button.

24       If Savage is correct and CAIR used his work not for a "Falwellian" purpose but to line

25   their pockets and fund their criminal enterprise, then damages are presumed and unfairness in the

26   use is presumed.  "Every commercial use of copyrighted material is presumptively an unfair

27   exploitation of a copyright owner's monopoly; accordingly, the likelihood of future harm may be

28   **OPPOSITION TO MOTION FOR JUDGMENT**
     **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1  presumed. Sony Corp., 464 U.S. at 451". (*Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796

2  F.2d 1148, 1155 (9th Cir. 1986))

# RICO CLAIM

## VI. DAMAGES ARE PROPERLY PLED

5      CAIR asserts that Savage has not alleged RICO type damages.  Savage only needs to

6  allege damages to business or property in a manner consistent with Fed. R. Civ. P. 8 to show

7  standing.  Savage is not required to plead with the particularity required by Fed. R. Civ. P. 9(b).

8  In *NOW v. Scheidler*, 510 U.S. 249, 256, 127 L. Ed. 2d 99, 114 S. Ct. 798 (1994), the Supreme

9  Court stated, "that at the pleading stage, general factual allegations of injury resulting from the

10  defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations

11  embrace those specific facts that are necessary to support the claim." Id. (quoting Lujan v.

12  Defenders of Wildlife, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992))

13      In *NOW*, the plaintiffs alleged that the RICO conspiracy "had injured the [plaintiffs']

14  business and/or property interests . . . ." Id. (internal quotations omitted). The Court concluded

15  that "nothing more is needed to confer standing on [plaintiffs] at the pleading stage." Id.

16      Savage's damages are pled in more detail than those found sufficient by the Supreme

17  Court in *Now*.  Savage alleges that CAIR "repackaged and damaged the work" and he describes

18  how this damage was inflicted.  Paragraph 32-35 details the damage and contrasts CAIR's

19  packaging of the performance with the actual context.  In particular, Michael Savage's attack was

20  on Islamists who commit crimes in the name of religion.  He cited the murder homosexuals and

21  the mutilation of women as conduct that he despises.  There is no question that this was an

22  emotional presentation rather than a somber explication but that is the difference between pure

23  analysis and performance.  It is one of the core issues that a jury must consider when CAIR's

24  infringement is analyzed.

25      To show the full context of his show and to demonstrate how CAIR misused and

26  damaged his work, Savage, at FAC 34, quotes some of his very positive statements made about

27  non-violent Islam.  Savage then alleges that "CAIR destroyed the value of the copyright material

28  **OPPOSITION TO MOTION FOR JUDGMENT**
   **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

16

and the performance as a whole". (FAC 35) Paragraph 37 again emphasizes the harm caused by the misportrayal of the meaning of the performance. "... [T]he piece was directed toward violent terrorists who mask their personal evil with a false religious aura."

## VII. SAVAGE PROPERLY ALLEGES THE EXISTENCE OF A CONSPIRACY INVOLVING CAIR AND OTHER GROUPS INVOLVED IN TERROR

### A. CAIR Knowingly Participated in a Massive Conspiracy

In the 56 substantive pages of the FAC, Michael Savage details a massive conspiracy which used CAIR as its public mouthpiece.  The key to the FAC is the 1993 Philadelphia meeting.  (FAC 100-101).  If Savage is correct (and FBI wiretaps show that he is), CAIR's very formation arose out of the conspiracy.  CAIR has no existence separate from its role as the sanitized public mouthpiece of international terror.  CAIR may choose to dispute these assertions but they are made in good faith in the complaint and the basis for plaintiff's assertions are well documented.

### B. CAIR'S Foreign Funding is Documented

CAIR's illicit foreign ties are specifically alleged.  The lawsuit states that CAIR is a foreign agent in violation of FARA (FAC 58) This allegation is documented.  In the paragraphs that follow (FAC 59-62), Savage details how the funding for CAIR has a major overseas funding component.  FAC 102 is exhaustive in showing the continuing funneling of foreign funds to CAIR.   FAC 70 details how the seed money for CAIR came from Hamas based HLF which is on the government designated terror list.

