1  Thomas R. Burke (CA State Bar No. 141930)
   Jeff Glasser (CA State Bar No. 252596 – Application to N.D. Cal. Pending)
2  DAVIS WRIGHT TREMAINE LLP
   505 Montgomery Street, Suite 800
3  San Francisco, California 94111
   Telephone:    (415) 276-6500
4  Facsimile:    (415) 276-6599
   Email:        thomasburke@dwt.com
5
6  Matt Zimmerman (CA State Bar No. 212423)
   ELECTRONIC FRONTIER FOUNDATION
7  454 Shotwell Street
   San Francisco, CA 94110
8  Telephone:    (415) 436-9333
   Facsimile:    (415) 436-9993
9  Email:        mattz@eff.org

10
11 Attorneys for Defendant Council on American-Islamic
   Relations, Inc., Council on American-Islamic Relations Action Network, Inc.,
   and Council on American-Islamic Relations of Santa Clara, Inc.
12

13             IN THE UNITED STATES DISTRICT COURT

14             THE NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16
   MICHAEL SAVAGE,                    )  Case No. CV07-06076 SI
17                                     )
            Plaintiff,                 )  **REPLY TO OPPOSITION TO MOTION**
18                                     )  **FOR JUDGMENT ON THE PLEADINGS**
        v.                             )
19                                     )  Date: March 7, 2008
   COUNCIL ON AMERICAN-ISLAMIC        )  Time: 9:00 a.m.
20 RELATIONS, INC., COUNCIL ON         )  Courtroom 10, 19th Floor
   AMERICAN ISLAMIC RELATIONS ACTION  )  Honorable Susan Illston
21 NETWORK, INC., COUNCIL ON AMERICAN  )
   ISLAMIC RELATIONS OF SANTA CLARA,   )
22 INC., and DOES 3-100,               )
                                       )
23          Defendants.                )
                                       )
24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ...................................................................................................... 2

     A.   Evaluation of Fair Use Defense at Judgment on the Pleadings Stage
          is Proper Where, As Here, No Material Facts are In Dispute. ................... 2

     B.   The Enumerated Fair Use Factors All Favor CAIR. ................................. 2

          1.   The "Purpose and Character of the Use" Factor Evaluates
               the Manner of the Use, Not the Motivation Behind It. .................... 3

          2.   The "Amount and Substantiality" of the Use – To Be
               Determined as a Matter of Law – Favors CAIR. ............................ 5

          3.   The Fourth Fair Use Factor Does Not Consider Economic
               Harm Resulting From Criticism. ..................................................... 7

III. PLAINTIFF'S FRIVOLOUS RICO CLAIM FAILS AS A MATTER
     OF LAW. ............................................................................................................ 8

     A.   Savage Does Not Satisfy The Standing Requirements for a RICO
          Claim Because His Pled Damages Are Barred by the Fair Use
          Doctrine. .................................................................................................... 8

     B.   Savage Ignored the Proximate Cause Requirement Which is Fatal to
          his RICO Claim. ...................................................................................... 11

     C.   Savage's Claim also Fails Because He Has Not Pled That CAIR
          Directed or Participated in the Management of a RICO Enterprise. ....... 12

     D.   Savage's Attempt to Explain the Pleading of a Section 1962(a)
          Money Laundering RICO Violation is Deficient Because Savage
          Has Failed To Show Injury From Improper Use of Racketeering
          Income. .................................................................................................... 13

     E.   Savage Still Has Not Pled Each Asserted Predicate Act of Fraud
          With Particularity, As He Must Under Rule 9(b). ................................... 14

IV.  THE FIRST AMENDMENT PROVIDES A SEPARATE AND
     COMPLETE DEFENSE TO SAVAGE'S CLAIMS. ...................................... 15

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abend v. MCA, Inc.*,
    863 F.2d 1465 (9th Cir. 1988).................................................................................... 2

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................... 11

*Binghampton Masonic Temple, Inc. v. Bares*,
    168 F.R.D. 121 (N.D.N.Y. 1997) ............................................................................ 11

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ...................................................................................... 4, 5, 7, 8

*Consumers Union of U.S. Inc. v. General Signal Corp.*,
    724 F.2d 1044 (2d Cir.1983) ..................................................................................... 8

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) ..................................................................................... 9

*Edwards v. Marin Park, Inc.*,
    356 F.3d 1058 (9th Cir. 2005)................................................................................. 14

*Employers Ins. of Wausau v. Price Aircraft Co., LLC*,
    283 F.Supp.2d 1144 (D.Hawaii 2003) ...................................................................... 2

*Environmental Planning & Information Council v. Superior Court*,
    36 Cal.3d 188 (1984).............................................................................................. 8, 9

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*,
    12 F. Supp. 2d 1068 (C.D. Cal. 1998)..................................................................... 15

*Fisher v. Dees*,
    794 F.2d 432 (9th Cir. 1986) .................................................................................. 2, 7

*Flores v. Emerich & Fike*,
    416 F. Supp. 2d 885, 911 (E.D. Cal. 2006) ............................................................ 14

*Grider v. Texas Oil & Gas Corp.*,
    868 F.2d 1147 (10th Cir. 1989) .............................................................................. 13

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ............................................................................................... 3, 4

*Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*,
    914 F.2d 74 (5th Cir. 1990)....................................................................................... 2

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ................................................................................................. 9

*Hustler Magazine Inc. v. Moral Majority, Inc.*,
    796 F.2d 1148 (9th Cir. 1986)...................................................................... 1, 4, 5, 7

*In re Terrorist Attacks of September 11, 2001*,
    No. 03 MDL 1570 (RCC) ECF Case (S.D.N.Y. 2008) ........................................... 10

*Infinity Broadcast Corp. v. Kirkwood*,
    150 F.3d 104 (2nd Cir. 1998) ................................................................................... 7

*John P. O'Neill, Sr., et al. v. Al Baraka, et al.*,
    No. 04 CV 01923 (RCC)........................................................................................ 10

DAVIS WRIGHT TREMAINE LLP

ii

DAVIS WRIGHT TREMAINE LLP

*JPMorgan Chase Bank, N.A. v. Winget,*
 510 F.3d 577 (6th Cir. 2007) ........................................................................... 3

