**DOCKETED**

**MAY 1 3** 2003

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JUDGE RONALD GUZMAN

| | |
|---|---|
| TALK RADIO NETWORK, INC., an Oregon Corporation, | ) |
| Plaintiff, | ) |
| v. | ) |
| THOMAS V. LEAVITT and GUNILLA LEAVITT, individually, and d/b/a Leavitt Enterprises, JULIE SIGWART, and JOHN DOE, an unknown individual, | ) |
| Defendants. | ) |

MAGISTRATE JUDGE MASON

**03C  3167**

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, TALK RADIO NETWORK, INC., ("TRN"), by its attorneys, KANE,

LADUZINSKY & MENDOZA, LTD., for its Complaint for Injunctive Relief, Damages and

Other Relief against Defendants Thomas V. Leavitt and Gunilla Leavitt, individually, and d/b/a

Leavitt Enterprises, Julie Sigwart, and John Doe ("Defendants"), alleges as follows:

### NATURE OF THE CASE

1.     This action arises out of the defendants' coordinated scheme to use internet

websites and false and defamatory e-mail to interfere with TRN's business relationships.  TRN

distributes syndicated programming to radio stations around the country.  TRN's programming

includes "The Michael Savage Show" hosted by talk radio host and best-selling author Michael

Savage.  "The Michael Savage Show" can be heard in Illinois on WBIG, AM 1280 and WAIT,

AM 850.  TRN's programs are broadcast in markets around the country in exchange for a fee or

advertising revenue from the local station.  TRN sells advertising time on "The Michael Savage

Show" and other programs to many well-known companies throughout the United States and in

Illinois.   Through a systematic campaign of false and malicious statements on websites they control, and false and malicious e-mails, defendants have unlawfully interfered with TRN's business relationships with its advertisers and sponsors.   The defendants have copied radio broadcasts of TRN's "The Michael Savage Show" and are unlawfully broadcasting "The Michael Savage Show" through internet radio.   The defendants have further made numerous false and malicious statements through websites, e-mail and letters to induce TRN's commercial sponsors to terminate agreements with TRN.   Through this organized and targeted campaign against TRN, the defendants have wrongfully interfered with TRN's existing and future business relationships.

## PARTIES

2.      Plaintiff Talk Radio Network, Inc. ("TRN") is an Oregon corporation with its principal place of business in the City of Grants Pass, Oregon.  TRN is a citizen of the State of Oregon. TRN provides syndicated radio programming throughout the United States and in Illinois.

3.      Defendant Thomas V. Leavitt ("T. Leavitt") is a citizen of the State of California residing at 1135 N. Branciforte Avenue, Santa Cruz. T. Leavitt is the co-owner and operator of the website www.savagestupidity.com.    T. Leavitt is engaged in commerce individually and through Leavitt Enterprises.

4.      Defendant Gunilla Leavitt ("G. Leavitt") is a citizen of the State of California residing at 1135 N. Branciforte Avenue, Santa Cruz. G. Leavitt is the co-owner and operator of the website www.savagestupidity.com.    G. Leavitt is engaged in commerce individually and through Leavitt Enterprises.

5.      Defendant Julie Sigwart ("Sigwart") is a citizen of the State of California residing at 1072 Casitas Pass Road, Carpinteria.  Sigwart is the owner or operator of the website www.takebackthemedia.com.

6.      Defendant John Doe ("Doe") is an unknown individual believed to be a citizen of the State of Arizona.  Doe uses the pseudonym of "Todd Fotuar" and is the owner and/or operator of the website www.michaelsavagesucks.com.

## JURSIDICTION AND VENUE

7.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(1) in that this is an action between citizens of different states where the matter in controversy exceeds the amount of $75,000.00, exclusive of interest and costs.

8.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events giving rise to the claims herein occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### The Talk Radio Network

9.      TRN distributes syndicated radio programming throughout the United States. Some TRN syndicated programs include "The Lucianne Goldberg Show" with Lucianne Goldberg, "The Bob Dornan Show" with Bob Dornan, "The Michael Savage Show" with Michael Savage, "Motor Trend Weekend" with Bob Long, and "Hooked on Health" with Drs. Carolyn Glover, Teri Jones and Nuala McGarky.  Programs that originate on TRN stations are broadcast in other markets in exchange for a fee or advertising revenue.

