Thomas R. Burke (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

Matt Zimmerman (CA State Bar No. 212423)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: mattz@eff.org

Attorneys for Defendants
COUNCIL ON AMERICAN-ISLAMIC RELATIONS, INC., COUNCIL ON AMERICAN ISLAMIC RELATIONS ACTION NETWORK, INC., AND COUNCIL ON AMERICAN ISLAMIC RELATIONS OF SANTA CLARA, INC.

DAVIS WRIGHT TREMAINE LLP

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL SAVAGE,

Plaintiff,

v.

COUNCIL ON AMERICAN-ISLAMIC RELATIONS, INC., COUNCIL ON AMERICAN ISLAMIC RELATIONS ACTION NETWORK, INC., COUNCIL ON AMERICAN ISLAMIC RELATIONS OF SANTA CLARA, INC., and DOES 3-100,

Defendants.

Case No. CV07-06076 SI

**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: October 3, 2008
Time: 9:00 a.m.
Honorable Susan Illston

TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 9:00 a.m. on October 3, 2008, or as soon thereafter as the matter may be heard, in Courtroom 10 on the 19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Defendants Council on American-Islamic Relations, Inc., the Council on American-Islamic Relations Action Network, Inc., and the Council on American-Islamic Relations of Santa Clara, Inc. (collectively "Council on American-Islamic Relations" or "CAIR") will, and hereby do, move for an order awarding attorneys' fees and costs.

Pursuant to 17 U.S.C § 505, CAIR seeks to recover fees and costs associated with successfully defending against the copyright infringement and RICO claims brought against CAIR for utilizing excerpts from Plaintiff Michael Savage's radio program as part of its criticism of and commentary regarding the show's content. This motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support of this motion, the declarations and accompanying exhibits, and all papers and records on file with the Clerk in connection with this case or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

Dated: August 29, 2008

DAVIS WRIGHT TREMAINE LLP
Thomas R. Burke

ELECTRONIC FRONTIER FOUNDATION
Matthew J. Zimmerman

By: /s/ Matthew Zimmerman
Matthew J. Zimmerman

Attorneys for Defendants
COUNCIL ON AMERICAN-ISLAMIC RELATIONS, INC., COUNCIL ON AMERICAN ISLAMIC RELATIONS ACTION NETWORK, INC., AND COUNCIL ON AMERICAN ISLAMIC RELATIONS OF SANTA CLARA, INC.

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

III. ARGUMENT ..... 3

A. Legal Standard ..... 3

B. A Fee Award to CAIR is Appropriate ..... 4

1. Degree of Success Obtained ..... 4

2. Frivolousness and Objective Reasonableness ..... 4

3. Motivation ..... 7

4. Need for Compensation and Deterrence ..... 9

C. Reasonableness of Attorneys' Fees and Costs Sought ..... 11

IV. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerman v. Western Electric Co.*, 643 F. Supp. 836 (N.D. Cal. 1986) ..... 11

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ..... 11

*Brayton Purcell LLP v. Recordon & Recordon*, 487 F.Supp.2d 1124, 1130 (N.D. Cal. 2007) ..... 5

*Campbell v. Acuff-Rose Music*, 510 U.S. 569 (1994) ..... 7

*Chalmers v. Los Angeles*, 796 F.2d 1210 (9th Cir. 1986) ..... 11

*Earth Flag Ltd. v Alamo Flag Co.* 154 F. Supp.2d 663 (S.D.N.Y. 2001) ..... 10

*Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-05278 SI, 2008 U.S. Dist. LEXIS 44050 (N.D. Cal. June 4, 2008) ..... 13

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir. 1997) ..... 5

*Exner v. FBI*, 443 F. Supp. 1349 (S.D. Cal. 1978) ..... 11

*Fantasy, Inc. v. Fogerty*, 94 F.3d 553 (9th Cir. 1996) ("*Fogerty II*") ..... 3

*Fantasy, Inc. v. Fogerty*, No. C 85-4929-SC, 1995 WL 261504 (N.D. Cal. May 2, 1995) ("*Fogerty III*") ..... 4

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (*"Fogerty I"*) ..... 1, 3

*Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448 (9th Cir. 1996) ..... 5

*Hensley v. Eckerhart*, 461 U.S. 424 (1980) ..... 11, 12

*Hustler v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986) ..... 6

*Jackson v. Sturkie*, 244 F. Supp. 2d 1096 (N.D. Cal. 2003) ..... 4, 5

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ..... 11

*Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987 (9th Cir. 1998) ..... 4