### C. CAIR's Interlocking Directorates and Cooperation with Terror Groups is Documented

Savage traces the backgrounds and interlocking directorships involving the founders of CAIR.  He shows that they are tied to terror either by membership in terror groups or in many cases by conviction in the United States District Court. (FAC 63 ties founder and Chairman Emeritus, Omar Ahmad and current President, Nihad Awad to the designated terror group the

**OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1  IAP; FAC 66 shows how the controlling director of IAP was a leader of Hamas who was

2  deported by the United States; FAC 74 details how CAIR-SC donated directly to two groups on

3  the government's terror list and FAC 91 details how the 9/11 donation button linked to the

4  Hamas based HLF.  FAC 98 and 99 detail how the founder of defendant CAIR-Texas was

5  convicted of terrorist activities.  That same convicted terrorist was also an HLF board member.

6  This certainly describes the conspiracy and its members.  The complaint is replete with examples

7  of their illegal conduct.  It ranges from supporting terrorists (FAC 86, 87 (Bin Laden), 94 (HLF),

8  96, 97, 103 (unindicted co-conspirator to 1993 WTC bombing); 105 (Hezbollah and anti-

9  American fighters in Iraq).  Savage describes the cell-like structure of CAIR and the ever

10  changing, ever hidden relationships between the various groups.  (FAC 12-15).

11  **VIII. RICO PREDICATE ACTS WERE PLED AND DESCRIBED**

12  **A. 18 U.S.C. 1341 (mail fraud) and 1343 (wire fraud) Have Been Pled**

13       The extensive allegations that CAIR raised money as a charity when in fact it was

14  knowingly funding terror support the findings of mail and wire fraud.  Paragraph 91 which is

15  admitted by CAIR-SC, establishes that money solicited on the internet for 9/11 Survivors was

16  directed to the Hamas based Holy Land Foundation.  Direct donations by CAIR and CAIR-SC to

17  the Holy Land Foundation and other designated terror groups are pled.  The pleadings state that

18  CAIR was formed to support and fund these groups.  From its inception, the charitable purpose

19  of CAIR was a preplanned sham.  Raising money for terrorist groups under false pretenses is a

20  fraud that violates another listed RICO predicate act, 18 U.S.C. 1957 (relating to engaging in

21  monetary transactions in property derived from specified unlawful activity).

22

23  **B. FARA Violations and a Fraudulent Charitable Status Have Been Pled**

24       The lawsuit also alleges that CAIR received foreign money in violation of federal statute

25  and then used this money to advance a terrorist agenda.  The pleaded violations of the "Foreign

26  Agents Registration Act for the purpose of promoting terrorism is also a RICO predicate.  CAIR

27  is purporting to be a charity to cover its aid to foreign terror.  The lawsuit details the cell-like

28  **OPPOSITION TO MOTION FOR JUDGMENT**
   **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1  structure of CAIR and specifically alleges that this structure is meant to cover the flow of money

2  and to impede law enforcement.  These acts as a whole and as pled, violate 18 U.S.C. 1503

3  (relating to obstruction of justice), 18 U.S.C. 1510 (relating to obstruction of criminal

4  investigations), and 18 U.S.C. 1511 (relating to the obstruction of State or local law

5  enforcement).

6

7  **C. Criminal Copyright Infringement Has Been Pled**

8      The nature, purpose and manner of the piracy of Michael Savage's work violates 18

9  U.S.C. 2319 (relating to criminal infringement of a copyright).

10     Once these acts which were the specific and direct purvue of CAIR are considered, one

11 then advances to the predicate acts of the enterprise as a whole.

12     18 U.S.C. 1961(1) defines "racketeering activity" as including:

13     "(A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery,

14 extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as

15 defined in section 102 of the Controlled Substances Act), which is chargeable under State law

16 and punishable by imprisonment for more than one year."

17     The lawsuit lists the terror acts of CAIR's enterprise partners and once you include

18 terrorist bombings, the 9/11 terror attack, etc., all of the above RICO predicates are included.

19 Thus, plaintiff has alleged more than two RICO predicate acts against CAIR specifically and a

20 multitude of such acts by the overall enterprise.

21

22 **D. Overview of Predicate Act Allegations**

23     Defendant argues Savage fails "to allege even a single predicate act".  Above, plaintiff

24 notes just some of the predicate acts that are pled.  These are acts that CAIR was directly

25 involved with.   The establishment of a website that purports to raise money for the 9/11

26 survivors that then links to Hamas is the predicate act of wire fraud, mail fraud and other listed

27 RICO predicate acts.

28 **OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1    The complaint does much more than this. It explains how this conspiracy operates by

2    dividing into cells with each cell helping the other but each cell maintaining a separate identity.