*Keep Thomson Governor Committee v. Citizens for Gallen Committee,*
 457 F.Supp. 957 (D.N.H.1978) ........................................................................ 5

*Kelly v. Arriba Soft Corp.,*
 336 F.3d 811 (9th Cir. 2003) ........................................................................... 7

*Leadsinger, Inc. v. BMG Music Pub.,*
 512 F.3d 522 (9th Cir. 2008) ........................................................................... 2

*Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.,*
 780 F.Supp. 1283 (N.D. Cal. 1991) ................................................................. 7

*Madonna v. U.S.,*
 878 F.2d 62 (2nd Cir. 1989) ............................................................................ 3

*Mattel, Inc. v. Walking Mountain Prods.,*
 353 F.3d 792 (9th Cir. 2003) ........................................................................... 8

*Maxtone-Graham v. Burtchaell,*
 803 F.2d 1253 (2nd Cir. 1986) ........................................................................ 5

*McCready v. eBay, Inc.,*
 453 F.3d 882 (7th Cir. 2006) ........................................................................... 2

*Mixon v. Ohio,*
 193 F.3d 389 (6th Cir.1999) ............................................................................ 3

*NAACP v. Claiborne Hardware Co.,*
 458 U.S. 886 (1982) ........................................................................................ 8

*National Rifle Ass'n of America v. Handgun Control Federation of Ohio,*
 15 F.3d 559 (6th Cir. 1994) ............................................................................. 5

*NOW v. Sheidler,*
 510 U.S. 249 (1994) ........................................................................................ 9

*NXIVM Corp. v. Ross Institute,*
 364 F.3d 471 (2nd Cir. 2004) ................................................................... 4, 5, 6

*Odom v. Microsoft Corp,*
 486 F.3d 541 (9th Cir. 1997) ......................................................................... 12

*Perfect 10, Inc. v. Amazon.com, Inc.,*
 487 F.3d 701 (9th Cir. 2007) ........................................................................... 3

*Phelps v. Wichita Eagle-Beacon,*
 886 F.2d 1262 (10th Cir. 1989) ....................................................................... 8

*Poulos v. Caesars World, Inc.,*
 379 F.3d 654 (9th Cir. 2004) ......................................................................... 11

*Religious Technology Center v. Netcom On-Line Communication Services, Inc.,*
 923 F.Supp. 1231 (N.D.Cal. 1995) .................................................................. 4

*Reves v. Ernst & Young,*
 507 U.S. 170 (1993) ....................................................................................... 12

*Sebastian Intern., Inc. v. Russolillo,*
 186 F. Supp. 2d 1055 (C.D. Cal. 2000) .......................................................... 13

*Sony Corp. of America v. Universal City Studios, Inc.,*
 464 U.S. 417 (1984) ........................................................................................ 7

iii

*Spruill v. Gillis,*
   372 F.3d 218 (3rd Cir. 2004)....................................................................................................... 2

*Trollinger v. Tyson Foods, Inc.,*
   370 F.3d 602 (6th Cir. 2003)..................................................................................................... 11

*Video-Cinema Films, Inc. v. Lloyd E. Rigler-Lawrence E. Deutsch Foundation,*
   2005 U.S. Dist. 26302 (S.D.N.Y. 2005) ................................................................................... 6

*Virginia v. Black,*
   538 U.S. 343 (2003) .................................................................................................................. 5

**Statutes**

17 U.S.C. § 107 ......................................................................................................................... 3, 4

Fed. R. Civ. P. 12(c)........................................................................................................ 2, 3, 11, 12

**Other Authorities**

Melville and David Nimmer, Nimmer on Copyright § 13.05[A][3].............................................. 6

William Patry, *Patry on Copyright* § 10:13 (2007) ............................................................. 3, 5, 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DAVIS WRIGHT TREMAINE LLP

Case No. CV07-06076 SI
CAIR'S REPLY TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
SFO 403538v1 0085997-000001

## I.    INTRODUCTION

CAIR's use of the limited audio excerpts of Savage's radio program to comment on and criticize Savage's nationally-syndicated radio program is, as a matter of law, fair use. No facts are in dispute, and all of the four fair use factors weigh strongly in CAIR's favor. Savage fails to counter CAIR's fair use arguments, and his insistence that political speech is not a protected fair use and that critics may only use copyrighted materials to counter individualized personal attacks by a copyright holder does not have the slightest grounding in law. *See Hustler Magazine Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1153-1155 (9th Cir. 1986). Now that Savage has impermissibly premised his RICO claim on CAIR's alleged infringement, his failure to offer even a colorable argument as to how CAIR's response and criticism of his radio program is not a protected fair use confirms that this lawsuit is nothing more than a transparent attempt to unlawfully silence an effective critic. *See* Section III *infra*.

Savage's Opposition also cannot overcome the multiple deficiencies in the RICO claim in his twice amended Complaint.[1] First, Savage cannot satisfy the standing requirements for a RICO cause of action by claiming advertising losses, since any losses come from CAIR's exercise of constitutionally protected speech. Second, Savage completely ignores the proximate cause requirement that is the heart of any civil RICO claim. Third, Savage fails to establish that CAIR directed or played a management role in a "RICO enterprise" involving Al Qaeda and/or Hamas, as he must to make a claim under sections 1962(c) and (b). Fourth, Savage's insistence that he pleaded facts establishing a section 1962(a) money laundering RICO violation fails as a matter of law because Savage has not met the requirement to show that he suffered an injury by reason of improper use of racketeering income. Finally, Savage still has not met the particularity requirements for pleading predicate acts of fraud, as required under Federal Rule 9(b). For each of these independent reasons, Savage's RICO claim should be dismissed with prejudice.

---

[1] Savage filed his Second Amended Complaint on Feb. 14, 2008 and refiled it fixing a small error on Feb. 19, 2008. The parties stipulated and the Court ordered that this filing does not moot this Motion and that Defendants Council on American-Islamic Relations, Inc., Council on American-Islamic Relations Action Network, Inc., have joined this Motion. *See* Stip. & Order at 2-3.

DAVIS WRIGHT TREMAINE LLP

## II.    ARGUMENT

### A.    Evaluation of Fair Use Defense at Judgment on the Pleadings Stage is Proper Where, As Here, No Material Facts are In Dispute.