10.     TRN markets its programs and sells advertising time to commercial sponsors throughout the country.  Commercial sponsors purchase advertising air time on TRN's programs. These commercial sponsors include many nationally known companies and companies based in

the Chicago area. TRN broadcasts "The Michael Savage Show" in the Chicago area on BIG, AM 1280 and WAIT, AM 850. TRN owns the exclusive right to syndicated broadcasts of "The Michael Savage Show" and owns the right, title and interest to program recordings as provided by the United States Copyright Act, 17 USC §101 et al.

11.     TRN has never given permission or entered into an agreement with the defendants or the websites they control to permit the broadcasting of recordings of "The Michael Savage Show."

### The Defendants' Conduct

12.     Defendants T. Leavitt and G. Leavitt (hereinafter referred to collectively as "Leavitt") and Doe through websites that they control and own www.savagestupidity.com and www.michaelsavagesucks.com, are broadcasting recordings of "The Michael Savage Show". Leavitt and Doe do not have a license or permission to broadcast these programs. The programs are being retransmitted in a different medium but in the same form.  The defendants' websites allow visitors to click on a variety of previously aired Michael Savage shows that they have copied and stored on a computer server.  The website visitor is then able through the use of a media software program to listen to a previous broadcast of "The Michael Savage Show".

13.     The Leavitt and Doe websites are active commercial sites. Each site allows visitors to listen to broadcasts of "The Michael Savage Show".  The Leavitt site allows visitors to purchase merchandise through the internet and it solicits donations.   The Doe site includes banner advertisements and links to the Leavitt site.   Each site allows a visitor to exchange information with the website host.

14.     The Leavitt and Doe websites post and provide links to false and malicious statements regarding "The Michael Savage Show" and TRN.  Each site posts the names of

4

advertisers on the TRN program "The Michael Savage Show" and provides e-mail templates to allow website visitors to easily forward the defendants' false statements about TRN and "The Michael Savage Show" to company advertisers. Each site trades off the TRN program title "The Michael Savage Show" and the likeness of Michael Savage in order to attract site visitors and promote the sale of merchandise. For example, the front page of www.michaelsavagesucks.com recently included a retouched photograph of Michael Savage from his website falsely showing him wearing a Klu Klux Klan pointed hood juxtaposed with a reproduction of the MSNBC logo. The photograph is false and is a product of the defendants' effort to disparage TRN and mislead TRN advertisers.

15.     Defendant Sigwart owns or operates the website www.takebackthemedia.com, which publishes and provides links to false and malicious statements about TRN and "The Michael Savage Show". For example, Sigwart's website posts false statements that TRN is owned and operated by "cult leader Roy Masters". Sigwart's website also states that "Savage is a dedicated follower of Roy Masters, a CULT LEADER." These statements are false. Roy Masters does not own TRN. Sigwart's website is an active commercial site. The Sigwart site allows visitors to purchase merchandise through the internet and it solicits donations.

16.     The defendants are sending false and malicious e-mails to TRN advertisers. The defendants have also directed and encouraged website visitors to send false and malicious mail to the commercial sponsors of "The Michael Savage Show" in an attempt to pressure these companies to end their business relationships with TRN. Through these false statements and messages, the defendants have and are intentionally and unjustifiably interfering with the business relationships between TRN and its program advertisers on "The Michael Savage Show".

17.    The defendants have appropriated the name, images and words of the TRN program "The Michael Savage Show" for commercial gain and to attract visitors to their websites.  The defendants then through their websites disparage TRN and its program "The Michael Savage Show."

18.    Through the false and malicious statements contained on the defendants' websites and through their e-mail campaigns in Illinois and elsewhere, defendants have caused TRN's advertisers on "The Michael Savage Show" to end their commercial sponsorship of the show and their business relationships with TRN.  One such advertiser is Culligan International Company based in Northbrook, Illinois.