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996) ..... 3, 6, 7, 9

*Mattel, Inc. v. Walking Mountain Productions*, No. CV99-8543RSWL (RZX), 2004 WL 1454100 (C.D. Cal. 2004) ..... 4, 10

*Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617 (9th Cir.1987) ........ 11

*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) ........ 8

*OPG v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ........ 13

*Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991) ........ 5

*Perfect 10, Inc. v CCBill, LLC*, 488 F.3d 1102 (9th Cir. 2007) ........ 4

*Powell v. United States, Dep't of Justice*, 569 F. Supp. 1192 (N.D. Cal. 1983) ........ 11

*Roth v. Pritikin*, 787 F.2d 54 (2d Cir.1986) ........ 1

*Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895 (9th Cir 2003) ........ 12

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996) ........ 3, 5

*Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829 (9th Cir. 2003) ........ 3

*Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769 (9th Cir. 2006) ........ 3, 4

**Statutes**

17 U.S.C. § 505 ........ 3, 4

**Constitutions**

Federal Rule of Civil Procedure 54(d) ........ 3

**California Legislation**

United States Constitution, First Amendment ........ 4, 8, 9, 10



DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Without colorable claims and seeking to punish civil rights activists who publicly exposed and criticized his inflammatory rhetoric, Michael Savage filed a lawsuit wholly dependent on a frivolous copyright infringement claim against the Council on American-Islamic Relations ("CAIR") and lost. In light of the obvious unreasonableness of Savage's arguments, and given the clear remedy provided by the Copyright Act to counter such attempts, attorneys' fees should now be granted to CAIR, the prevailing party. As the Supreme Court has made clear, "[I]t is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) (*"Fogerty I"*).

An award of attorneys' fees serves to compensate the prevailing party and to punish the losing party, particularly where, as here, the losing party has acted unreasonably. *Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir.1986). In order to compensate CAIR for its significant expenses associated with defending against this baseless lawsuit, as well as to deter Savage (and others) from mounting such efforts in the future, CAIR respectfully requests that the Court grant its Motion.

## II. BACKGROUND

Plaintiff Michael Savage is the host of "The Savage Nation," a nationally-syndicated radio program that Savage claims "reaches eight million listeners per week." Second Amended Complaint ("SAC") at ¶ 2. Defendant Council on American-Islamic Relations, Inc. is the country's largest Muslim civil rights organization. On October 29, 2007, during his two-hour long radio program, Savage made a series of inflammatory and derogatory remarks about Islam, Muslims, and CAIR, including:

(1) "I don't want to hear one more word about Islam. Take your religion and shove it up your behind."

(2) "They need deportation . . . .You can take [CAIR] and throw them out of my country."

(3) "You can take your due process and shove it . . . ."

(4) "[I]ts Muslims screaming for the blood of Christians or Jews or anyone they hate."

(5) "[Islam], a religion that teaches convert or kill, a religion that says oppress women, kill homosexuals . . . ."

(6) "The Quran is a document of slavery and chattel."

Order at p.2 (citing Declaration of Dr. Parvez Ahmed of January 30, 2008, in Support of Defendant's Motion for Judgment on the Pleadings ("Ahmed Decl.") at Ex. A).

In response, CAIR posted Savage's remarks with a detailed criticism on its web site (www.cair.com) that included audio excerpts from Savage's radio program. *See* Ex. A to Ahmed Decl. The web page explained CAIR's objections to Savage's remarks, *see id.*, and included a four minute audio file containing the above-quoted excerpts from the show. SAC at ¶ 24. Savage then filed suit against the Council on American-Islamic Relations, Inc., the Council on American Islamic Relations Action Network Inc., and the Council on American Islamic Relations of Santa Clara Inc., accusing them of copyright infringement and racketeering.

On January 30, 2008, Defendants filed a Motion for Judgment on the Pleadings arguing, among other things, that both the copyright infringement and RICO allegations failed to state a claim upon which relief could be granted because CAIR's use of the Savage audio excerpts was protected speech under the fair use doctrine. On July 25, 2008, the Court granted Defendants' Motion and dismissed Savage's copyright claim, finding that "the majority of the four fair use factors, including the most important factors, weigh in favor of defendants." Order at p.13. The Court also granted Defendant's motion as to the RICO claim with leave to amend, finding that "plaintiff lacks Article III standing, has not pled proximate cause, and has filed a complaint that does not comply with the pleading requirements of the Federal Rules of Civil Procedure" (Order at p.21), further noting that "the only one of defendants' actions that connects plaintiff in any way to

DAVIS WRIGHT TREMAINE LLP

the alleged RICO conspiracy ... is defendants' use of a four-minute audio clip of plaintiff's radio program on their website" (Order at p.14).