3    The complaint details the relationship between Hamas and the HLF and the cross directorship of

4    the HLF to the IAP, CAIR and other Hamas based groups. CAIR is closely interwined with

5    convicted terrorists and with numerous identified terror groups. This will cause CAIR great

6    difficulty when they claim at trial that they thought that the HLF genuinely would aid survivors

7    of 9/11.[5]

8    The funding trail which shows massive amounts of money coming from Middle East

9    sources must be viewed in light of the other paragraphs of the FAC that show that the

10   establishment of CAIR came from the 1993 Philadelphia meeting of Hamas based agents. The

11   fact that they disguised the name Hamas as "Samah" speaks volumes about their understanding

12   of the wrongfulness of their plans.

13   The importance of the cell structure (as in United States v. Bin Laden, 2001 U.S. Dist.

14   LEXIS 959 (D.N.Y. 2001)) is reflected in the Savage pleading. The pleading explains how

15   CAIR facilitates confusion of law enforcement and helps obscure the activities of CAIR.

16   This concept of a cell structure to these terrorist groups is not an invention of Michael

17   Savage. It is the way terror groups operate. What is important is that CAIR fills a specific role

18   in the overall conspiracy. It provides money, cover and support so that other cells can do their

19   work.

20   The Defendant's third exculpatory request seeks items which indicate that al

21   Qaeda operated under a "cell" structure "in which participants were informed of

22   plans and activities only on a 'need to know' basis." (Dratel Decl. P 8(3).) The

23   Court finds that, although these items are not necessarily exculpatory, information

24   about the organizational infrastructure of al Qaeda is material to the defense under

25

26   [5]In its Rule 26 disclosure, plaintiff will produce a declaration which details how the
     HLF's donations to families in the Middle East went to people whose cause of death was listed
27   on the death certificate as "Martyr".

28   **OPPOSITION TO MOTION FOR JUDGMENT**
     **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1    Rule 16. To the extent that there are documents or other tangible items which are

2    in the custody and control of the Government and which are responsive to the

3    Defendant's requests, the Court orders their production.

4    (*United States v. Bin Laden*, 2001 U.S. Dist. LEXIS 959 (D.N.Y. 2001))

5    Once Savage establishes that CAIR is part of a conspiracy, standard Pinkerton liability

6    can (and as pled, does) lead to liability for the activities of the terror related cells including such a

7    dramatic event as the World Trade Center attack.   While Bin Laden and many of the high profile

8    terrorist leaders create a cartoon like and very recognizable evil, it is also true that there is a

9    banality of evil where (according to Hannah Arendt), the greatest evil is not executed by fanatics

10   or sociopaths but rather by ordinary people who accepted the premises of their state and therefore

11   participated with the view that their actions were normal.  It is that banality that CAIR seeks to

12   foster and its public actions belie their private funding of Hamas and their conspiratorial purpose.

### IX. CAIR Has Notice of Each Applicable RICO Section

14   Defendant seeks to assert a lack of notice as to the role of CAIR-SC in this conspiracy.  In

15   particular, CAIR-SC complains that there has not been a specification of which subsection of

16   1962 is pled.  Plaintiff has alleged and documented a huge and complex conspiracy.  This is not a

17   simple case involving abortion protesters interfering with the operation of a clinic.  The case

18   against CAIR is one of many cases filed nationwide against the various arms of an international

19   movement.  The conduct of this group involves all aspects of RICO and the criminal conduct can

20   only be viewed as a whole.

### A. 1962(a)

22   Under section 1962(a), the defendant must use or invest the proceeds of racketeering

23   activity in the enterprise. Section 1962(a) is primarily concerned with money laundering

24   activities.   Paragraph 83 of the FAC specifically alleges that CAIR invested money with the

25   North American Islamic Trust.  The same paragraph alleges that the United States Attorney has

26   listed the North American Islamic Trust as being affiliated with the Muslim Brotherhood terrorist

27   group.  Paragraph 119 describes how CAIR raises money under the guise of being a charity when

28   **OPPOSITION TO MOTION FOR JUDGMENT**
     **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1    in fact it is an arm of international terror.  Paragraph 124 specifies some of the criminal statutes

2    violated by CAIR and this includes statutes involving wire fraud and numerous other financial

3    based crimes.  Paragraph 126 describes how members of the conspiracy hid financial actions in

4    order to avoid tax consequences and to hide the use of funds to support terror groups.  Paragraph

5    127 specifically alleges that CAIR supplied money to terror groups to facilitate criminal conduct

6    by those groups.  Paragraph 129 details how money from CAIR and co-conspirators is used to

7    fund terrorism.  It is not exhaustive but it is a partial description of how the money is used in that

8    it describes the purchase of weapons and the means of conveying the money, e.g. by

9    wire/electronic transfers.