Savage's assertion that affirmative defenses in general – and assertions of fair use specifically – are "trial defenses" and "cannot be determined in CAIR's favor in the context of a Rules 12(c) motion" is without merit. *See* Savage's Opposition to Motion for Judgment on the Pleadings ("Opp.") at 1. A motion brought pursuant to Fed.R.Civ.P. 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). In order to evaluate such a motion, it is not only proper but necessary to evaluate affirmative defenses where, as here, no facts beyond those alleged in the complaint are necessary to make such a determination. *See, e.g., McCready v. eBay, Inc.*, 453 F.3d 882, 892 FN.2 (7th Cir. 2006); *Spruill v. Gillis*, 372 F.3d 218, 233 n.2 (3rd Cir. 2004); *Employers Ins. of Wausau v. Price Aircraft Co., LLC,* 283 F.Supp.2d 1144, 1147 (D. Hawaii 2003).

As previously discussed by CAIR in its moving papers (*see* CAIR's Memorandum of Points & Authorities ISO Motion for Judgment on the Pleadings ("CAIR's Opening Brief") at 6), where (as here) the operative facts are presumed or admitted, the Court may make a fair use determination as a matter of law. *See, e.g., Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1468 (9th Cir. 1988); *Fisher v. Dees*, 794 F.2d 432, 435-36 (9th Cir. 1986); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F.Supp.2d 962, 971-972 (C.D. Cal. 2007).

### B.    The Enumerated Fair Use Factors All Favor CAIR.

CAIR will not repeat its detailed arguments regarding application of the fair use factors to its criticism of the Savage radio show excerpts. *See* CAIR's Opening Brief at 4-12. In reply, however, CAIR specifically addresses several misunderstandings and flat-out misapplications of controlling case law offered by Savage in his Opposition.

DAVIS WRIGHT TREMAINE LLP

Case No. CV07-06076 SI
CAIR'S REPLY TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
SFO 403538v1 0085997-000001

1.    **The "Purpose and Character of the Use" Factor Evaluates the Manner of the Use, Not the Motivation Behind It.**

Savage's assertion that "CAIR's affirmative defense relies upon a jury believing that CAIR is a charity and a civil rights group" betrays a significant misunderstanding of the first enumerated factor. Opp. at 5. This factor asks the Court to examine the "purpose and character of the use," not the alleged motivation behind it. This is a straightforward test, and properly applied, it weighs heavily in CAIR's favor. On its face,[2] the web page cited by Savage on which the link to the radio excerpts appears clearly comments on and criticizes the substance of that program. *See* Parvez Decl. Ex. A. For example, CAIR calls for "radio listeners of all faiths" to contact companies that advertise on Savage's program "to express their concerns about the host's recent anti-Muslim tirade." *Id.* After describing how Savage "screamed attacks on Muslims, Islam and the Quran, Islam's revealed text, during his October 29, 2007, program," CAIR then includes comments from its communications director warning that Savage "obviously cares little about the safety or civil rights of American Muslims" and that "hate-filled words can and do lead to violent actions against American Muslims." *Id.* "Comment" and "criticism" such as CAIR's web page critique are explicitly permitted under 17 U.S.C. § 107. By contrast, neither the statute nor any applicable case law directs the court to analyze any underlying "motive" behind that criticism or commentary. The first factor asks "what use was made," not "who is the user." *See* William Patry, *Patry on Copyright* § 10:13 (2007).

---

[2] In evaluating the purpose and character of CAIR's use of the Savage radio excerpts, the Court is obligated to review the context of that use. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 722 (9th Cir. 2007) (finding that Google's use of thumbnail versions of copyrighted images in its "Image Search" application was transformative, as it placed the images "in a new context to serve a different purpose."); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 796-98, 800-06 (9th Cir. 2003) (concluding that photos parodying Barbie by depicting "nude Barbie dolls juxtaposed with vintage kitchen appliances" was a fair use). While all factual allegations must be taken as true for purposes of a 12(c) motion for judgment on the pleadings, no factual allegations are in dispute here, and the court must draw the legal conclusions from all of the material factual allegations, including the use of the clips within the context of CAIR's criticism. *See, e.g., JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007) (court "need not accept as true legal conclusions or unwarranted factual inferences" pursuant to ruling on a 12(c) motion) (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)); *Madonna v. U.S.*, 878 F.2d 62, 65 (2nd Cir. 1989) (pleader's own legal conclusions and characterizations need not be accepted in considering Rule 12(c) motion for judgment on the pleadings).

DAVIS WRIGHT TREMAINE LLP

1    Savage's reliance on *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539

2    (1985) is inapposite. The "good faith and fair dealing" inquiry cited by the *Harper* Court refers to

3    its ability to consider whether the copyrighted material was obtained in an illegal or immoral

4    manner – in that case the theft and publication of a previously unpublished manuscript. *See, e.g.,*

5    *Harper*, 471 U.S. at 562-63. No such illicit behavior is at issue here.[3] CAIR obtained audio

6    excerpts of Savage's publicly broadcast radio program legally (Savage makes no allegations to the

7    contrary) and engaged in the kind of fair use explicitly authorized by the Copyright Act. That

8    Savage has alleged that CAIR is involved in far-flung international conspiracies – quite separate

9    from its criticism of the copyrighted work at issue – is irrelevant.[4]

10    Savage further erroneously argues that fair use criticism and commentary is limited to

11    defending one's self or an identifiable individual. *See* Opp. at 13-16. Not surprisingly, Savage

12    cannot point to a single case that stands for this proposition, nor can he explain what the rationale

13    for such a rule would be. *Hustler Magazine Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir.

14    1986), cited by Savage for the this point, holds no such thing. Allowing individuals to respond to

15    criticism aimed at them is an important interest protected by the fair use doctrine, as the *Hustler*

16    Court recognized. Nowhere does the Court suggest, however, that this type of criticism amounts

17    to the exclusive range of commentary and criticism permitted by the Copyright Act, nor could it

18    given the lack of any such limitation in the statute itself. *See* 17 U.S.C. § 107. Indeed, *Hustler*

19    directly contradicts Savage's assertion: The Court's fair use holding applied not only to Falwell

20    (the individual criticized in the original magazine advertisement) but also to defendants Moral

21    Majority, Inc. and Old Time Gospel Hour, a "conservative political lobbying group" and a

[3] Savage's argument that CAIR's use of the excerpts "was intended to destroy the value and credibility of the work" is similarly irrelevant and does not, even if true, support the type of "bad faith" consideration in *Harper*. *See* Opp. at 2.