## COUNT I

## TORTIOUS INTERFERENCE WITH CONTRACT

19.    Plaintiff, as and for paragraph 19 of Count I, realleges Paragraphs 1 through 18 as though fully set forth herein.

20.    Culligan International Company ("Culligan") is in the business of water treatment.  Culligan delivers water products to consumers and businesses throughout the world. Culligan is based in Northbrook, Illinois, and had a sponsorship contract with TRN for advertising on TRN's "The Michael Savage Show."

21.    The defendants were aware of Culligan's contract with TRN to advertise on TRN's "The Michael Savage Show".

22.    Through their false and malicious statements and e-mail and letter campaigns, the defendants engaged in intentional and unjustified conduct aimed at inducing Culligan to end its contract for advertising time with TRN.

6

23.     As a result of the defendants' intentional and unjustified conduct, Culligan terminated its contract with TRN's "The Michael Savage Show".

24.     As a direct and proximate result of the defendants' aforementioned intentional and unjustified conduct, TRN has suffered damages in excess of $100,000.00.

WHEREFORE, for all the foregoing reasons, Plaintiff, Talk Radio Network, Inc., respectfully requests that the Court grant the following relief:

A.     Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, from engaging in acts and practices that interfere with or are intended to interfere with TRN's contracts;

B.     Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, enjoining and restraining them from withdrawing, transferring, destroying or disposing of any books, records, or accounts or of any property, whether real, electronic, personal, or mixed;

C.     Entry of a preliminary injunction and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, directing that they turnover all TRN assets and property, including but not limited to, TRN business information, TRN radio broadcasts, and any copies of the same to TRN;

D.     Entry of a judgment in favor of TRN against the individual defendants for compensatory damages in an amount to be proven at trial, but which is not less than $100,000.00;

E.    An award of punitive damages in an amount to be proven at trial;

F.    Such other and additional relief as the Court may deem appropriate.

## COUNT II

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

25.    Plaintiff, as and for paragraph 25 of Count II, realleges Paragraphs 1 through 18 as though fully set forth herein.

26.    TRN had a reasonable expectation of entering into future business relationships with Culligan which had purchased advertising on "The Michael Savage Show" but ceased purchasing advertising after receiving false and malicious statements about TRN and "The Michael Savage Show" from the defendants.

27.    The defendants were aware of Culligan's business relationship with TRN and that Culligan was purchasing advertising time on "The Michael Savage Show."

28.    Through the false and malicious statements published on their websites and their false and malicious e-mail and letter campaigns, the defendants engaged in purposeful malicious conduct aimed at inducing Culligan to abandon its business relationship with TRN and cease purchasing advertising time on TRN programs.

29.    Due to the defendants' intentional and unjustified interference, Culligan stopped advertising on "The Michael Savage Show," and TRN has suffered lost revenue and profits in excess of $100,000.00

WHEREFORE, for all the foregoing reasons, Plaintiff, Talk Radio Network, Inc., respectfully requests that the Court grant the following relief:

A.    Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with

them, from engaging in acts and practices that interfere with or are intended to interfere with TRN business or prospective business opportunities;

B.    Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, enjoining and restraining them from withdrawing, transferring, destroying or disposing of any books, records, or accounts or of any property, whether real, electronic, personal, or mixed;

C.    Entry of a preliminary injunction, and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, directing that they turnover all TRN assets and property, including but not limited to, TRN business information, TRN radio broadcasts, and any copies of the same to TRN;

D.    Entry of a judgment in favor of TRN against the individual defendants for compensatory damages in an amount to be proven at trial, but which is not less than $100,000.00;

E.    An award of punitive damages in an amount to be proven at trial;

F.    Such other and additional relief as the Court may deem appropriate.

## COUNT III

### ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

30.    Plaintiff, as and for paragraph 30 of Count III, realleges Paragraphs 1 through 18 as though fully set forth herein.

31.    At all times relevant to this complaint, there was in existence a certain statute, to wit: the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.