On August 15, 2008, Savage advised the Court that he would not seek to amend his RICO claim. Accordingly, this Court entered a final judgment August 15, 2008. This Motion for fees is filed within 14 days of the entry of judgment and thus is timely under Fed. R. Civ. P. 54(d).

## III. ARGUMENT

### A. Legal Standard

Pursuant to section 505 of the Copyright Act, a district court has the discretion to award "a reasonable attorneys' fee to the prevailing party." 17 U.S.C. § 505. "In applying this provision, district courts are charged with two tasks: first, deciding whether an award of attorneys' fees is appropriate, and second, calculating the amount of fees to be awarded." *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 832-33 (9th Cir. 2003). Prevailing defendants and prevailing plaintiffs are treated alike for purposes of determining copyright fee awards. *Fogerty I*, 510 U.S. at 534.

An award of fees to a prevailing defendant is warranted where, as here, a successful defense furthers the policies underlying the Copyright Act. *See also Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559 (9th Cir. 1996) ("*Fogerty II*"). In order to make such a determination, the Court may consider a number of non-exclusive factors, including but not limited to: (a) the degree of success obtained; (b) objective reasonableness of factual and legal arguments; (c) frivolousness; (d) motivation of the party in bringing suit; and (e) need for compensation to a prevailing party and/or need for deterrence of frivolous claims or defenses. *See, e.g., Fogerty I*, 510 U.S. at 534 n. 19; *Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006); *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996); *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996); *Fogerty II*, 94 F.3d at 557. Ultimately, the "[f]aithfulness [of considered factors] to the purposes of the Copyright Act is . . . the pivotal criterion." *Fogerty II*, 94 F.3d at 558.

Once a court determines that fees are warranted under the Copyright Act, it must determine the reasonable value of the work performed. *Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003). The moving party bears the burden of establishing the appropriate hours

expended and the hourly rates. *See, e.g., Fantasy, Inc. v. Fogerty*, No. C 85-4929-SC, 1995 WL 261504, at *2 (N.D. Cal. May 2, 1995) ("*Fogerty III*").

**B. A Fee Award to CAIR is Appropriate**

The Court should award CAIR its fees and costs. CAIR's successful defense brought a prompt end to Savage's spurious litigation aimed at abusing copyright law to squelch an obvious fair use. Thus, CAIR's defense furthered a central purpose of the Copyright Act: to protect the balance between the First Amendment and copyright law that fair use embodies. *See, e.g., Los Angeles News Service v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 997 (9th Cir. 1998) (holding that a successful fair use defense "served the purposes of the Copyright Act" and warranted an award of fees under section 505); *Mattel, Inc. v. Walking Mountain Productions*, No. CV99-8543RSWL (RZX), 2004 WL 1454100, *1-2 (C.D. Cal. 2004) (holding that a successful defense of a parodic piece involving Barbie furthered the purposes of the Copyright Act when it "created the sort of social criticism and parodic speech … promoted by the Copyright Act.").

1. Degree of Success Obtained

The first factor, degree of success obtained by the prevailing party, clearly favors CAIR. *See, e.g. Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006). CAIR prevailed on its fair use defense at the pleading stage, leading the Court to dismiss not only Savage's copyright infringement claim but also the RICO claim with which it was inextricably entwined. *See, e.g.*, Order at p.14 (noting that the "only one of defendants' actions that connects plaintiff in any way to the alleged RICO conspiracy … is defendants' use of a four-minute audio clip of plaintiff's radio program on their website."). *See also, e.g., Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1104, 1105 (N.D. Cal. 2003) (finding the plaintiff's success to be "complete and unquestioned" and an "award of attorneys' fees appropriate."). Accordingly, this factor weighs heavily in favor of awarding fees to CAIR.