10          These allegations put CAIR on notice that § 1962(a) is being invoked and they understand

11   what activities are being alleged as the basis of this. In fact, CAIR-SC has admitted the key

12   portion of paragraph 91 of the complaint.  CAIR-SC has admitted that their 9/11 appeal to help

13   victims of the bombing linked to the Holy Land Foundation.  The HLF is part of the Hamas

14   network and it is Specially Designated as a Global Terrorist Organization by the U.S. Treasury

15   Department.  This is alleged in paragraph 147.  Therefore CAIR has admitted that when they

16   solicited funds to benefit the victims of 9/11, they linked people to a group that the U.S.

17   government states is linked to Hamas.  At trial plaintiff will be presenting evidence showing how

18   money from the Holy Land Foundation supports terror.  Plaintiff has the benefit of the

19   government's work in the criminal case, U.S. v. Holy Land Foundation being retried after a

20   mistrial before the Honorable Joe Fish, United States District Court, Northern District of Texas.

21   This case is cited in the FAC at paragraph 64.  While the complaint cannot name every financial

22   transaction engaged in by CAIR as part its role in the enterprise, its role in illegal financial

23   transfers ultimately exists in the abstract and also specifically with respect to plaintiff, Michael

24   Savage.

25

26   **B. 1962(b)**

27          Under section 1962(b), the defendant must acquire or maintain an interest in or control of

28   **OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

22

1   an enterprise through a pattern of racketeering activity. The type of "interest" contemplated in

2   section 1962(b) is not just any "interest" but a proprietary one, such as the acquisition of stock,

3   and the "control" contemplated is the power gained over an enterprise's operations by acquiring

4   such an interest. (See e.g. *Whaley v. Auto Club Ins. Assoc.,* 891 F. Supp. 1237, 1240-41 (E.D.

5   Mich. 1995) (citing Reves v. Ernst & Young, 507 U.S. 170 (1993)).

6       The RICO complaint details how CAIR was formed and why it was formed.  It

7   specifically cites the 1993 Philadelphia meeting where members of Hamas terror organizations

8   met and discussed organizational structure.  The outcome of that meeting was that Hamas would

9   speak in strong language to its core constituency but in the U.S. they would form a front group

10  using charity as a cover for its real purpose which was and is to advance the goals of a foreign

11  terror groups.

12      Paragraph 100 and 101 of the FAC describe the Philadelphia meeting.  Paragraph 101

13  describes how the 20 participants agreed to refer to Hamas as Samah (Hamas spelled backwards).

14  (This ruse did not fool the FBI agents who recorded the meeting.)  The FAC alleges that at the

15  meeting the "Samah" members agreed that the Oslo peace process could not go forward and that

16  they needed to form a charitable face in order to continue to support "Samah".

17      Many of the paragraphs describe how the CAIR leadership is the same leadership of the

18  openingly Islamic groups (many of which are on U.S. government designated terror lists).

19  Paragraph 101 shows how the current President of CAIR was a participant at the Philadelphia

20  meeting and a director of the Islamic Association for Palestine (IAP).  Paragraph 146 contains a

21  finding by the Honorable Gladys Kessler, Judge of the United States District Court, District of

22  Columbia.  Judge Kessler found that the IAP acted in support of Hamas.  Paragraph 66 describes

23  how the IAP helped found CAIR and then describes in detail some of its ties to Hamas.

24  Paragraph 67 cites the FBI's allegation that the IAP is an Hamas group.  Paragraph 68 details

25  more of the Hamas activities of CAIR founder Omar Ahmad.  Paragraph 74 details how Ahmad

26  sat on the board of directors of defendant, CAIR-SC.