[4] In any case, even if the type of "bad faith" allegation seen in *Harper* were at issue here (and it is not), the Supreme Court and subsequent courts of appeal have properly cast doubt upon the relevance of any such "bad faith" inquiry to a fair use analysis as a whole. *See, e.g., Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994) ("[R]egardless of the weight one might place on the alleged infringer's state of mind," failure to ask for or obtain permission is irrelevant "[i]f the use is otherwise fair."); *NXIVM Corp. v. Ross Institute*, 364 F.3d 471, 479 n.2 (2nd Cir. 2004) ("[A] finding of bad faith is not to be weighed very heavily within the first fair use factor and cannot be made central to fair use analysis."). *See also Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 923 F.Supp. 1231, 1244 n.14 (N.D.Cal. 1995).

DAVIS WRIGHT TREMAINE LLP

1  "corporate sponsor of religious television and radio broadcasts," respectively, which both

2  distributed hundreds of thousands of mailings in order to defend Falwell. *Hustler*, 796 F.2d at

3  1150. The narrow rule suggested by Savage would certainly come as a surprise to the long line of

4  courts finding criticism created in a manner unrelated to defending against personalized attacks to

5  be fair use. *See, e.g, Campbell*, 510 U.S. at 573; *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253,

6  1260, 1265 (2nd Cir. 1986).

7       Savage's additional emphasis on the alleged "political" motivation behind CAIR's use of

8  the audio excerpts further bolsters the conclusion that the first fair use factor strongly weighs in

9  CAIR's favor. *See, e.g.,* Opp. at 5 (Savage "alleges that there is a non-charitable, political purpose

10 in the use of the segment."). Political speech is "at the core of what the First Amendment is

11 designed to protect." *Virginia v. Black*, 538 U.S. 343, 365 (2003). Explicitly recognizing that

12 fact, courts repeatedly have held that the "liberal use of [copyrighted] material for such a purpose

13 should be permitted." William Patry, *Patry on Copyright* § 10:127 (2007). The Ninth Circuit in

14 *Hustler* specifically found the defendant's use of copyrighted materials for political purposes to be

15 a fair use. *Hustler*, 796 F.2d at 1156 ("[T]he Defendants used the copies to generate moral

16 outrage against their 'enemies' and thus stimulate monetary support for their political cause.").

17 *See also National Rifle Ass'n of America v. Handgun Control Federation of Ohio*, 15 F.3d 559,

18 562 (6th Cir. 1994); *Keep Thomson Governor Committee v. Citizens for Gallen Committee*, 457 F.

19 Supp. 957, 961 (D.N.H.1978).

20      In short, CAIR need not prove (and Savage gains nothing from attempting to disprove) that

21 it is a "charity and civil rights group." *Anyone* may utilize copyrighted materials for purposes of

22 commentary and criticism – political or otherwise – regardless of who or what the speaker

23 supports (publicly or privately).

24       2.   **The "Amount and Substantiality" of the Use – To Be Determined as a Matter of Law – Favors CAIR.**

25

26 Savage also misunderstands the application of the third factor to a fair use analysis.[5]

27 Indeed, he does not even suggest that CAIR's analysis – that the amount and substantiality of the

28 ──────────────────────────────
[5] As CAIR explained in its Opening Brief at 9-10, the second fair use factor is not seriously in

Case No. CV07-06076 SI
CAIR'S REPLY TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
SFO 403538v1 0085997-000001

DAVIS WRIGHT TREMAINE LLP

1    excerpts favor CAIR – is incorrect.  Rather, he asserts that "the meaning of 'heart' of the Savage

2    performance may be determined by the length of the entire show in the abstract or a jury may be

3    more interested in the length of the segment."  Opp. at 9.  This assertion makes no sense and is

4    incorrect.

5         Accepting Savage's allegations as true, the third factor analysis favors CAIR in terms of

6    both amount as well as substantiality.  As alleged by Savage, CAIR provided a link on its website

7    to slightly more than four minutes of audio excerpts from a two-hour daily radio talk show

8    program.[6]  This amount is comparable as a percentage to the amount used in the lead case cited by

9    Savage in his "amount and substantiality" argument, *Video-Cinema Films, Inc. v. Lloyd E. Rigler-*

10   *Lawrence E. Deutsch Foundation*, 2005 U.S. Dist. 26302 (S.D.N.Y. 2005).  In that (unpublished)

11   case, the district court noted that the amount of the material used "was extremely small in

12   comparison with the total length of the movie," that "no reasonable jury would conclude that the

13   [excerpt] is the 'heart' of the film," and that, consequently, the factor weighed in favor of fair use.

14   *Id.* at *30.

15        More important to the application of the third fair use factor is a determination of the

16   qualitative substantiality of the use and whether it amounts to the "heart" of the work.  On this

17   point, Savage yet again effectively makes CAIR's point for it.  As he does in his Complaint,

18   Savage repeatedly argues that the excerpts did *not* capture the essence of Savage's work and that

19   his program really is "about" other things.  Opp. at 10.  Additional examples of Savage repeatedly

20

21   play, and Savage's Opposition offers no analysis beyond what amounts to an argument for the
     third factor.

22   [6] CAIR again notes that although he has failed to plead it as required, Savage has apparently
     registered the copyright in the October 29, 2007, episode of the "Michael Savage Show" as a
23   whole.  *See* Copyright Registration Number SR0000610214, registered December 17, 2007,
     attached as Exhibit A to Zimmerman Decl. in Support of Request for Judicial Notice.  Having
24   registered the program in its entirety as a *single work*, he is barred from now arguing that an
     "amount and substantiality" analysis can be undertaken by comparing the CAIR excerpts to
25   incremental portions.  *See, e.g.*, Melville and David Nimmer, Nimmer on Copyright § 13.05[A][3]
     ("[T]he plaintiff manifestly cannot be heard to argue that the defendant's copying of brief passages
26   vouchsafes their qualitative significance or to argue that it could have separately registered as an
     individual "module" each snippet that defendant copied."); *NXIVM Corp.*, 364 F.3d at 481
27   ("Plaintiffs cite no authority to support [its position] – the third factor could [otherwise] depend
     ultimately on a plaintiff's cleverness in obtaining copyright protection for the smallest possible
28   unit of what would otherwise be a series of such units intended as a unitary work.").