Section 1 of that Act provides, in relevant part, as follows:

> (a) The term "advertisement" includes the attempt by publication dissemination, solicitation or circulation to induce directly or indirectly any person to enter into any obligation to acquire any title or interest in any merchandise and includes every work device to disguise any form of business solicitation by using such terms as "renewal," "invoice," "bill," "statement," or "reminder," to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought after commercial transaction;

> (c) The term "person" includes any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or *cestui que* trust thereof;

> (d) The term "sale" includes any sale, offer for sale, or attempt to sell any merchandise for cash or credit.

> (f) The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

32.     The defendants are engaged in trade or commerce as those terms are defined in Sections 1(c) and 1(f) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

33.     Section 2 of that Act provides, in relevant part, as follows:

> §2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS §505/2.

Section 10a (a) provides, in relevant part, as follows:

§10a. Action for actual damages. (a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems is proper.

815 ILCS §505/10a(a).

Section 10a(c) provides, further, as follows:

§ 10a. (c) Except as provided in subsections (f), (g), and (h) of this section, in any action brought by a person under this Section, the court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorneys' fees and costs to the prevailing party.

815 ILCS §505/10a(c).

34.    The acts and practices of the defendants as alleged herein constitute unfair methods of competition and deceptive acts and practices within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act.

35.    As a direct and proximate result of the defendants' unfair methods of competition and deceptive acts and practices, TRN has been damaged in an amount in excess of $500,000.00.

36.    TRN has no adequate remedy at law. Money damages alone will not, and cannot, compensate TRN for the loss of goodwill and business opportunities that it has suffered as a result of the defendants' wrongful actions. Those actions have and will in the future continue to harm TRN's relationships with its advertising clients and the public.

37.    By their continuing conduct, the defendants have demonstrated their willingness to continue to engage in acts that violate the Act. The injury to TRN is immediate and irreparable.

38.     TRN has demonstrated that the defendants, unless restrained, will continue to engage in conduct that is alleged herein.  There is a likelihood that TRN will prevail on the merits of this action.

39.     Should the Court grant interlocutory injunctive relief to TRN, the burden on the defendants in making changes to their websites and refraining from wrongful conduct will be slight compared to the injury to TRN if it is not granted.  No injury to the defendants will result from an order that requires the defendants to comport their actions under the law.

40.     The granting of an injunction will not disserve the public interest.  Indeed, injunctive relief would accomplish the objective of the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, for all the foregoing reasons, Plaintiff, Talk Radio Network, Inc., respectfully requests that the Court grant the following relief:

A.     Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, from engaging in acts and practices in violation of the Illinois Consumer Fraud and Deceptive Practices Act;

B.     Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, enjoining and restraining them from withdrawing, transferring, destroying or disposing of any books, records, or accounts or of any property, whether real, electronic, personal, or mixed;

C.     Entry of a  preliminary injunction and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active

concert with them, directing that they turnover all TRN assets and property, including but not limited to TRN business information, TRN radio broadcasts and any copies of the same to TRN;

       D.     Entry of a judgment in favor of TRN against the individual defendants for compensatory damages in an amount to be proven at trial, but which is not less than $500,000.00;

       E.     An award of punitive damages in an amount to be proven at trial;

       F.     An order awarding TRN costs and attorney's fees pursuant to 815 ILCS §505/10a(c); and

       G.     Such other and additional relief as the Court may deem appropriate.

**COUNT IV**

**UNIFORM DECEPTIVE TRADE PRACTICES ACT**

     41.     Plaintiff, as and for paragraph 41 of Count IV, realleges Paragraphs 1 through 18 as though fully set forth herein.

     42.     At all times relevant to this complaint, there was in existence a certain statute, to wit: the Uniform Deceptive Trade Practices Act ("Act"), 815 ILCS §510/1 et seq.

Section 2 of that Act provides, in relevant part, as follows:

**510/2. Acts constituting deceptive trade practice**

    § 2.  A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

    (1)  passes off goods or services as those of another;

    (2)  causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    (3)  causes likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

13

(4) uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

(6) represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;

(7) represents that goods or services are a particular standard, quality or grade or that goods are a particular style or model, if they are of another;

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

(9) advertises goods or services with intent not to sell them as advertised;

(10) advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) make false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions;

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

This Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State.