2. Frivolousness and Objective Reasonableness

The second factor – the frivolousness and/or objective reasonableness of the losing party's claims – also favors a fee award to CAIR. *See Perfect 10, Inc. v CCBill, LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007) (requiring the court to consider the objective unreasonableness of a party's

DAVIS WRIGHT TREMAINE LLP

claims, "both in the factual and in the legal components of the case."). *See also Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1456 (9th Cir. 1996) (awarding attorneys' fees to prevailing defendant when plaintiff's claims were "objectively unreasonable" because he "articulated no theory of liability" connecting defendant to the allegedly infringing acts); *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997) ("because the evidence in the record reveals that ERG [losing plaintiff] never had any evidence to support its ... claims, the district court properly found that it was objectively unreasonable for ERG to have maintained these claims...").

Savage's lawsuit epitomized unreasonableness.[1] Far from pursuing claims with a "legal basis sufficient to survive" summary dismissal (*see, e.g., Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996)), or even making arguments involving ambiguous or novel points of law, Savage instead repeatedly pursued positions that were not supported by a shred of authority. *See, e.g., Brayton Purcell LLP v. Recordon & Recordon*, 487 F.Supp.2d 1124, 1130 (N.D. Cal. 2007) (considering frivolousness and reasonableness factors concurrently). For example:

- Arguing the "purpose and character of the use" fair use factor, Savage ignored the undisputed fact that CAIR's used Savage audio excerpts purposes of commentary and criticism and instead attempted to conjure a meritless "motivation" factor without any valid citation to authority.[2] *See* Order at p. 7 ("Plaintiff tries to conflate 'motive' with the purpose and character of the use, which is not permitted by the case law. Rather, even assuming the truth of plaintiff's

[1] In addition to making frivolous substantive arguments, Savage behaved in an unreasonable manner throughout the course of the litigation. In addition to bringing the suit for improper motives (as discussed below), Savage (for example) refused to stipulate to the submission to the Court of an audio recording of the copyrighted work in question for the Court to review (*see* Transcript at 16:12-21), even though it was central to both of his claims. Moreover, Savage submitted what can only be charitably described as a "polemic" Complaint (*see* Order at p.2) that the Court noted may have been "brought to harass the defendant and constituted 'shotgun' pleadings that made it extremely difficult for the court and opposing parties to identify the facts that would give rise to a cognizable claim." Order at p.19 (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1518-19 (11th Cir. 1991)).

[2] *See also, e.g.,* Opposition at p.5 ("CAIR's [fair use] affirmative defense relies upon a jury believing that CAIR is a charity and a civil rights group."); *but compare* Transcript of Motion for Judgment on the Pleadings Hearing of March 11, 2008 ("Transcript"), at 8:22-24 ("THE COURT: Actually, you don't have to be a charity to do exactly what the law says you can do. MR. HOROWITZ: I agree.").

allegations about motive, it is the manner of use, not the motivation behind it, which must be analyzed: 'what use was made,' rather than 'who is the user.' Defendants' Reply at 3.").

- Savage further argued that statutorily authorized fair uses of commentary and criticism utilizing copyrighted materials are limited to defending one's self or an identified individual or entity, a position that has no basis in the case law and is indeed contradicted by the only case he cites for this proposition. *See* Plaintiff's Opposition to Motion for Judgment on the Pleadings, filed February 14, 2008 ("Opposition"), at pp.13-16; *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1150 (9th Cir. 1986) (fair use holding applied to co-defendants who distributed hundreds of thousands of mailings in order to defend defendant Falwell).

- Arguing the "amount and substantiality of the portion used" factor, Savage repeatedly contradicted himself and took groundless positions at odds with his own Complaint. While he brought suit based on the alleged "infringement of the copyright to the October 29, 2007 show" (*see* Second Amended Complaint of February 19, 2008 at ¶ 23; *see also* Copyright Registration Number SR0000610214), Savage nevertheless asserted that the "amount and substantiality" could instead be determined by examining individual show segments. As the Court noted, Savage took contradictory positions regarding whether CAIR utilized the "heart of the work" and indeed what the "work" at issue was.[3] *See* Order at p.10 ("It should first be noted that this claim is inconsistent with various allegations in the complaint, such as the assertion that CAIR's 'repackaging damaged the work and damaged the public image of the work because it was taken out of context . . . of 'The Savage Nation' . . . and that defendants did not use the excerpt in "the context of the statement and it is not consistent with the content of the programming as a whole . . .'"); *id.* ("[P]laintiff's admission that the excerpt is roughly four minutes out of a two hour show strongly suggests that the amount used was small in relation to the entire talk show program on October 29, 2007.").[4]

---

[3] *See, e.g.*, *Maljack Productions Inc. v. Goodtimes Home Video Corp.*, 81 F.3d 881 (9th Cir. 1996) ("MPI's copyright claims, which are completely contradicted by the language of [the contract] are, if not frivolous, at least factually unreasonable.").