27      From this formation in Philadelphia, the complaint details how CAIR provides support

28  **OPPOSITION TO MOTION FOR JUDGMENT**
    **ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**
                            23

1    for and promotes the positions of terrorists.  FAC 82 details how suspected 1993 World Trade

2    Center co-conspirator, Siraj Wahhaj spoke at a CAIR conference titled "A United and Secure

3    America: With Liberty and Justice for All".  Paragraph 83 has more specific allegations.  The

4    FAC is a roadmap of this groups role supporting terror in the U.S. and abroad.   It describes

5    CAIR's formation and the conspiracy's organizational structure.  It describes CAIR's purpose

6    and it cites various overt acts consistent with that illegal purpose.  It alleges liabililty on the part

7    of CAIR for CAIR's individual action and for the conduct of its co-conspirators.

8    **C. 1962(c)**

9        To state a claim under §1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise

10   (3) through a pattern (4) of racketeering activity." Sedima v. Imrex Co., 473 U.S. 479, 496 (U.S.

11   1985) (footnote omitted). Ninth Circuit noted that "[i]t is undisputed that a corporation can be an

12   `individual' for purposes of an associated-in-fact enterprise" and that the question before it "is the

13   manner in which a group must be associated." Id., at 548.   The Philadelphia meeting, the

14   formation of CAIR, the funding of CAIR by Hamas (HLF), the founding of CAIR by IAP and

15   other terror group members, the arrests and convictions of CAIR members and the specific acts

16   that CAIR took in its part of the conspiracy more than satisfy any pleading requirements.

17   **D. 1962(d)**

18       A RICO claim in any case is broad but a RICO conspiracy claim is even broader. Anyone

19   who agrees or conspires to pursue the same criminal objective can be held liable for a RICO

20   violation. *Salinas v. United States*, 522 U.S. 22, 63-64 (1997). "If conspirators have a plan which

21   calls for some conspirators to perpetrate the crime and others to provide support, the supporters

22   are as guilty as the perpetrators." Id. at 64. A conspirator must simply intend to further an

23   endeavor which, if completed, would satisfy all elements of a civil RICO claim. Id. at 65. Thus,

24   there are two ways to effectively defend against a RICO conspiracy claim: 1) the defendant must

25   prove he never intended to further the criminal endeavor; or 2) the defendant must prove that the

26   endeavor did not satisfy the elements of a civil RICO claim. Because the first defense is fact

27   based, it is seldom an appropriate defense to raise in a dispositive motion. The best way to

28   **OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**

1  undermine a claim for conspiracy on a dispositive motion is to undermine the legal sufficiency of

2  the allegations supporting the substantive offense. See *Howard v. American Online Inc.*, 208

3  F.3d 741, 751 (9th Cir. 2000) (a claim under section 1962(d) may not stand unless the plaintiffs

4  can sustain a viable claim under another subsection of section 1962).

5      In terms of a RICO conspiracy, *Salinas v. United States*, 522 U.S. 22, 63-64 (1997) held

6  that "[i]f conspirators have a plan which calls for some conspirators to perpetrate the crime and

7  others to provide support, the supporters are as guilty as the perpetrators." Id. at 64.  A

8  conspirator must simply intend to further an endeavor which, if completed, would satisfy all

9  elements of a civil RICO claim. Id. at 65.

10                          *CONCLUSION*

11      While CAIR's defense is well researched and spirited, it faces an insurmountable burden,

12  the presumption for purposes of this motion that plaintiff's allegations are true.  This motion was

13  probably useful in focusing all parties on the key factual and legal issues in the case but it has no

14  basis for being granted.  It is the template for a summary judgment motion (and plaintiff does not

15  ask that the filing of Exhibits A & B make this defendant's only permissive Rule 56 motion).

16  Plaintiff's allegations are well researched and well documented.  One almost wishes that plaintiff

17  was wrong in his claims because it is painful to believe that such a cynical and invidious group

18  can exist in this country.  And yet, the 9/11 survivor appeal being linked to the Hamas group, the

19  HLF, has been admitted by CAIR.  It is chilling and disturbing to contemplate the type of person

20  who would create and maintain such a link.  It is even more chilling to realize that such a person

21  probably looks, talks and acts like everyone else.

22      There truly is a banality to evil.

23

24  Dated: February 6, 2008

25

26  _____
                        Daniel A. Horowitz
27                     Attorney for Plaintiff

28  **OPPOSITION TO MOTION FOR JUDGMENT
    ON THE PLEADINGS Fed. Rule Civ. Proc. 12 (c)**