Case No. CV07-06076 SI
CAIR'S REPLY TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
SFO 403538v1 0085997-000001

DAVIS WRIGHT TREMAINE LLP

1  asserting that the excerpts did not amount to the heart of the work can be found in the Complaint

2  at paragraphs 31-33, 35, 36, 37, 39, and 42. *See, e.g.,* Compl. at ¶ 32 ("The stolen material as

3  repackaged by CAIR was intended to portray both the material and the creator of the material,

4  Michael Savage as having a blanket opposition to a particular religion.  This was not the context

5  of the statement and it is not consistent with the content of the programming as a whole.").

6  Because Savage alleges that CAIR did not use the heart of his work, the third fair use factor

7  strongly favors CAIR.

8          **3.      The Fourth Fair Use Factor Does Not Consider Economic Harm
                      Resulting From Criticism.**
9

10         Finally, Savage again urges an interpretation of the fourth fair use factor that is completely

11  at odds with settled case law.  Damage to Savage's reputation or the "public image of the work"

12  (Compl. at ¶ 31) – or the profitability of his program generally – as a result of criticism is not

13  actionable under copyright law. *See, e.g., Campbell*, 510 U.S. at 591-592; *Fisher*, 794 F.2d at

14  438; *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 780 F.Supp. 1283, 1294 (N.D. Cal.

15  1991).

16         *Even assuming* CAIR raised money by placing a single "donation" link next to its criticism

17  of the Savage audio excerpts, that fact alone would have little bearing, if any, on an evaluation of

18  the fourth fair use factor. *See, e.g., Hustler*, 796 F.2d at 1152 (fair use found even where Rev.

19  Jerry Falwell, the Moral Majority, Inc. and the Old Time Gospel Hour "distributed [entire] copies

20  of the parody as an integral part of a financial appeal.").  Since its dicta (cited by Savage)

21  regarding "presumptions of unfairness" of commercial uses of copyrighted material in *Sony Corp.*

22  *of America v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984), the Supreme Court has

23  clarified that commercial uses do not create *any* presumptions of invalidity:  "*Sony* itself called for

24  no hard evidentiary presumption.  There, we emphasized the need for a 'sensitive balancing of

25  interests' and … noted that Congress had 'eschewed a rigid, bright-line approach to fair use,' …

26  and stated that the commercial or nonprofit educational character of a work is 'not conclusive.'"

27  *Campbell*, 510 US at 584-85.  Subsequent courts applying *Campbell* have repeatedly pointed out

28  that the nature of the use – rather than its commercial or non-commercial status – is more

*DAVIS WRIGHT TREMAINE LLP*

7

1  determinative. *See, e.g, Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003); *Infinity*

2  *Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 109 (2nd Cir. 1998).

3  Finally, it is important to note that the only "damages" inquiry relevant to an application of

4  the fourth fair use factor centers on harm to the *underlying work*, not Savage's reputation generally

5  or the economic success of future copyrighted works. *See, e.g., Consumers Union of U.S. Inc. v.*

6  *General Signal Corp.*, 724 F.2d 1044, 1050 (2d Cir.1983). Harm arising from the ability of

7  CAIR's use to substitute for Savage's radio program in the marketplace is the proper focus of the

8  fourth factor. William Patry, *Patry on Copyright* § 10:149 (2007). *See also, e.g. Campbell*, 510

9  U.S. at 592; *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 805 (9th Cir. 2003). Savage

10  alleges no such "substitution" damages as a result of CAIR's use of excerpts from the October 29,

11  2007, episode of his show. For this reason, like the many others raised by CAIR, the fourth fair

12  use factor weighs strongly in CAIR's favor.

13  **III.    PLAINTIFF'S FRIVOLOUS RICO CLAIM FAILS AS A MATTER OF LAW.**

14  **A.    Savage Does Not Satisfy The Standing Requirements for a RICO Claim**
**Because His Pled Damages Are Barred by the Fair Use Doctrine.**

15

16  In his Opposition, Savage backs away from the allegations in his twice-amended

17  Complaint that the supposed RICO injury came from CAIR's filing of allegedly frivolous lawsuits

18  and amicus briefs. *See* Compl. at ¶¶ 45, 47, 50, 168. Instead, Savage now contends that his

19  purported RICO damages are supposed advertising losses stemming from his spurious copyright

20  infringement claim. *See* Opp. at 2, 16; Compl. at ¶¶ 34, 35. As a matter of law and logic, Savage

21  cannot plead RICO damages arising from constitutionally protected speech activities. *See, e.g.,*

22  *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262 (10th Cir. 1989) (characterizing plaintiff's RICO

23  claim against newspaper for constitutionally protected report critical of him as "border[ing] on

24  being frivolous" and affirming dismissal of this claim). Here, as explained *supra* at 6-11 and in

25  CAIR's Opening Brief at 6-9, 22-24, the First Amendment and the fair use safe harbor in the

26  Copyright Act protect CAIR's website commentary and criticism of Savage's remarks. This

27  protection exists irrespective of any advertising losses that Savage may have suffered.[7] Savage's

28  ————————————————————

[7] Whether CAIR has disseminated one or one thousand letters to advertisers about Savage's

DAVIS WRIGHT TREMAINE LLP

1   alleged RICO "damages" – advertising cancellations allegedly precipitated by CAIR's website

2   critique – are barred by the constitutional and statutory limitations protecting free speech.