815 ILCS §510/2.

43.    The defendants are engaged in business on their websites and during the course of that business the defendants are violating the Uniform Deceptive Trade Practices Act.

44.    The defendants have published and disseminated material on their websites and issued e-mail to TRN commercial sponsors with full knowledge of its deceptive character as contemplated under the Uniform Deceptive Trade Practices Act.

45.    The acts and practices of the defendants as alleged herein constitute deceptive trade practices within the meaning of the Uniform Deceptive Trade Practices Act.

46.    As a direct and proximate result of the defendants' deceptive trade practices, TRN has lost advertising contracts and business opportunities and has been damaged in an amount in excess of $500,000.00.

47.    TRN has no adequate remedy at law.  Money damages alone will not, and cannot, compensate TRN for the loss of goodwill and business opportunities that it has suffered as a result of the defendants' actions.  Those actions have and will in the future continue to harm TRN's relationships with the public and business relationships.

48.    By their continuing conduct, the defendants have demonstrated their willingness to continue to engage in acts that violate the Act.  The injury to TRN is immediate and irreparable.

49.    TRN has demonstrated that the defendants, unless restrained, will continue to engage in conduct that is alleged herein.  There is a likelihood that TRN will prevail on the merits of this action.

50.    Should the Court grant interlocutory injunctive relief to TRN, the burden on the defendants in making changes to their websites will be slight compared to the injury to TRN if it is not granted.  No injury to the defendants will result from an order that requires the defendants to comport their actions under the law.

51.    The granting of an injunction will not disserve the public interest.    Indeed, injunctive relief would accomplish the objective of the Uniform Deceptive Trade Practices Act.

52.    Section 3 of the Act states as follows:

510/3. **Injunctive relief**

§ 3.    A person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable. Proof of monetary damage, loss of profits or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.

Costs or attorneys' fees or both may be assessed against a defendant only if the court finds that he has wilfully engaged in a deceptive trade practice.

The relief provided in this Section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State.

815 ILCS § 510/3.

53.    The defendants have willfully engaged in deceptive trade practices.

WHEREFORE, for all the foregoing reasons, Plaintiff, Talk Radio Network, Inc., respectfully requests that the Court grant the following relief:

A.    Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, from engaging in acts and practices in violation of the Illinois Uniform Deceptive Trade Practices Act;

B.    Entry of a preliminary and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, enjoining and restraining them from withdrawing, transferring, destroying or

disposing of any books, records, or accounts or of any property, whether real, electronic, personal, or mixed;

C.      Entry of a preliminary injunction and permanent injunction against the individual defendants, their agents, officers, and employees, and all persons in active concert with them, directing that they turnover all TRN assets and property, including but not limited to, TRN radio broadcasts, and any copies of the same to TRN;

D.      Entry of a judgment in favor of TRN against the individual defendants for compensatory damages in an amount to be proven at trial, but which is not less than $500,000.00;

E.      An award of punitive damages in an amount to be proven at trial;

F.      An order awarding TRN its costs and attorney's fees pursuant to 815 ILCS §510/3; and

G.      Such other and additional relief as the Court may deem appropriate.


Dated: May 12, 2003

Respectfully submitted,

TALK RADIO NETWORK, INC.

By _____
One of its Attorneys

William K. Kane, Esq.
David J. Riski, Esq.
**KANE, LADUZINSKY & MENDOZA, LTD.**
225 West Washington Street
Suite 1100
Chicago, Illinois 60606
(312) 726-2322

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS



**DOCKETED**

MAY 1 3 2003

# <u>Civil Cover Sheet</u>

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

03C 3167

| | |
|---|---|
| **Plaintiff(s):  Talk Radio Network, Inc., an Oregon corporation,** | **Defendant(s):Thomas V. Leavitt and Gunilla Leavitt, individually, and d/b/a Leavitt Enterprises, Julie Sigwart, and John Doe, an unknown individual,** |
| County of Residence: Oregon | County of Residence: California |
| Plaintiff's Atty:   William K. Kane<br>Kane, Laduzinsky & Mendoza, Ltd.<br>225 W. Washington St, #1100<br>312-726-2322 | Defendant's Atty:<br><br>JUDGE RONALD GUZMAN |