[4] *Compare, e.g.*, Opposition at p.8 ("The relationship of the material used by CAIR to the totality of the performance cannot be decided on the pleadings."); Transcript at 4:22-5:2 ("HOROWITZ: … We're saying that they took four minutes, took it out of context, took it out of the attack on radical Islam, because this is part of a plan, it's part of a conspiracy, it is one group, Hamas, in the



DAVIS WRIGHT TREMAINE LLP

- Savage's position on the "effect on the use upon the potential market" factor – that CAIR wrongfully harmed him by means of their criticism and commentary, causing advertisers to withdraw their support from the program – was also baseless. As the Court noted in its Opinion, "[a]llegations of this sort have been squarely rejected by the Supreme Court." Order at p.12 (citing *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 591-92 (1994)). "[T]he Supreme Court has held that critique or commentary of the original work, such as a parody, that kills demand for the original by force of its criticism, rather than by supplying the demands of the market, does not create a cognizable harm under the Copyright Act." Order at p.11 (citing *Campbell*, 510 U.S. at 591-92). *Compare* Transcript of the March 7, 2008, Motion for Judgment on the Pleadings hearing ("Transcript") at p.8 ("THE COURT: We know for example that it's okay to take something and criticize it, politically or artistically or intellectually, or any other way, because we do have this free market of ideas in this country. So we know that, right? MR. HOROWITZ: Exactly. And I concede that that's their argument. And I concede -- THE COURT: You concede that's the law. MR. HOROWITZ: The law, too, and it's their argument.").[5]

Savage's substantive arguments in this case were nothing short of frivolous and unreasonable. This factor weighs in favor of an award of attorneys' fees and costs.

3. Motivation

The Court may further consider the motivation behind bringing the suit. Where it is demonstrated that a plaintiff's motivation in alleging copyright infringement is to secure benefits other than to pursue valid claim — *i.e.*, where plaintiff has an improper motivation – a fee award is appropriate. *See, e.g., Maljack Prods.*, 81 F.3d at 889 (finding that motivation factor properly supported grant of attorney fee award to defendant where evidence demonstrated that plaintiff had

U.S. that has three goals: Raising money and destroying U.S. opposition and recruiting Muslim radicals in this country."); Transcript at 6:16-21 ("HOROWITZ: … Fair use is if you're a charity and you're taking what you need to get across the point of discrimination and intolerance. THE COURT: You would have preferred that the whole two hours be played? MR. HOROWITZ: No. …").

[5] *See also, e.g.*, Order at p.12 ("Thus, plaintiff admits that the effect of defendants' usage is limited to the public criticism and condemnation of the ideas within the original work, not market damage in the economic sense."); *id.* ("Likewise, plaintiff's allegation that defendants repackaged the original, misportraying its meaning and message, creates a presumption that the work is transformative.").



DAVIS WRIGHT TREMAINE LLP

brought lawsuit in effort to improperly expose defendant to hardship). That is precisely the case here.

Throughout his court filings, in counsel's statements to the Court, and in his public statements, Savage's improper motive has been clear: to punish and harass CAIR for publicly (and effectively) criticizing him. As the Court noted, "the gravamen of plaintiff's dispute is with the ideas that defendants may or may not espouse." Order at p.14; *see also id.* at p. 16, 17.[6] In the December 17, 2008, edition of the New York Times, Savage himself confirmed that retaliation for CAIR's public criticism was behind his lawsuit: "'If they are trying to hang me by my own petard, they have no right to use my petard,' Mr. Savage said after Monday's show. 'It's my petard, not theirs.'" Jacques Steinberg, "Boycotted Radio Host Remains Unbowed." New York Times, December 17, 2007, *available at* http://www.nytimes.com/2007/12/17/arts/17sava.html (last visited on August 27, 2008).