3   Moreover, Savage cannot plead the required predicate act of criminal copyright infringement

4   leading to damages for advertising losses because no liability can attach to such a claim where the

5   underlying conduct falls within the exemptions for fair use of materials conferred by the

6   Copyright Act.  Since Savage has failed to meet the actual injury requirements for standing, his

7   RICO claim must be dismissed as a matter of law.

8       Savage is also mistaken that he can meet the standing requirements for a RICO claim by

9   alleging general damages to business or property, with no effort to show a relationship between

10  the supposed injury and RICO violations.  *See* Opp. at 16.  As the Supreme Court and the Ninth

11  Circuit have explained, Savage must show "harm to a *specific* business or property interest" that

12  was caused "by reason of" purported RICO violations by CAIR.[8]  *See, e.g., Holmes v. Securities*

13  *Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992); *Diaz v. Gates*, 420 F.3d 897, 900 (9th

14  Cir. 2005) (en banc).  Here, any losses in advertising revenue that Savage may have suffered are

15

16  disparaging remarks, its communications are protected not only by the fair use doctrine discussed
    earlier, but also by the right of organizations such as CAIR to organize an economic boycott under
17  the First Amendment and Fourteenth Amendment.  *See, e.g., NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886, 907 (1982) (finding that execution of economic boycott that included speeches and
18  pamphleteering with the intent of a "coercive impact" on white Mississippi merchants "does not
    remove them from the reaches of the First Amendment"); *Environmental Planning & Information*
19  *Council v. Superior Court*, 36 Cal.3d 188, 197 (1984) (finding that First Amendment precludes
    economic interference claim against an environmental group based on criticism contained in the
20  group's newsletter of local newspaper's editorial policy and suggestion of possibility of secondary
    consumer boycott of newspaper's advertisers).  Accordingly, any advertising losses allegedly
21  suffered by reason of a supposed "boycott" of Savage are not cognizable and must yield to CAIR's
    exercise of its First Amendment rights of speech, assembly, association and petition to bring about
22  political, social and economic change.  *See id.*

23  [8] Savage's reliance on *NOW v. Sheidler*, 510 U.S. 249, 256 (1994), is equally misplaced.  In *NOW*,
    the plaintiffs alleged specific and potentially cognizable injuries – namely, that one of the
24  defendants had "threatened" the administrator with "reprisals" if she refused to quit her job at the
    clinic and that defendants, anti-abortion activists, were conspiring to use force to induce clinic
25  staff and patients to stop working and obtain medical services elsewhere.  *Id.*  In contrast to *NOW*,
    the alleged injury pled by Savage here, advertising losses, is not actionable because it derives from
26  CAIR's First Amendment and statutory rights to engage in constitutionally protected speech.
    Moreover, even if those protections did not apply, Savage still would not have adequately pled
27  damages because he has not pled facts indicating that the advertising losses were caused by reason
    of RICO violations.  And fundamentally, Savage cannot show the predicate act of criminal
28  copyright infringement leading to advertising loss damages since the underlying conduct is
    privileged pursuant to the fair use doctrine in the Copyright Act.

9

DAVIS WRIGHT TREMAINE LLP

1  immaterial to his RICO claim because these losses were *not* allegedly caused by reason of any

2  purported relationship with a RICO enterprise involving Al Qaeda and/or Hamas.  CAIR's

3  Opening Brief at 13.  Savage pleads no facts indicating that CAIR conspired with Al Qaeda and/or

4  Hamas to commit copyright infringement against Savage, nor could he.  His contention that "any

5  success" in causing advertisers to stop advertising "was due to the copyright infringement and the

6  false context in which the material was presented" demonstrates that the claimed injury results

7  from purported copyright infringement and not, as it must, from an alleged pattern of racketeering

8  activity engaged in by a RICO enterprise through an association in fact (not fiction) between

9  CAIR, Al Qaeda, and/or Hamas.  *See* Compl. at ¶¶ 36, 42.  Moreover, Savage has not pled facts

10  indicating that the advertisers even listened to the clip link on CAIR's website, a necessary

11  predicate to establish an actual injury in accordance with the RICO standing requirements.

12      Savage's RICO claim is not novel by any stretch of the imagination; it literally is ripped

13  from the pages of a New York complaint.[9]  Savage has even less standing to make a RICO claim

14  than the plaintiff in that case, which is the estate of one of the 9/11 victims.  Specifically Savage

15  does not – and cannot – allege that he suffered a concrete monetary injury as a result of a RICO

16  "conspiracy" that supposedly caused the 9/11 attacks and the terrorist actions of Hamas and Al

17  Qaeda.  The purported advertising losses from CAIR's constitutionally protected criticism have

18  nothing to do with a RICO "conspiracy" but in fact result from Savage's own conduct.  Had

19  Savage not spewed the venomous statements demeaning Islam, Muslims and CAIR's civil rights

20  advocacy on his radio show, he would not have lost any advertisers.  Because Savage has pled no

21  facts connecting the supposed advertising losses to a RICO conspiracy involving in the 9/11

22  attacks and the terrorist acts of Hamas and/or Al Qaeda, Savage lacks standing, and his RICO

23  claim is barred as a matter of law.

24  _____

[9] The lawsuit is *John P. O'Neill, Sr., et al. v. Al Baraka, et al.*, No. 04 CV 01923 (RCC) filed in
25  United States District Court, Southern District of New York.  Defendant CAIR-National is among
more than one hundred fifty defendants and is waiting for the judge to rule on its motion to
26  dismiss.  *See* Defendant Council on American-Islamic Relations of Santa Clara, Inc.'s Answer at ¶
123.  On January 18, 2008, Judge Richard Conway Casey in related cases granted motions to
27  dismiss very similar RICO claims to those alleged here, finding no facts to support the claims that
the defendants participated in directing or managing the operation or management of a RICO
28  enterprise.  *See In re Terrorist Attacks of September 11, 2001*, No. 03 MDL 1570 (RCC) ECF
Case (S.D.N.Y. 2008) (opinion and order).