II. Basis of Jurisdiction:        **4. Diversity (complete item III)**

MAGISTRATE JUDGE MASON

III. Citizenship of Principal Parties (Diversity Cases Only)

Plaintiff:-**5 Non IL corp and Principal place of Business outside IL**
Defendant:-**2 Citizen of Another State**

IV. Origin :                    **1. Original Proceeding**

V. Nature of Suit:              **190 Other Contract**

VI.Cause of Action:            **28 U.S.C. s.1332**

VII. Requested in Complaint
        Class Action:**No**
        Dollar Demand:**500,000**
        Jury Demand: **Yes**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

Signature: _____

Date: _____

1-2

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**          **Revised: 06/28/00**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**DOCKETED**

**MAY 1 3 2003**

EASTERN DIVISION

In the Matter of

TALK RADIO NETWORK, INC.,
an Oregon Corporation,
          v.
Thomas V. Leavitt and Gunilla Leavitt,
individually and d/b/a Leavitt Enterprises,
Julie Sigwart, and John Doe, an unknow individual

Case Number:  03C 3167

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

TALK RADIO NETWORK, INC., PLAINTIFF

JUDGE RONALD GUZMAN

| (A) | | | | (B) | | | |
|---|---|---|---|---|---|---|---|
| SIGNATURE | | | | SIGNATURE | | MAGISTRATE JUDGE MASON | |
| NAME   William K. Kane | | | | NAME   David J. Riski | | | |
| FIRM   Kane, Laduzinsky & Mendoza, Ltd. | | | | FIRM   Kane, Laduzinsky & Mendoza, Ltd. | | | |
| STREET ADDRESS   225 West Washington St., #1100 | | | | STREET ADDRESS   225 West Washington St., #1100 | | | |
| CITY/STATE/ZIP   Chicago, IL 60606 | | | | CITY/STATE/ZIP   Chicago, IL 60606 | | | |
| TELEPHONE NUMBER   (312) 726-2322 | | FAX NUMBER   (312) 726-2425 | | TELEPHONE NUMBER   (312) 726-2322 | | FAX NUMBER   (312) 726-2425 | |
| E-MAIL ADDRESS   wkane@klmfirm.com | | | | E-MAIL ADDRESS   driski@klmfirm.com | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)   6194466 | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE)   6272935 | | | |
| MEMBER OF TRIAL BAR? | | YES ☑   NO ☐ | | MEMBER OF TRIAL BAR? | | YES ☐   NO ☑ | |
| TRIAL ATTORNEY? | | YES ☑   NO ☐ | | TRIAL ATTORNEY? | | YES ☐   NO ☑ | |
| | | | | DESIGNATED AS LOCAL COUNSEL? | | YES ☐   NO ☑ | |
| (C) | | | | (D) | | | |
| SIGNATURE | | | | SIGNATURE | | | |
| NAME | | | | NAME | | | |
| FIRM | | | | FIRM | | | |
| STREET ADDRESS | | | | STREET ADDRESS | | | |
| CITY/STATE/ZIP | | | | CITY/STATE/ZIP | | | |
| TELEPHONE NUMBER | | FAX NUMBER | | TELEPHONE NUMBER | | FAX NUMBER | |
| E-MAIL ADDRESS | | | | E-MAIL ADDRESS | | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | |
| MEMBER OF TRIAL BAR? | | YES ☐   NO ☐ | | MEMBER OF TRIAL BAR? | | YES ☐   NO ☐ | |
| TRIAL ATTORNEY? | | YES ☐   NO ☐ | | TRIAL ATTORNEY? | | YES ☐   NO ☐ | |
| DESIGNATED AS LOCAL COUNSEL? | | YES ☐   NO ☐ | | DESIGNATED AS LOCAL COUNSEL? | | YES ☐   NO ☐ | |

1-3

# INSTRUCTIONS FOR COMPLETING APPEARANCE FORM

1. General Information

   Local Rule 53.17 provides that once an attorney has filed an appearance form on behalf of a party, no additional appearances or substitutions may be made without leave of court. The Rule also provides that the attorney may not withdraw without leave of court. Therefore, if more than one attorney is going to represent the party or parties shown on the front of this form, each should complete the attorney appearance section of the form.