Savage's own web site provides further strong evidence that his goal with this suit was not to obtain legal redress for valid complaints. While in his court filings Savage continually repeated the baseless assertion that CAIR infringed his copyright by placing a link to excerpts from Savage's radio program next to a "subscribe/donate" button,[7] Savage has done and continues to do the very same thing on his own site. For months, and continuing today, Savage has prominently placed links to inflammatory (presumably copyrighted) audio excerpts from former Barack Obama preacher Rev. Jeremiah Wright next to a "donate" button where listeners could "protect freedom of speech" by "support[ing] the Savage Legal Defense Fund." *See* Exhibits H, I to Declaration of Matthew Zimmerman in Support of Defendants' Motion for Award of Attorneys' Fees

[6] As the Court further pointed out, "Justices Souter and Kennedy have warned of the danger presented by 'harassing RICO suits' and the importance of the First Amendment in preventing such harassment. .... Those justices stated that it is 'prudent to notice that RICO actions could deter protected advocacy and to caution courts applying RICO to bear in mind the First Amendment interests that could be at stake.'" Order at 16 (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J., concurring)).

[7] *See, e.g.,* Opposition at p.5 ("The copyright lawsuit focuses on four minutes and Thirteen seconds of Michael Savage's performance whose link appears in the upper right corner of the web page, next to the "Subscribe/Donate" button. Right next to the donate button, the webpage has a link to hear "...these and other bigoted statements". It is that link, next to the donation button and the four minutes and Thirteen seconds of performance which then airs, which constitute the copyright violation.").

("Zimmerman Decl."). Savage identifies these clips, which his site has credited to ABC News and Fox News (*see, e.g.*, Exhibit G to Zimmerman Decl.), as examples of "Obama's pastor's hate speech." Exhibits G, H, I to Zimmerman Decl. While his use of these materials of course constitutes fair use, it strongly suggests that even he and his legal counsel never believed the fundamental premise of his suit: that "if CAIR objects to Savage's performance itself, they cannot post it and ask for donations." Opposition at p.14.

Savage's attempt to leverage his meritless Complaint into an excuse to pursue inappropriately burdensome and invasive discovery confirms his bad faith. Before the Court heard oral argument on CAIR's Motion for Judgment on the Pleadings, Savage's counsel delivered to CAIR proposed discovery that confirmed Savage's intent to use the litigation process to harass CAIR and its associates. The proposed discovery identified a dozen deposition targets, requested production of a remarkably broad yet curious range of documents (seeking, among other things, years of tax records, mortgage information, web site hosting and administration records, and information about other First Amendment-protected activities such as demonstrations and seminars, records pertaining to political donations), and proposing hundreds of requests for admission lifted verbatim from a Virginia state court criminal case. *See* Exhibit E to Declaration of Thomas Burke in Support of Defendants' Motion for Award of Attorneys' Fees ("Burke Decl."). Had the Court not agreed that Savage's claims were plainly invalid, CAIR faced the prospect of years of costly discovery triggered by what the Court noted was a single offending "act": CAIR's criticism of Savage's radio program.

Savage brought his lawsuit against CAIR not to obtain redress for infringement but to use the judicial process to punish CAIR for its vocal – and legal – dissent. Accordingly, this factor weighs in favor of an award of attorneys' fees to CAIR.

4. <u>Need for Compensation and Deterrence</u>

Where a losing party's legal or factual position is frivolous or objectively unreasonable, as here, a fee award is appropriate. *See, e.g., Maljack,* 81 F.3d at 890 ("[W]e consider that an award of fees may deter baseless suits."). Such deterrence is clearly needed here to prevent Savage from attempting to use the courts to shut down legitimate critical speech. Indeed, this is not the first

DAVIS WRIGHT TREMAINE LLP

time that he has tried to do so. In 2003, for example, Savage's distributor filed a lawsuit against the operators of web sites critical of Savage who, among other things, allegedly posted excerpts from Savage's show and encouraged readers to contact advertisers to convince them to discontinue their support of his program. *See* Complaint in *Talk Radio Inc. v. Thomas v. Leavitt et. al.*, No. 03C 3167, (N.D. Ill. filed May 13, 2003), attached as Exhibit D to Zimmerman Decl. After the defendants moved to dismiss on (among other things) First Amendment grounds, TRN voluntarily dismissed the suit. *See* Order of Dismissal in *Talk Radio Inc. v. Thomas v. Leavitt et. al.*, No. 03C 3167, (N.D. Ill. filed May 13, 2003), attached as Exhibit E to Zimmerman Decl.