10

DAVIS WRIGHT TREMAINE LLP

1    **B.    Savage Ignored the Proximate Cause Requirement, Which is Fatal to his**
2    **RICO Claim.**

3        The Supreme Court has repeatedly emphasized that a RICO claim cannot proceed unless

4    the plaintiff shows that the defendant's conduct proximately caused the plaintiff's injury. *See*

5    *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). Yet, Savage's Opposition says *nothing*

6    about proximate causation, and his twice amended Complaint does not cure his pleading

7    deficiencies in this regard, either, even though the pleadings are now locked for the purposes of

8    this Federal Rule 12(c) motion. Savage has not pled, and cannot show, that CAIR's filing of

9    lawsuits and amici briefs and engaging in constitutionally protected speech played *any* role – let

10   alone a "substantial" and "foreseeable" one – in a "RICO conspiracy" that "caused" the 9/11

11   attacks and the terrorist activities allegedly perpetrated by terrorist groups such as Hamas. *See*

12   CAIR's Opening Brief at 20-21; *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612-14 (6th Cir.

13   2003). Proximate cause requires a direct, causal relationship between the alleged wrongful

14   conduct and the injuries suffered, but Savage's Complaint indiscriminately compiles

15   unsubstantiated allegations together and ignores the obvious intervening and superseding factors

16   between the alleged misconduct and the claimed injury. *See, e.g., Poulos v. Caesars World, Inc.*,

17   379 F.3d 654, 664 (9th Cir. 2004) (finding that "[c]ausation lies at the heart of a civil RICO

18   claim," and stating in context of a class action that "lumping claims together ... does not diminish

19   or dilute this requirement"). *Binghampton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 127

20   (N.D.N.Y. 1997) (finding plaintiffs' RICO claim "has no chance of success" and sanctioning

21   plaintiffs because they "believed that a *compilation of unsubstantiated allegations* was all that was

22   necessary to bring a claim before the Court") (emphasis added). Moreover, to make out a valid

23   RICO claim a plaintiff must show that the relationship between the alleged wrongful conduct and

24   the purported injury is logical and not speculative. *Trollinger*, 370 F.3d at 612-14. Yet, it is

25   beyond absurd, illogical and totally unfounded to suggest that CAIR's engaging in critical political

26   speech that Savage does not like and filing lawsuits "caused" the injuries suffered in 9/11 and its

27   aftermath and the other terrorist attacks. In short, because Savage's Complaint and Opposition are

28

DAVIS WRIGHT TREMAINE LLP

11

1  devoid of proximate cause pleading – the "heart" of any civil RICO claim, as noted in *Poulos* –

2  this Court should dismiss it as a matter of law.

3      **C.    Savage's Claim also Fails Because He Has Not Pled That CAIR Directed or
                Participated in the Management of a RICO Enterprise.**

4

5      Savage again utterly fails to establish in his Opposition, as he failed to do in his Complaint,

6  that CAIR directed or participated in the management of a RICO enterprise, which is a key

7  pleading requirement of the main RICO statute, section 1962(c).[10] *See Reves v. Ernst & Young*,

8  507 U.S. 170, 185 (1993).  Savage has pled *no* facts that demonstrate, nor could he, that CAIR

9  "associated for a common purpose of engaging in a course of conduct" with Al Qaeda, Hamas, or

10  any other terrorist group mentioned in the Complaint. *See Odom v. Microsoft Corp*, 486 F.3d 541

11  (9th Cir. 1997) (en banc); CAIR's Opening Brief at 18.  Savage spills pages worth of ink

12  discussing the alleged misdeeds of organizations and individuals supposedly linked to Hamas and

13  Al Qaeda, but he has not alleged – and cannot show – that CAIR played any part in directing or

14  managing these groups and individuals.  For example, Savage pleads that Al Qaeda had annual

15  income of approximately $50 million and assets that ranged between $300 million and $500

16  million during a 10-year period, but Savage never gives any facts indicating that CAIR received or

17  sent out tainted money from Al Qaeda. *See* Compl. at ¶ 130.  Similarly, Savage complains that

18  Saudi Prince Alwaleed bin Talal "donated $500,000 [presumably to CAIR] to distribute the Koran

19  and other books about Islam in the United States," but Savage gives no explanation of why it is

20  improper for the gentleman dubbed the Arab Warren Buffett – the man who bailed out America's

21  largest bank, Citibank, in the 1990s – to donate to a charity registered in the United States. *See*

22  Compl. at ¶ 131.  On the individual level, Savage points in his Complaint to an individual named

23  "Ghassin Elashi" who was allegedly convicted of shipping computers to Libya and Syria, but

24  Savage pleads no facts establishing that CAIR had *anything* to do with Elashi's purported

25  conviction or any of the activities that led to that alleged conviction. *See* Compl. at ¶ 151.  These

26  three examples are illustrative of the kinds of innuendo that Savage has employed in his

27  _____

28  [10] Savage's suggestion in his Opposition that he intends to invoke all four sections of the RICO statute still does not cure his failure to plead those sections in the Complaint, which is now locked for the purposes of this Federal Rule 12(c) motion (after Savage twice amended it).

*DAVIS WRIGHT TREMAINE LLP*

1  Complaint and in his Opposition, baseless insinuations which do not hold up under even the most

2  perfunctory inspection.

3      Perhaps the boldest attempt at slinging mud in the hope that something will stick involves

4  Savage's repeated references to the Holy Land Foundation. Savage treats the criminal allegations

5  made in the Holy Land criminal prosecution as established facts, even though the government

6  failed to secure *any* convictions against the Holy Land defendants, who are being retried. CAIR,

7  named along with 305 other individuals and organizations, previously filed an amicus briefing

8  seeking to strike their name and intends to refile that motion. Even more important in terms of the

9  enterprise discussion, the fact that CAIR had a link to the Holy Land Foundation is immaterial

10 because Savage has not pled, *and cannot plead*, any facts indicating that CAIR directed or

11 controlled a RICO enterprise with the Holy Land Foundation or participated in any management

12 decision by a "RICO Enterprise" in conjunction with the Holy Land Foundation to use CAIR's

13 donations for illegal racketeering purposes. In the absence of *facts* showing an actual association

14 between CAIR and Al Qaeda and/or Hamas, Savage cannot satisfy the enterprise requirements,

15 and his 1962(c) claim must be dismissed as a matter of law.[11]

16  **D.  Savage's Attempt to Explain the Pleading of a Section 1962(a) Money**
       **Laundering RICO Violation is Deficient Because Savage Has Failed To Show**
17     **Injury From Improper Use of Racketeering Income.**

18     The standing requirements for a Section 1962(a) claim are different than that required

19 under the other provisions of the statute. To state a claim under Section 1962(a), a plaintiff must

20 show injury resulting from defendant's *investment or improper use of* racketeering income.