   This form is designed to permit the filing of appearances by up to four attorneys who represent the same party or parties. If more than four attorneys representing the same party or parties wish to file appearances, additional forms should be used and the letters (A), (B), (C), and (D) indicating the attorneys should be altered to (E), (F), (G), (H), respectively for the fifth through the eighth attorneys, etc.

2. Listing of Parties for Whom the Attorney is Appearing

   The names of each of the parties represented by the attorney(s) filing the appearance are to be listed on the lines immediately below the words "Appearances are hereby filed by the undersigned as attorney(s) for:". The type of party, e.g., plaintiff, defendant, third party plaintiff, should follow each party. If all of the parties are of the same type, e.g., all parties represented are plaintiffs, then the type of party can be shown at the end of the listing of parties.

3. Completing Attorney Information

   The information requested should be completed for each attorney filing an appearance. Where two or more attorneys are from the same firm, only the first listed from the firm need complete the information for firm name, street address, and city/state/ZIP. The others may indicate "Same as (letter designation of first attorney)."

4. Identification Number

   Attorneys who are members of the Illinois bar should enter the identification number issued to them by the Illinois Attorney Registration and Disciplinary Commission (ARDC). Attorneys who are not members of the Illinois bar should leave this item blank.

5. Attorney (A) and Notices

   Where more than one attorney is listed on the appearance form, all listed will be entered on the docket of the Clerk, as attorneys of record. However, notices will only be mailed to the attorney shown in box (A) on the form except where local counsel has been designated pursuant to Local Rule 83.15 (see below). The attorney is responsible for notifying all other attorneys included on the form of the matter noticed.

   Where appearances are filed on behalf of attorneys representing a state or local government, e.g., states attorney, corporation counsel, the persons filing the appearance may wish to list the name of the assistant who is in active charge of the case in box (A) and the appearance of the head of the

agency, e.g., attorney general, corporation counsel, or any other assistant assigned to such cases in subsequent boxes. In that way, the assistant in active charge will receive notice.

6. Appearances and Trial Bar Membership

   All attorneys filing appearances must indicate whether or not they are members of the trial bar of this Court and whether or not they are the attorney who will try the case in the event that it goes to trial.

   In criminal actions, an attorney who is not a member of the trial bar may not file an individual appearance. Pursuant to Local Rule 83.12, a member of the trial bar must accompany such attorney and must also file an appearance.

   In civil actions, an attorney who is not a member of the trial bar should designate the trial bar attorney who will try the case in the event that it goes to trial. If a trial bar attorney is not listed on the initial appearance and the case goes to trial, a trial bar attorney, pursuant to Local Rule 83.17, must obtain leave of court to file an appearance.

7. Designation of Local Counsel

   Pursuant to Local Rule 83.15, an attorney who does not have an office in this District may appear before this Court "only upon having designated, at the time of filing his/her initial notice or pleading, a member of the bar of this Court having an office within this District upon whom service of papers may be made." No attorney having an office in this District may designate local counsel. No attorney may designate more than one attorney as local counsel. Notices will be mailed by the Clerk's Office to both the attorney shown in box (A) and the attorney designated as local counsel.

8. Parties are Required to Consider Alternative Dispute Resolution

   Pursuant to 28 U.S.C. §652(a), all litigants in civil cases pending before this Court are directed to consider the use of an alternative dispute resolution process at the earliest appropriate stage of the litigation. Such process may include mediation, early neutral evaluation, minitrial, or arbitration.

9. Local Rule 3.2 Requires Notification As To Affiliates

   In every action in which an affiliate of a public company is a party, counsel for such party shall file with the Clerk a statement listing each public company of which such party is an affiliate. Where such party is a plaintiff the statement shall be filed with the complaint. Where such party is a defendant the statement shall be filed with the answer or motion in lieu of answer.