Savage has demonstrated the will and the inclination to pursue litigation against critics, and he has the financial resources to do so. In addition to the salary he earns from a radio program that "reaches over eight million listeners per week" (SAC at ¶ 2), Savage continues to solicit donations on his web site for the ironically-named "Savage Legal Defense Fund," a fund he credits with bankrolling at least $150,000 worth of legal costs associated with this case. *See* Exhibits G, J, K, L to Zimmerman Decl. By contrast, CAIR is a "nonprofit, grassroots civil rights and advocacy group" (SAC at ¶ 17) with an operating budget (as of 2006) of less than $3 million for whom the legal costs associated with this case would constitute a significant burden if it was not able to recoup fees. *See* CAIR 2006 Annual Report at p.23, *available at* http://www.cair.com/Portals/0/pdf/2006_Annual_Report.pdf (*last visited* on August 27, 2008). *See also, e.g., Mattel,* 2004 WL 1454100 at *2 ("as to the factors of compensation and deterrence, Mattel (a large corporation) brought objectively unreasonable copyright claims against an individual artist. This is just the sort of situation in which this Court should award attorneys fees to deter this type of litigation which contravenes the intent of the Copyright Act.") (*citing Earth Flag Ltd. v Alamo Flag Co.* 154 F. Supp.2d 663, 66 (S.D.N.Y. 2001)).

On balance, this factor weighs heavily in favor of an award of attorneys' fees and costs. Although this may not have been the first time that Savage has attempted to use the judicial process to silence speech without legitimate cause, the Court can encourage him to make it the last.

DAVIS WRIGHT TREMAINE LLP

C. **Reasonableness of Attorneys' Fees and Costs Sought**

Once the Court determines that a fee award is appropriate, it must then determine the value of the work performed. To evaluate the reasonableness of the fees and costs sought, the Court begins by calculating the lodestar, or, "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Ackerman v. Western Electric Co.*, 643 F. Supp. 836, 860 (N.D. Cal. 1986). The party seeking attorneys' fees bears the burden of producing evidence supporting the hours worked and a reasonable rate. *Id.* There is a "strong presumption" that the lodestar is reasonable if the Court finds that the hours expended and corresponding rates are both reasonable. *See, e.g., Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir.1987).

The proper hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) (quoting *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)). The Court may adjust the lodestar in its discretion for various reasons including "time spent by attorney; novelty and complexity of the issues presented; level of skill required; customary fee charged by attorney or firm; experience, reputation, and ability of attorney; and awards in similar cases." *Exner v. FBI*, 443 F. Supp. 1349, 1354 (S.D. Cal. 1978); *Powell v. United States, Dep't of Justice*, 569 F. Supp. 1192, 1202 (N.D. Cal. 1983).[8]

CAIR seeks compensation for the time and costs expended to defend against this action, to secure a favorable order on its Motion for Judgment on the Pleadings, and to seek attorneys' fees.

---

[8] The Ninth Circuit has identified a total of twelve factors that may be relevant to a Court's determination of a reasonable fees award. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). These considerations are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* The Court need only consider those factors applicable to the instant case. *Powell*, 569 F. Supp. at 1202.

As an initial matter, although CAIR's right to fees arises under the Copyright Act, it is entitled to recover fees for its defense of both Savage's copyright infringement claim and his tag-along RICO claim. These claims "involve a common core of facts or will be based on related legal theories." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). As such, the "lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the [prevailing party] in relation to the hours reasonably expended on the litigation." *Id.*

Savage has acknowledged throughout this case that both his claims rested on his copyright infringement allegations, and the Court repeatedly recognized the point as well. *See, e.g.,* Order at p.14 ("[T]he only one of defendants' actions that connects plaintiff in any way to the alleged RICO conspiracy ... is defendants' use of a four-minute audio clip of plaintiff's radio program on their website."); Order at p.16 ("The only action by defendants which plaintiff contends confers standing on him to bring his RICO claim is defendants' decision to post a four-minute audio clip of plaintiff on their website in the context of criticizing plaintiff's views."); Order at 18 ("The only connection between plaintiff and the RICO conspiracy he alleges is that plaintiff's copyright interests were injured when defendants 'repackaged and damaged' his work."). "Much of counsel's time" was "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis;" (*see* Burke Decl. at ¶ 3); thus, any award to CAIR should recognize the time its attorneys spent defending the entire matter.[9] *Hensley*, 461 U.S. at 435. *See also Schwarz v. Secretary of Health & Human Services*, 73 F.3d 895, 902-03 (9th Cir 1995) (*citing Hensley*) ("Thus, the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'").