21 *Sebastian Intern., Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1068 (C.D. Cal. 2000). This

22 requirement is necessary because section 1962(a) "does not state that it is unlawful to receive

23 racketeering income[;] … [rather] the statute prohibits a person who has received such income

---

[11] The section 1962(b) claim fails as well for the same reasons. The gravamen of a section
1962(b) claim is that a defendant "controls" the enterprise engaged in a pattern of racketeering
activity, but Savage has not pled *any* facts suggesting that CAIR has exercised control over any
RICO enterprise. Despite Savage's assertions in his Opposition to the contrary, inviting someone
(who is "suspected" as a conspirator, perhaps only in Savage's mind) to speak at a conference
provides no factual support for the claim that CAIR has exerted control over a RICO enterprise
involving Al Qaeda and Hamas. *See* Opp. at 23-24. Nor does Savage's repeated references to
groups other CAIR with supposed links to Hamas and/or Al Qaeda establish that CAIR has control
over an enterprise in concert with those two terrorist organizations. *See id.*

13

DAVIS WRIGHT TREMAINE LLP

1  from using or investing it in the proscribed manner." *Grider v. Texas Oil & Gas Corp.*, 868 F.2d

2  1147, 1149 (10th Cir. 1989).

3      In this case, CAIR did not receive any racketeering income because it was not engaged in

4  racketeering activity.  Even if CAIR had somehow received "tainted" money, which it did not, and

5  then had gone on to bring lawsuits and to represent the interests and concerns of Muslims in the

6  United States through constitutionally protected free speech activities, those activities do not

7  amount to the kinds of improper uses of income that are actionable under section 1962(a).

8  Accordingly, Savage cannot have suffered a cognizable injury from CAIR's investments in

9  constitutionally protected activities, and his 1962(a) claim fails for lack of standing.[12]

10      **E.    Savage Still Has Not Pled Each Asserted Predicate Act of Fraud With
            Particularity, As He Must Under Rule 9(b).**

11      Finally, Savage wrongly insists that he set out allegations of fraud with particularity,

12  pointing to "Paragraph 91" as evidence. *See* Opp. at 18.  Paragraph 91 states, "CAIR further

13  exploited 9/11 as it put on its website a picture of the World Trade Center in flames and below it a

14  call for donations that was linked to the Holy Land Foundation."  This single sentence hardly

15  satisfies Rule 9(b)'s mandate that a plaintiff plead the "time, place and specific content of the false

16  representations, as well as the identities of the parties to the misrepresentation." *Edwards v.*

17  *Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2005); *Flores*, 416 F. Supp. 2d at 911.  Savage in

18  Paragraph 91 fails to state the time of this alleged misrepresentation, the specific parties to the

19  misrepresentation, or concrete facts showing that CAIR was engaged in a willful

20  misrepresentation.  In the same vein, Savage asserts in the Opposition that "[r]aising money for

21  terrorist groups under false pretenses is a fraud....," but like the allegations of his Complaint, fails

22  to specify which groups supposedly participated in each false pretense scheme, the time period

23  during which the false pretenses took place, the specific content of each false pretense, and

24  CAIR's role in any alleged false pretenses scheme. *See* Opp. at 18.  Because Savage has utterly

25

26  [12] It is axiomatic that there can be no RICO conspiracy without the defendant committing a RICO violation of at least one of the violations detailed in section 1962(a), (b), or (c). *Flores v. Emerich*
27  *& Fike*, 416 F. Supp. 2d 885, 911-12 (E.D. Cal. 2006).  Here, since Savage's section 1962(a), (b), (c) claims fail as a matter of law for the reasons stated above, it follows that his conspiracy claim
28  under section 1962(d) fails as well. *See also* RICO predicate act discussion of conspiracy allegations in CAIR's Opening Brief at 16-17.

Case No. CV07-06076 SI
CAIR'S REPLY TO OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS
SFO 403538v1 0085997-000001

1  failed to meet the heightened pleading requirements of Rule 9(b), his RICO claim should be

2  dismissed for this independent reason.

3  **IV.     THE FIRST AMENDMENT PROVIDES A SEPARATE AND COMPLETE**
   **DEFENSE TO SAVAGE'S CLAIMS.**

4

5  Savage's Opposition make unambiguous that his real grievance is that CAIR's critique on

6  its website allegedly "misappropriated" his work and "facilitate[d] an unfair economic attack

7  against him." Opp. at 1, 12.  Whether characterized as disparagement, intentional interference with

8  economic relations, misappropriation, defamation, or false light, these types of claims are *all*

9  subject to the constitutional limitations protecting free speech because the "gravamen" of Savage's

10 Complaint is the "alleged injurious falsehood of a statement." *See* CAIR's Opening Brief at 23-

11 24.  This Court must not allow Savage to evade the protections granted to constitutional exercises

12 of speech by pleading specious Copyright and RICO violations in a weak attempt to sidestep the

13 California anti-SLAPP statute.  Savage's concession that his only possible RICO damages derive

14 from purported advertising losses supposedly caused by CAIR's linking to a small portion of the

15 infamous radio clip makes plain that the true aim of his lawsuit is to intimidate and silence CAIR

16 in retaliation for CAIR's criticism of his radio rants. *See* Opp. at 16-17.  Courts have not hesitated

17 to dismiss complaints like Savage's that target free speech and seek to use "creative pleading" to

18 "render[] nugatory the First Amendment limitations placed on litigation against speech." *Films of*

19 *Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998).

20 As Savage himself pleads, "[i]t is the essence of freedom that voices can be raised strongly and

21 without fear of illegal retaliation." *See* Compl. at ¶ 42.  In the spirit of that statement, this Court

22 should summarily dismiss with prejudice Savage's legal attack on CAIR's constitutionally

23 protected free speech rights.

24 DATED this 22nd day of February 2008.

25                                                  DAVIS WRIGHT TREMAINE LLP

26                                                  ELECTRONIC FRONTIER FOUNDATION

27                                                  By:  */s/ Thomas R. Burke*
                                                        THOMAS R. BURKE
28                                                      Attorneys for CAIR Defendants

*DAVIS WRIGHT TREMAINE LLP*

15