The billable rates of CAIR's attorneys (CAIR is represented jointly by Davis Wright Tremaine LLP ("DWT") and the Electronic Frontier Foundation ("EFF")) are reasonable, and are well within the prevailing hourly rates in the San Francisco Bay Area for lawyers of comparable

---

[9] *See also, infra,* footnote 1, highlighting the Court's recognition of the "shotgun" nature of Savage's Complaint in general and RICO cause of action in particular that "made it extremely difficult for the court and opposing parties to identify the facts that would give rise to a cognizable claim." Order at p.19.



DAVIS WRIGHT TREMAINE LLP

education, expertise, and experience who handle matters of the type involved in this litigation. *See* Declaration of Daralyn Durie in Support of Defendants' Motion for Award of Attorneys' Fees ("Durie Decl.") at ¶ 7; Burke Decl. at ¶ 6. Indeed, in recent years, both DWT's and EFF's rates have been deemed reasonable by a range of courts.[10]

The declarations filed with this Motion attest to the skill and expertise of the attorneys who worked on this matter on CAIR's behalf. As the Court will see in those declarations and other supporting materials, the hours spent by its attorneys on this matter are reasonable in light of the task with which they were presented.

## IV. CONCLUSION

Michael Savage sued CAIR for exercising its First Amendment rights and engaging in an important public discussion of national importance. Recognizing the possibility for this type of abuse, Congress ensured that strong protections, including attorney's fees, would be available to protect defendants against meritless claims brought by copyright holders who sought to silence critics.

[10] EFF: In *Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-05278 SI, 2008 U.S. Dist. LEXIS 44050 (N.D. Cal. June 4, 2008), Judge Illston found reasonable the 2007 hourly rates of EFF's attorneys, and awarded a total of $51,540.00 in attorneys' fees at those rates. In *Apple v. Does* (Santa Clara Superior Ct., Case No. 1-04-CV-032178), EFF was awarded attorneys' fees in accordance with their lawyers' 2006 and 2007 rates. *Id.* In *In re Sony BMG CD Technologies Litigation* (S.D.N.Y. Case No 1:05-cv-09575-NRB), EFF attorneys were paid fees at their hourly rates as part of the settlement of the action in June 2006. *Id.* Further, in *OPG v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004), EFF attorneys were paid fees after a summary judgment victory at the organization's 2004 hourly rates.

DWT: In *Taus v. Loftus*, 40 Cal. 4th 683 (2007), in connection with an anti-SLAPP Motion and subsequent appeals, on remand, a portion of clients DWT represented were awarded $240,000 in fees and costs (using rates set by an insurer over a multiple-year period). In *Simpson Strong-Tie v. Gore*, Santa Clara County Superior Court, Case No. 106CV-057666; (S164174) (Petition for Review granted by the California Supreme Court on July 30, 2008 to address two non-fees related issues), in connection with another anti-SLAPP Motion, DWT's client was awarded $74,124.50 in fees and costs (using 2006 hourly rates).

Having unequivocally prevailed against such meritless claims, CAIR respectfully requests that the Court grant its Motion and award it the fees and costs – $189,008.10 and $890.00, respectively, for a combined request of $189,898.10[11] – that were necessary to mount that successful defense and to bring this Motion.

DATED this 29th day of August, 2008.

DAVIS WRIGHT TREMAINE LLP
Thomas R. Burke

ELECTRONIC FRONTIER FOUNDATION
Matthew J. Zimmerman

By: /s/ Matthew Zimmerman
Matthew J. Zimmerman

Attorneys for Defendants
COUNCIL ON AMERICAN-ISLAMIC RELATIONS, INC., COUNCIL ON AMERICAN ISLAMIC RELATIONS ACTION NETWORK, INC., AND COUNCIL ON AMERICAN ISLAMIC RELATIONS OF SANTA CLARA, INC.

[11] The combined request includes amounts submitted by attorneys from Davis Wright Tremaine LLP (*see* Burke Decl. at ¶ 3 and accompanying exhibits), the Electronic Frontier Foundation (*see* Zimmerman Decl. at ¶¶ 9-11 and accompanying exhibits), and the Declaration of [CAIR National Legal Counsel] Nadhira al-Khalili in Support of Defendants' Motion for Award of Attorneys' Fees ("al-Khalili Decl.") at ¶¶ 6, 11.