1  DANIEL A. HOROWITZ State Bar No. 92400
   Attorney at Law
2  P.O. Box 1547
3  Lafayette, California 94549
   (925) 283-1863
4

5  Attorney for Plaintiff

6

7

8              *UNITED STATES DISTRICT COURT*

9              *NORTHERN DISTRICT OF CALIFORNIA*

10

11

12  MICHAEL SAVAGE,
    aka (Michael Weiner)
13                                          No.  3:07 cv 06076 SI

14             Plaintiff,

15  vs.

16  Counsel on American-Islamic
    Relations, Inc. and Does
17  1-100

18             Defendants.

19  _____/

20

21

22

23

24

25

26      **OPPOSITION TO MOTION FOR**
             **AWARD OF FEES**
27

28

1

2                                    **INTRODUCTION**

3          Defendant seeks to take a rather basic set of off the shelf pleadings and elevate them to an

4    epic accomplishment with epic fees.  As this motion response shows, it was defendant who

5    stubbornly refused to discuss a resolution of this case before filing, after filing, before the Rule 12

6    motion was filed and after it was filed.  Defendant obstructed settlement and refused discussion

7    at all times.  They created a tempest because it suited their purpose.  Discussion was never an

8    option for them.

9          The present motion is primarily a political polemic which ironically calls upon the Court

10   to award fees as a form of punishment for Michael Savage's First Amendment protected views. It

11   is couched in the format of a fee request but it is written with obvious political implications

12   seeking punishment of Savage.   Thinly veiled but transparent is the extraordinarily mistaken

13   belief that by placing Savage's political views before this this Court punishment in the form of

14   fees will be imposed.   The brief of defendant essentially lies about the interaction between

15   plaintiff and defense counsel as a high level of friendliness and cooperation is misrepresented as

16   plaintiff's counsel making threats.  The Court is then shown Savage's attacks on Senator Obama

17   via his comments and videos of the Rev. Wright.    There is a convoluted argument that the later

18   posting of these videos somehow shows that the lawsuit filed months before was in bad faith but

19   its real purpose seems obvious.  It is an insulting excuse for making an appeal to this Court for a

20   political imposition of fines in the form of purported fees.   This has to be one of the most

21   blatant, misguided appeals to injustice that has been filed in this District.

22         This response makes no excuse for the filings of Michael Savage.  This response is

23   honest, direct and does not sugar coat any aspect of the case.  It is a direct statement of why the

24   lawsuit was filed and what happened after it was filed.   Counsel respects the Court's views on

25   this case and the detailed opinion that provided counsel with the opportunity to meaningfully

26   address the Court's concerns about the viability of an amended complaint.

27

28   Opposition to Motion for Award of Fees                    1

1    With that in mind, counsel and Savage are proud of the lawsuit and their attempt to

2  expose the hypocrisy of CAIR and its supporters.  Counsel and Savage are still convinced that

3  CAIR acted unlawfully in its conduct and that Savage could (and has) made a good faith case to

4  show that CAIR intended its conduct to support terrorism.  While reasonable people may differ

5  on the First Amendment issues, reasonable differences are the essence of a democracy and the

6  courts should encourage the peaceful resolution of differences and should never financial punish

7  a party for raising meaningful issues of public concern.

8  **This Court's Opinion Supports Plaintiff's Assertion that No Fees Should Be Awarded**

9    This Court issued a lengthy and carefully documented opinion in this case.  There were

10  factual conclusions drawn from both the pleadings and from supplementary materials filed by

11  defendant.  Plaintiff recognizes that the Court acted properly in reviewing extrinsic facts.

12  Plaintiff does believe that some of the facts that the Court relied upon in its decision *should not*

13  *have been decided* without an evidentiary hearing[1].

14    However, that is water under the bridge and while plaintiff respectfully disagrees with

15  some of the key factual conclusions there is no question that once those facts were decided, the

16  logical application of those facts to the law favored the defendant and supported the Court's

17  decision.   Plaintiff will not seek to reinvent the wheel by arguing those points.  However,

18  plaintiff is entitled to have the Court consider that had the facts been differently determined, the

19  outcome would also have been have potentially different.

20    Along these same lines, there is no question that the Court had the right to listen to the

21  full Savage performance and to draw conclusions after doing that.  Plaintiff appreciates that the

22  Court did listen to almost two hours of material and recognizes that for some of the factual

23  conclusions drawn by the Court, this listening is the equivalent of holding a "... hearing on

24  disputed facts and the scope and method of the hearing is within the sound discretion of the

25

26    [1]"Upon holding an evidentiary hearing to resolve material disputed facts, the district court
27  may weigh evidence, assess credibility, and make findings of fact that are dispositive on the Rule
12(b)(3) motion." . Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004).

28

1  district court." Id. at 1139.   However, plaintiff respectfully submits that some of the Court's

2  factual findings were based upon a lesser inquiry and plaintiff submits that he was not given a

3  sufficient opportunity to present evidence on those points.   Perhaps some of the fault here is

4  plaintiff's.  Maybe plaintiff should have insisted on a full hearing once the Court's written

5  findings were made.  However, plaintiff took a different direction.  Plaintiff reviewed the Court's

6  findings and believed that the RICO would be viable once amended.  The First Amendment

7  issues that were so strongly and effectively addressed in the Court's opinion could be and were

8  both addressed and avoided.  (See the Amended Complaint that was not filed but is attached

9  hereto. Exhibit 1 is the Amended RICO, Exhibit 2 (in 2 parts) are the supporting exhibits).

10 **Factual Findings That Could Have "Gone the Other Way"**.

11      The Court rejected plaintiff's contention that the use in this case was a commercial use.

12 Had the Court found that the use was commercial, the balancing of factors would have been more

13 favorable to plaintiff.  Plaintiff accepts the fact that (as this Court has noted) that even such a

14 commercial use can "traditionally have had a claim to fair use  protection." *Campbell*, 510 U.S.

15 at 583. Therefore, "[e]ven assuming that the use had a purely commercial purpose, the

16 presumption of unfairness can be rebutted by the characteristics of the use." *Hustler Magazine,*

17 796 F.2d at 1152-53.

18      Plaintiff submits that factual determination went against Savage without much discussion

19 and it is not impossible that with further proof the factual finding could have gone the other way.

20 As the unfiled Amended RICO shows, CAIR was founded to only mimic a civil rights

21 organization so that American Muslims would not know their true purpose and nature.   This

22 allegation is supported by Exhibits that include transcripts of surreptitious recordings of the

23 founders of CAIR.  It is also based upon internal documents of the founding group.   The idea

24 that a political group such as Hamas may have the same rights as a "commercial" user of a

25 segment is an new concept.  Until now, we have essentially contemplated three groups of users.

26 Legitimate commentators, commercial users who may or may not fall within "fair use" and

27

28 Opposition to Motion for Award of Fees                3

1  criminal copyright infringers.  The interesting issue in the CAIR case is this.  If Savage could

2  have proven that CAIR was part of a criminal enterprise, is their use of the segment social

3  commentary because they have chosen to limit their surface use to "civil rights".   There is no

4  case on this point.  The Hustler case sets the outlines of the analysis but it is a fact based inquiry

5  and there is new law to be made as well.   Savage had the right to explore this new area,

6  especially if the Court credits him with a genuine belief, supported by substantial facts that tie

7  CAIR to Hamas in a very direct manner.

8      The fact based aspect of this case is critical.  The *Hustler* case must have initially seemed

9  like an obvious copyright violation.  It is hard to imagine that Rev. Falwell's lawyers were

10 cheerfully expecting an easy victory.  They focused on a set of egregious facts and made new

11 law.  Savage is also focusing on egregious facts and he is arguing that Hustler does not apply.

12     "The crux of the profit/nonprofit distinction is not whether the sole motive of the

13     use is monetary gain but whether the user stands to profit from exploitation of the

14     copyrighted material without paying the customary price." Harper & Row

15     Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 105 S. Ct. 2218, 2231-32, 85

16     L. Ed. 2d 588 (1985); see also Iowa State University Research Foundation, Inc. v.

17     American Broadcasting Companies, Inc., 621 F.2d 57, 61 (2d Cir. 1980)

18     (Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1152

19     (9th Cir. Cal. 1986))

20     "Profit" can mean creating political cover to allow CAIR to carry out illegal conduct in

21 the United States.  "Profit" can more generically mean any use other than the First Amendment

22 protected use that allows "Fair Comment".  This Court made a call that favored CAIR.  The call

23 was that regardless of ulterior motives, there was a First Amendment use that required protection,

24 even if that use was contrived to hide CAIR's genuine purpose.

25     There is really no case that says that this is the only finding the Court could make.  There

26 is a grey area here.  The Court could have recognized the surface legitimacy of the use but made

27

28 Opposition to Motion for Award of Fees                    4

1   a finding that the commercial or criminal use so outweighed the public benefit use that a

2   copyright infringement should be found.  The Court did not do this and plaintiff did not ask for

3   reconsideration and did not appeal.  Therefore, the Court is justified in finding that its position

4   was reasonable and fair.  However, the fact that the Court made a "reasonable and fair" judgment

5   does not mean that Savage lacked a strong and even compelling counter argument.   The decision

6   to shift the emphasis to the RICO makes complete sense.  Damages are higher.  The issues are

7   broader and the First Amendment issues are not as present.    This does not mean that the

8   copyright action was without good cause.  It simply means that the Court's logic and reasoning

9   was respected by Savage and he addressed the Court's concerns in a manner that he felt was both

10  rational and responsive to what the Court wrote.

11          Plaintiff may have won the battle on reconsideration or appeal but every lawyer must pick

12  his battles and the RICO battle better focused the core issues.  This is good judgment but Savage

13  and his counsel.

14          *Hustler* itself cites the Congressional Record for the point that the inquiry is ultimately a

15  fact cased one.  It cited the Report of the Committee on the Judiciary of the House as follows:

16          Although the courts have considered and ruled upon the fair use doctrine over and

17          over again, no real definition of the concept has ever emerged. Indeed, since the

18          doctrine is an equitable rule of reason, no generally applicable definition is

19          possible, and each case raising the question must be decided on its own facts. . . .

20          Beyond a very broad statutory explanation of what fair use is and some of the

21          criteria applicable to it, the courts must be free to adapt the doctrine to particular

22          situations on a case-by-case basis.

23          H.R. Rep. No. 94-1476, 94th Cong., 2nd Sess. 65-66 reprinted in 1976 U.S. Code Cong.

24          & Ad. News 5659, 5679-80 [hereinafter cited as "House Report"].

25          (*Hustler* at fn. 4)

26          This Court cited the factual basis for the Hustler decision several times.  At 5:3-5 of this

27

28  Opposition to Motion for Award of Fees                5

Court's order, the factual underpinning of the *Hustler* case is cited:

> It found that Moral Majority had not sold the copyrighted work as its own, but had used it
> for political comment about the plaintiff and to rebut the plaintiff's personal attack. *Id.* at
> 1153.

(Order 5:3-5)

The Order at 5:8-9 noted that:

> "[t]he Ninth Circuit concluded that Moral Majority's
> copying of the entire parody was reasonably necessary to provide such comment ..."

Again, this is a fact based determination.

The Court also applied the *Harper & Row* by factually distinguishing plaintiff's allegations. The Court's decision pointed out that CAIR did not "purloin" the tapes and that Savage was the first to broadcast them. This is a factual distinction between *Harper & Row* and Savage. However, while *Harper & Row* did reach the conclusion that the Nation stole the right to first publication, the case was not limited to a theft or first publication scenario.

Its holding did not require an pure theft nor a first publication. As Savage read(s) *Harper & Row* the theft finding went to the good faith vs. bad faith aspect of the analysis. Savage sought to argue that using his work to promote the "cover story" of a terror organization was the type of bad faith that mirrored a theft. This Court disagreed but this disagreement should be respected because it is the type of disagreement that arises when unusual facts are applied to an area of law that is well developed but often very subjective in terms of application. CAIR has no basis to characterize this type of intelligent discourse, as bad faith. As the record reflects, there is no a single attempt by CAIR to discuss the issues or work out a compromise with Savage. Since they prevailed on the copyright they can argue that they thought they would win but plaintiff respectfully submits that CAIR benefitted from the "fight" itself and didn't want to discuss or resolve these issues. The fact that this Court has carefully considered both sides and found that the First Amendment protected CAIR should not be confused by CAIR as a judicial endorsement

of all things that CAIR does.  It also should not be considered a rejection of the allegation by

Savage that CAIR has ulterior motives.   CAIR's brief reads as if the Court has endorsed CAIR

as the Muslim NAACP.  Plaintiff respectfully submits that CAIR may be more analogous to

other less savory groups but plaintiff also understands that the Court feels that the same

protections that shield(ed) the NAACP over the years will apply to CAIR regardless of whether

CAIR's motives are as pure as those of the NAACP.   The request for fees seems to assume that

the CAIR=NAACP and that Savage is a bigot argument has not only been accepted by this Court

but that somehow the Court will therefore award astounding fees to CAIR.  It is this set of

assumptions that plaintiff cites as offensive and which draw attention away from the core issues

in a fee application, the merits of the dispute.

.       Plaintiff submits that to the extent the pleadings allowed this Court to make factual

findings, he was acting in good faith.  Any attorney can read the cases and paraphrase the

important language to create a pleading that has little factual content but on its surface hits the

hot buttons necessary to survive a Rule 12 motion.  (The Court could then order evidentiary

hearings on key points.)  It takes an honest plaintiff to set forth specific facts that address the

issue of law and facts that are important to a judicial determination.  Savage did this and he did it

in a honest manner that allowed this Court to quickly go to the heart of the dispute.

CAIR has never had a case go to trial.  Perhaps a disingenuous pleading that would have

misled the Court but survived a Rule 12 motion would have ultimately wrung a settlement from

CAIR.  Perhaps ... but this is not how Savage or his counsel proceeded. There were honest and

direct with the Court at all times, just as this brief very openly makes statements regarding

CAIR's conduct in this litigation and in their fee application.

## SIGNIFICANT ISSUES OF LAW WERE DECIDED BY THIS COURT

As argued in the introduction, this case raised important issues of law and fact that this

Court decided.  These were substantial issues of law.  Analogizing to the type that would justify

bail on appeal plaintiff cites *United States v. Handy*, 761 F.2d 1279 (9th Cir. 1985), the Ninth

1   Circuit addressed the "substantial question" issue raised by 18 U.S.C. §3143(b)(2). In *Handy,* the

2   district court denied appellant's motion for release pending an appeal challenging the district

3   court's pre-trial denial of appellant's suppression motion. The Ninth Circuit remanded the matter

4   for reconsideration, defining a "substantial question" as a "fairly debatable question that calls into

5   question the validity of the judgment." Id. at 1282-83. [P]roperly interpreted [under § 3143]

6   "substantial" defines the *level* of merit required in the question presented and `likely to

7   result in reversal or an order for a new trial' defines the *type of question* that must be presented.

8   *Handy,* 761 F.2d at 1281.

9       Savage has strong precedent to allow him to argue that that speech which is designed to

10  intimidate through threat, is not protected speech.  In *Virginia v. Black*, , 538 U.S. 343 (2003) the

11  Supreme Court held that a statutory prohibition of cross-burning with the intent to intimidate did

12  not violate cross burner's right to freedom of speech, since the statute banned intentional

13  intimidating conduct rather than expression.

14      This is the thesis in Michael Savage's lawsuit and despite the claims by CAIR that this is

15  frivolous and is not a good faith position to take, it was and is, an important legal issue.   Cross

16  burning is an obvious attempt an intimidation with the implicit threat of violence.  Savage knew

17  that CAIR was more clever than southern cross burners.

18      He alleged that CAIR deliberately disguised their threat so that they could threaten and

19  then invoke the First Amendment when it was not a justified defense. There is state law

20  precedent as well.  In Flatley v. Mauro, 39 Cal. 4th 299, 313 (Cal. 2006) the California Supreme

21  Court held that settlement demands of an attorney were not protected by California's SLAPP

22  statute, when the statements were part of an extortion.

23      As a necessary corollary to this statement, because not all speech or petition

24  activity is constitutionally protected, not all speech or petition activity is protected

25  by section 425.16. (See, e.g., Lam v. Ngo (2001) 91 Cal.App.4th 832, 851 [111

26  Cal. Rptr. 2d 582] [violence and other criminal acts are not protected by the First

27

28

1    Amendment even if committed out of political motives at a political

2    demonstration; nor would Doe defendants who engaged in such activity be

3    protected by the anti-SLAPP statute].) The "scope of [section 425.16] is not

4    without limits, as demonstrated in … cases finding lawsuits were not within its

5    protection. [Citations.]" (Paul v. Friedman (2002) 95 Cal.App.4th 853, 864 [117

6    Cal. Rptr. 2d 82].) The case most often cited in support of this proposition is Paul

7    for Council v. Hanyecz (2001) 85 Cal.App.4th 1356 [102 Cal. Rptr. 2d 864]

8    (Paul), disapproved on other grounds in Equilon Enterprises v. Consumer Cause,

9    Inc. (2002) 29 Cal.4th 53, 68, footnote 5 [124 Cal. Rptr. 2d 507, 52 P.3d 685]

10    (Flatley v. Mauro, 39 Cal. 4th 299, 313 (Cal. 2006))

11    While this Court found that the facts as pled did not state an exception such as those

12   elucidated in Flately, Savage made a good faith attempt to do so and such a good faith attempt is

13   not frivolous.

14    Defendant has called into question whether Savage ever truly believed that CAIR and

15   Hamas were partner groups.   Plaintiff contends that Savage's RICO claim was simply a

16   rehashing of the Copyright claim and nothing more.  Both allegations are completely untrue.

17   Exhibit 1 is the lawsuit that Savage was prepared to file on the Amended RICO.  Exhibit 2 are

18   the Exhibits.  This pleading very carefully details the fact that CAIR was formed by Hamas to be

19   the American face of Hamas.  The goal was to advance the interests of Palestine and to serve

20   Palestine.  The civil rights persona was chosen to mimic the real civil rights group formed by

21   prominent Arab American pollster, James Zogby.  The civil rights persona of CAIR was deemed

22   a necessary evil in order to fool American Muslims who the CAIR founders knew would reject

23   the radical message of Hamas.

24    Exhibit 3  is a copy of the initial funding that CAIR received by wire transfer from the

25   Hamas based Holy Land Foundation.  The RICO lawsuit contains a screen shot where CAIR

26   solicited money for the victims of 9/11.  The second page shows that the recipient of money was

27

28   Opposition to Motion for Award of Fees                    9

1  the Holy Land Foundation.   The Holy Land Foundation is a terrorist group.  This is the type of

2  proof that Savage had to show that CAIR funded terrorist supporting groups.

3       As the Court can see from the complaint, the Noerr-Pennington issues, the First

4  Amendment issues and the RICO pleading questions are fully addressed in the amended

5  complaint.  The amended RICO complaint did not need this court to reverse itself on the

6  copyright cause of action.  (Although plaintiff does admit that he hoped the Court would have

7  second thoughts on that ruling upon reading the amended RICO cause of action).  Even without

8  the Noerr-Pennington section, without the First Amendment section, the RICO could have

9  survived. However, by directly addressing the Court's concerns, the RICO was stronger because

10 it incorporated broad range of conduct of CAIR.   The Court's decision in the copyright case did

11 eliminate RICO.

12      As commercial use is presumptively unfair, the Court had to make factual findings to

13 support the position that CAIR's use was in fact fair use. [2]   Plaintiff respectfully disagrees with

14 those factual findings but accepts them as the law of the case. Had the findings been to the

15 contrary, plaintiff would have been outside the dictates of the Hustler case.   Plaintiff respectfully

16 submits that this finding was unfair to plaintiff.   A factual finding of this magnitude shouldIf the

17 Court were to make factual findings of this magnitude, a full Summary Judgment motion should

18 have been the venue or leave to amend to add more detailed facts should have been allowed.

19      The court dealt with the factual issues in part by citing defendant's assertion that:

20      Plaintiff tries to conflate "motive" with the purpose and character of the use,

21      which is not permitted by the case law. Rather, even assuming the truth of

22      plaintiff's allegations about motive, it is the manner of use, not the motivation

23      behind it, which must be analyzed: "what use was made," rather than "who is the

24      user." Defendants' Reply at 3.

25

26      [2][T]he Court finds that defendants used plaintiff's material in order to
criticize and comment on plaintiff's statements and views. These facts are uncontested, and the
27 Court finds that this factor weighs heavily in favor of defendants. (Order 8:13-15)

28 Opposition to Motion for Award of Fees          10

This quite a narrow view of the law in this area and it is not fair to say that the Court's view is the only reasonable interpretation of the case law.  This grey area has not been elucidated and Michael Savage's view is very reasonable.  For Savage, "motive" is not off the table in terms of determining the actual nature of the use.  If motive were not to be considered, cross burning would always be protected because the "motive" of intimidation could not be considered.

The court notes at 3:4-8 that it is Savage's position that:

> ... defendants work to raise funds for terrorist groups, aim to silence voices that oppose their views, and have board members who are tied to alleged terrorist organizations[3]. He further alleges that defendants are the domestic branch of a foreign terror organization posing as a civil rights organization ...

Obviously the Court understands Savage's position but disagrees with it.  The Court's position is written out in detail in the Order and anyone with an interest in this area of law would find the analysis very interesting and very powerfully written.  However CAIR mistakes the strength of the Court's argument and the power of its logic with the assumption that the Court finds no rational basis for Savage's arguments.  That is not what this writer takes from the Court's opinion.  To the contrary, it appears that the Court sees both sides but has strongly favored its position for the reasons stated.  This is how law is made and how cases are intelligently evaluated.  It is wrong for CAIR to jump up and down like a child at Christmas thinking that it just got a big money present in the form of punishment under the guise of attorney's fees.   This was a decision that the Court obviously considered very carefully and which was based upon an assessment of facts and law.   This is the proper approach to this type of legal "problem".  In fact, the court in *Hustler* cites the Congressional Record for the point that many of these cases are fact driven, not law driven.  The court cites the Report of the Committee on the Judiciary of the House which states:

---

[3]There is no claim of "alleged".  Hamas is a terror organization and CAIR and its founders are Hamas members.

Opposition to Motion for Award of Fees                    11

> Although the courts have considered and ruled upon the fair use doctrine over and
> over again, no real definition of the concept has ever emerged. Indeed, since the
> doctrine is an equitable rule of reason, no generally applicable definition is
> possible, and each case raising the question must be decided on its own facts. . . .
> Beyond a very broad statutory explanation of what fair use is and some of the
> criteria applicable to it, the courts must be free to adapt the doctrine to particular
> situations on a case-by-case basis.

H.R. Rep. No. 94-1476, 94th Cong., 2nd Sess. 65-66 reprinted in 1976 U.S. Code Cong. & Ad. News 5659, 5679-80 [hereinafter cited as "House Report"].

(*Hustler* at fn. 4)

The factual findings made by this Court show that Savage made a good faith and serious attempt to plead this case within a genuine exception.  At 3:2-3 this Court recognizes that Savage is asserting that "this misappropriation was part of a criminal and political agenda to silence those speaking out against various facets of Islam.  This type of speech is not protected speech just as cross burning although expressive is not protected because it is meant to intimidate.  See *Virginia v. Black*, , 538 U.S. 343 (2003).

This Court made factual findings that the use of the statement was for fair comment to rebut derogatory statements.

> As discussed in the Court's analysis of the first fair use factor, defendants used the
> audio excerpts to comment on and rebut derogatory statements regarding their
> organization and their religious affiliations, and the amount used in reference to
> plaintiff's statements was reasonably necessary to convey the extent of plaintiff's
> comments. (Order 10:21-11:2)

Plaintiff respectfully disagrees with this factual finding and believes that it was not warranted under Rule 12 since this was a matter reasonably in dispute.  The Court disagreed and plaintiff has accepted that position as the law of the case.  However, it unfair for CAIR to pretend

Case 3:07-cv-06076-SI   Document 50   Filed 10/23/08   Page 14 of 26

that this was evident from the pleadings.

At 12:5-11 the Court determines that the loss of advertising revenue affected only new shows by Michael Savage and did not effect the resale or reuse of his old shows.

> Further, he does not allege any attempts or plans to sell or license the material or derivatives thereof.  Plaintiff instead alleges that defendants caused him financial loss in advertising revenue. Assuming the truth of this allegation, it relates only to the economic impact on future shows, and has no impact on the market for the original, copyrighted show on October 29, 2007. Because this factor limits the evaluation of market impact to the original work at issue, not other works by the creator, the loss of advertising revenue for future shows, unrelated to the original work, does not give rise to a legal cognizable infringement claim. Campbell, 510 U.S. at 590.

This is a rejection of the assertion by Michael Savage that CAIR's conduct was "designed to cause harm to the value of the copyright material in the long and short term." (Paragraph 24 of Complaint) and the allegations in paragraph 31 that "CAIR repackaging damaged the work and damaged the public image of the work because it was taken out of context ... [and] the introductory remarks were omitted and the context of "The Savage Nation" were removed."  The Court is finding that Michael Savage had no intention to remarket the original show and that he had no intention to market the original show.  None of this can be drawn from the pleading. It is based upon factual assessments by the Court.  This was critical because the Court noted that Therefore, the scope of fair use includes "copying by others which does not materially impair the marketability of the work which is copied." Id. This last factor is the most important factor of the fair use defense. Id. (Order 11:21-23).

The issue of "material impairment" is a question of fact and once Savage claimed that the work was damaged by CAIR's use, a finding of a lack of material impairment would usually be left the jury.  The Court found that these facts were established but plaintiff respectfully

1    disagreed.  Again however, absent a factual finding, a key component of the Court's decision

2    would not exist.

3        At 12:16-18 the Court makes a factual finding that:

4        The audience that might donate and listen to the audio segment on defendants'

5        website is separate from the audience that plaintiff possibly could stand to profit

6        from in using his website to sell the audio content at issue.

7        The Court then reasons that the CAIR use is not a substitute in the market for the

8    purchase of the original product.  What Savage alleged is that if people gave credence to the

9    material on the CAIR site they would not purchase or listen to his product.  The contention is that

10   by listening to the taken piece they will not longer wish to listen to the original.  Instead they will

11   donate to CAIR.  The Court rejects this and holds that the people who might donate and listen to

12   the audio segment on defendants' website is separate from the audience that plaintiff possibly

13   could stand to profit from ...."  This draws conclusions about the audience that would go to the

14   CAIR website and it rejects Savage's contention that CAIR "damaged the public image of the

15   work because it was taken out of context".  The Court's ruling assumes that CAIR did not take

16   the material out of context.  If it was misportrayed (out of context), then a group that might be

17   attracted to the material would reject the material because it was portrayed wrongly.  The Court

18   however, is finding that the material was as CAIR stated it was and therefore those who support

19   CAIR in its "civil rights" agenda would necessarily never purchase the material from Savage.

20       Plaintiff again respectfully disagrees with this finding but understands that the Court

21   listened to the entire Savage Nation broadcast as well as the four minute excerpt.   Where

22   plaintiff disagrees most strenuously with the Court is in the assessment that a repackaging is a

23   type of comment and does not supplant the original.  In claiming that the four minutes

24   misportrayed the original, Savage is arguing that people believe that they are hearing the original

25   in the sense that they are gaining the overall gist of the piece.  In that way, they do not listen to

26   the original and instead donate to CAIR.   It may be that the law is not clear on this distinction.

27

28   Opposition to Motion for Award of Fees                    14

1  Plaintiff is not arrogant in arguing his position.  Plaintiff understands the Courts' reasoning and

2  respects it.  However, the above distinction is a factual one and perhaps one of first impression in

3  terms of the law as well.

4  **SAVAGE'S RICO CLAIM WOULD HAVE SUCCEEDED**

5  Savage's RICO claim alleged far more than a simple use of his

6  This case by case analysis would necessarily include a consideration as to the genuine use

7  of the piece.   Plaintiff has actual transcripts of FBI recorded meeting of Hamas where CAIR was

8  established.  They specifically discuss setting up an American organization that has the Hamas

9  goals in its heart but they will not write those goals down.

10  This is the point. As an American organization, we cannot adopt this stuff or add

11  it to our goals. This stuff. .., in the eighties, we at the [Islamic] Association for

12  Palestine] wrote that ... UI. I mean ..., we cannot include this kind of stuff

13  officially in our papers.

14  and

15  ..., I'm telling you about things in the heart ..., the goals you're talking about are in

16  the heart but, can I write them down or can I support our brothers. We cannot

17  write them down.

18  (Exhibit to Amended RICO 22)

19  The founders even use the phrase "front group" to describe the group that they are

20  establishing.

21  It will be made up of some of our people, our beloved ones,

22  and let's not hoist a large Islamic flag and let's not be barbaric-talking. We will

23  remain a front so that if the thing happens, we will benefit from the new

24  happenings instead of having all of our organizations classified and exposed".

25  (Exhibit to Amended RICO 23)

26  These CAIR founders are aware that their work as Hamas would be illegal.

27

28  Opposition to Motion for Award of Fees                    15

Samah[4] ..., Samah is classified as a terrorist [organization]. By constitution, by

law, if I wanted to adopt its work, they kick me out, they kick me out of this

country, my brother. By God, they would take away my U.S, citizenship and tell

me

"Go away". I'm telling you ...

(Exhibit to Amended RICO 25)


The group scoffs at charity work and talks about how it is a waste of their efforts.

As far as charity work, money comes mainly from the Islamic

community. It won't give you much of anything, to you in particular because it is

true you could deceive it with an assumed name but then it will recognize you.

And the Jewish media now focuses on these things. (Exhibit 27)

As shown above, CAIR fears that the "Jewish media" will expose the real nature of

CAIR.

They also recognize that charity work in America does not benefit Hamas.

"Even children's daycare centers...we discover that their Dawa'a[5] value is close to

zero...What have we benefitted from that? The same thing applies to orphans

sponsorships; we spend hundreds of thousands of dollars over this program but,

there is no Dawa'a[6] use for it..."

Plaintiff should have been allowed to make this point to show that CAIR sought to gain

_____

[4]The conspirators agreed to refer to Hamas as "Samah" or "Sister Samah" to make it

more difficult for people overhearing their conversations to understand that they are Hamas.

[5]Dawa'a means issuing a summons or making an invitation; to summon, to invite.

[6]Dawa'a may be considered, preaching, the way to preach, use of logic, what quran says

about preaching or in the context above, propaganda for the benefit of Hamas.

from the use of Savage's performance for a gain that is other than "fair use".

> "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 105 S. Ct. 2218, 2231-32, 85 L. Ed. 2d 588 (1985); see also Iowa State University Research Foundation, Inc. v. American Broadcasting Companies, Inc., 621 F.2d 57, 61 (2d Cir. 1980)
>
> (Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1152
>
> (9th Cir. Cal. 1986))

The dispute between CAIR and Savage is very much like the <u>factual</u> dispute between Falwell and Hustler. Plaintiff submits that the amended RICO pleading gives much stronger support for Savage's copyright claims than the original pleading. Plaintiff points out that neither he nor his attorney were experts in CAIR or Hamas prior to this lawsuit. The lawsuit was filed after attempts to negotiate with CAIR were ignored and the lawsuit had to be filed quickly because CAIR was causing Savage significant financial damage.

The Court defines the dispute as to the "purpose and character of use" more narrowly than Savage and this is an issue which has not been extensively addressed by the Courts. Under Savage's view, the strength of the amended RICO proves the validity of his approach to the copyright action. The Hustler/Falwell case does not decide whether Savage should win or lose on this issue. The case frames the battleground.

> The parties disagree about the purpose and character of the use. Falwell contends that he sent the parody to his followers to give them information to rebut the statements it contained, and that the appeal for money was ancillary. Hustler contends, however, that the advertisement was clearly a parody so there was nothing to rebut and thus the letters were purely fundraisers.
>
> (*Hustler* at 1152)

1    For any party to this litigation to claim that Savage had no good faith belief, ignores the

2    core dispute in *Hustler*.  It was a legal dispute with new law being outlined but the ultimate

3    decision was fact based.

4    At 5:3-5 of this Court's order, the factual underpinning of the *Hustler* case is cited:

5    It found that Moral Majority had not sold the copyrighted work as its own, but had

6    used it for political comment about the plaintiff and to rebut the plaintiff's

7    personal attack. *Id.* at 1153.

8    (Order 5:3-5)

9    The Order at 5:8-9 noted that "[t]he Ninth Circuit concluded that Moral Majority's

10   copying of the entire parody was reasonably necessary to provide such comment ..."   Again, this

11   is a fact based determination.

12   The above is one ground where plaintiff respectfully submits *fact finding* was necessary

13   to resolve this case.  And again, plaintiff submits that this fact finding should have been done at a

14   summary judgment stage.

15   In addition, the Court evaluated *Harper & Row* in terms of how plaintiff's allegations

16   differ from those in the cited case.  The Court pointed out that CAIR did not "purloin" the tapes

17   and that Savage was the first to broadcast them.  While in *Harper & Row* the factual issue was

18   whether the Nation stole the right to first publication, the case was not limited to that factual

19   scenario.

20   The Court and plaintiff disagree as to how broad *Harper & Row* is in terms of the inquiry.

21   There is no case defining this point and plaintiff had the right to raise this point and explore it.

22   No attorneys should be chided for exploring this point.

## CAIR FAILED TO MEET AND CONFER

24   Federal Rule of Civil Procedure 54-6 (Motion for Attorney's Fees) requires that

25   "[c]ounsel for the respective parties must meet and confer for the purpose of resolving all

26   disputed issues relating to attorney's fees before making a motion for award of attorney's fees."

28   Opposition to Motion for Award of Fees                    18

This has not taken place.  As the declaration of Daniel Horowitz shows, he was contacted by Matt Zimmerman to discuss fees.  Horowitz indicated to Zimmerman that Michael Savage's attorney, Ian Boyd would be the right person to speak with.  Horowitz noted that Ian Boyd was a strong proponent of the First Amendment and would share a common ground with Mr. Zimmerman in this regard.

Within a minute of getting off the telephone with Matt Zimmerman, Horowitz called Ian Boyd, discussed their settlement position.  Horowitz asked Ian Boyd to initiate contact with Matt Zimmerman.  As shown by the declaration of Ian Boyd, Ian Boyd called Matt Zimmerman to discuss settlement.  This was within minutes of when Matt Zimmerman had called Horowitz.  If Zimmerman were seriously seeking to discuss settlement with Horowitz, he should have been equally prepared to do so with Ian Boyd.

As shown by the Declaration of Ian Boyd, on August 26, 2008 he spoke briefly with Matt Zimmerman and Zimmerman stated that he was not yet prepared to discuss settlement. Zimmerman sent an e-mail saying that he was consulting with his clients and would contact Ian Boyd the next day. Zimmerman failed to do this.  On August 28, he again spoke with Mr. Zimmerman, and Zimmeran again advised Ian Boyd that he was not yet in a position to meet and confer regarding the Fees Motion.  The next day, without ever meeting and conferring, CAIR filed this fee motion.

This does not constitute a good faith effort to resolve the matter.  It is just the opposite.  It is a bad faith effort not to resolve the matter and to create the barest modicum of contact to try to get around FRCP 54-6.  It seems deliberate.

## CAIR'S ATTORNEYS CONSISTENTLY HAVE
## AVOIDED MEETING AND CONFERRING

This is not the first time that CAIR has failed to meet and confer.  This intransigence is a pattern of CAIR's attorneys as they seem to have wanted to force this lawsuit to be filed and to be litigated.

Opposition to Motion for Award of Fees                    19

On November 28, 2007, Daniel Horowitz mailed and faxed a letter to CAIR in Washington, D.C. (Exhibit 4). This letter gave CAIR notice that Michael Savage was asserting copyright protections to his work. No response was ever received to this letter. Had there been a response this lawsuit may never have been filed.

On December 16, 2007, Daniel Horowitz sent a letter to the attorney for CAIR-Texas, Mr. Hamideh Khalid. (Exhibit 5) As the case was originally assigned to Magistrate Spero, Horowitz gave notice to Hamideh Khalid of this transfer. He also attached the scheduling order of this court. The letter also stated that "We need to exchange initial disclosures and meet and confer regarding scheduling and discovery. I would like to do this as quickly as possible so that when we appear before Judge Illston we are fully prepared too resolve any issues in dispute and to create a realistic litigation/discovery schedule." This Court's standing orders were also attached. The letter then asked Mr. Khalid to contact Horowitz. No contact was ever made.

On January 6, 2008 Horowitz wrote another letter to Mr. Khalid (Exhibit 6). In that letter he reminds Mr. Khalid that although his client was served (Khalid is the agent for service so he knew about the service), he had not responded. Horowitz noted that he could have taken CAIR-Texas' default at that time. Instead of taking the default, Horowitz informed Mr. Khalid that an amended complaint had been filed and would be served. Horowitz ended stating:

> I would like to establish a professional relationship with you and the attorneys for your organization. I hope that in the future you will respond to my letters as there is no benefit in attorney's failing to communicate. Please do not hesitate to contact me if you wish to discuss any matters relating to this litigation.

This letter was ignored (See Declaration of Daniel Horowitz). In addition, the process server found it nearly impossible to serve the Amended Complaint. He had to go to Mr. Khalid's home and chase him to effect service. Rather than meet and confer and cooperate, Mr. Khalid used the letter as an excuse to play cat and mouse with a process server.

When Tom Burke appeared for CAIR Horowitz continued in his efforts to cooperate.

On February 14, 2008 Horowitz sent a letter to Tom Burke (Exhibit 7) where he indicated that:

> ...CAIR is still aggressively confronting advertisers who work with Michael
> Savage.  It is my understanding that they are using the disputed four minutes
> thirteen seconds of material and the same spin that we call misrepresentation in
> order to accomplish this.

The letter then discusses the fact that this "escalates the rhetoric and the real areas of confrontation between the parties."  It discusses the difficulties this caused in trying to "fashion a reasonable resolution" and states that "...it is my experience that a good faith attempt to resolve differences is the better course."   No positive response or even a hint of desire to discuss settlement came in response to this letter.

Despite the failure of CAIR to interact in any reasonable fashion, Horowitz continued to work with Tom Burke on other matters in what at the time seemed to be a reasonable manner.  They discussed the problem with CAIR having many names and changing names and agreed upon a stipulated amendment that named the CAIR entities in a manner that was acceptable to both sides.

Prior to the CMC, Horowitz sent Tom Burke a preliminary list of witnesses and discovery outline.   He asked Tom Burke to review it and to see whether they could agree on a plan to present to the Court at the CMC.   This was a continuation of the attempt by Horowitz to cooperate with opposing counsel.  It is a continuation of what he wrote in his December 16, 2008 letter to Mr. Khalid where he indicated that "[w]e need to exchange initial disclosures and meet and confer regarding scheduling and discovery."   A copy of the "Draft Discovery" prepared by Horowitz and sent to Tom Burke is attached hereto as Exhibit 8.

This too was ignored except that in a subsequent telephone conversation, Tom Burke said that he would go over the draft discovery with his clients.   Nothing was ever said after that.

In a further attempt to cooperate, Daniel Horowitz sent to Tom Burke the entire transcript of the criminal trial in U.S. v. Holy Land Foundation.  He provided this on disk (with the

1  permission of the court reporter), without any request by Mr. Burke.    Horowitz also asked if

2  there was anything else that he could provide.    Again this was done prior to the CMC.   There

3  was never a thanks for this or any reciprocity.

4         On February 14, 2008 Horowitz voluntarily sent preliminary disclosures to Mr. Burke

5  stating:

6         Here is the start of our disclosures.  We agreed to a date a week after the CMC,

7         however, it may be of value for you to have these in advance so I am sending it

8         early. (Exhibit 9)

9         On February 26, 2008 the parties exchanged e-mails (Exhibit 10) agreeing to discuss the

10  joint CMC statement.

11         As the E-mail of February 28, 2008 shows, Horowitz and Burke in fact did prepare a joint

12  CMC statement without any problems between them.   The time sequence is important because

13  Tom Burke has twisted what happened that day and misrepresented what happened to this Court.

14  Burke has claimed that these voluntary disclosures and requests to cooperate were some sort of

15  intimidation.

16         What really happened is as follows:

17         At 8:02 am, Horowitz sent an e-mail to Tom Burke which stated:

18         Tom: This is the broad outlines of where we want to go with our initial discovery.

19         I am attaching the Whitehead Request for Admissions as we will be using that

20         with the irrelevant sections excised. I'll have a CMC draft for you later today.

21         This e-mail and attachment is completely consistent with this Court's meet and confer

22  requirements with respect to the CMC.  This Court's standing CMC order states that "[c]ounsel

23  are directed to confer in advance of the Case Management Conference with respect to all of the

24  agenda items listed below ..."

25         Item 7 of the agenda items is:

26         7. What discovery does each party intend to pursue? Can discovery be

27

28

1    limited in any manner? Are there any alternative methods available to obtain

2    the necessary information? Should a discovery order and conference be entered

3    pursuant to Fed.R.Civ.P 26(f)?

4  And 12:

5    12. What are the earliest reasonable dates for discovery cutoff, pretrial

6    conference and trial?

7    So Tom Burke is now telling this Court that Horowitz attempted to intimidate him with

8  discovery when what really happened was that in mid-February Horowitz voluntarily turned over

9  some of the Rule 26 material before the CMC.  (This included the transcript from the Holy Land

10 Foundation trial) and complied with the Court's meet and confer order by supplying an outline of

11 his discovery plan.  In the follow up e-mail about two weeks later, a more detailed discovery plan

12 and proposed questions were submitted to Mr. Burke.

13   There was no reciprocation from Tom Burke in any manner.  Instead, this continued

14 attempt to cooperate was ignored and now Tom Burke has misrepresented this cooperation by

15 claiming some sort of attempt to intimidate him engineered by Horowitz.    The claim by Thomas

16 Burke that this cooperation was designed to intimidate is a vicious personal attack on plaintiff's

17 counsel and it is not only not justified by the record as shown herein, it is demonstrably false by

18 looking at Horowitz' conduct in other cases in this District.  Exhibit 11 are the disclosures made

19 in Cohen v. Gavin Newsom, CV-08-1443 SI.  Both parties made their disclosures prior to the

20 CMC and both parties agreed to a limited deposition, limited summary judgment motion so that

21 the key disputed issue could be resolved prior to any extensive litigation.

22   Exhibit 12 is an e-mail from a case in the Eastern District, Ambrose v. Coffey, 2:08-cv-

23 01664-LKK-GGH.  This is yet another example of Horowitz providing discovery to opposing

24 counsel before the CMC.  Exhibit 13 is yet another e-mail referencing the voluntary providing of

25 two DVD's of discovery to opposing counsel in a Northern District case, Origel v. Northwestern,

26 C05-04633 JCS.  It is just wrong to say that Daniel Horowitz tried to intimidate CAIR by being

27

28  Opposition to Motion for Award of Fees                23

1    cooperative.  It is just how this counsel litigates.

2        Exhibit 14 is a small example of where counsel suggested that electronic copies of

3    discovery requests be exchanged to simplify the response process that requires that the question

4    be repeated along with any response.  This too was ignored.

5        Exhibit 15 is yet another e-mail (March 20, 2008) seeking to discuss settlement.  This too

6    was ignored.

7        Therefore it is truly a gratuitous attack for Tom Burke to say that "...Savage's counsel

8    delivered to CAIR proposed discovery that confirmed Savage's intent to use the litigation

9    process to harass CAIR and its associates." (Motion 9:9-11).  Burke makes it appear that the

10   context was that this was filed before the Rule 12 motion instead of the truth, that it was sent to

11   him cooperatively in the time period when they were preparing for the CMC.  He ignores all of

12   the attempts that Horowitz made to resolve the case and the attempts that Horowitz made to

13   discuss the ongoing dispute between the clients.

14       On March 6, 2008 the parties completed their joint CMC.

15       On March 20, 2008 Horowitz sent another settlement exploring e-mail (Exhibit 15) but

16   Tom Burke not only ignored yet another attempt to start a settlement process but sought to stall

17   the Court ordered process.  He asked Horowitz to join in stalling the ADR but Horowitz refused

18   stating "I don't want to be in a position of actively seeking to derail a negotiation process."

19   (Exhibit 16)

20       Tom Burke then filed an *Ex Parte* motion with this court seeking to block the mediation

21   process from going forward.  He succeeded in this but that does not mean that this was the proper

22   choice.   If the Court had known of CAIR's refusal to even respond to settlement and/or

23   discussion requests, the Court may not have been as quick to grant the motion.

24       The truth is that CAIR's attorneys have never responded to any attempts to resolve the

25   dispute.  They have ignored all attempts to sit down and talk. They have ignored all attempts to

26   narrow issues or plan discovery.  The only cooperation was in writing a CMC statement.  Other

27

28   Opposition to Motion for Award of Fees                24

1    than that, all attempts to meet and confer have been one way.

2         Now, with this motion, they have essentially feigned an attempt to meet and confer

3    making the filing of this motion a necessity.  They have then filled this motion with personal and

4    fraudulent attacks on plaintiff's counsel and with attacks on Michael Savage which focus on the

5    content of Savage's website.

6         In particular, the attacks by CAIR focus heavily on Savage's political views under the

7    guise of CAIR making points to its motion.  It appears to this writer that CAIR's attorneys are

8    arrogantly and MISTAKENLY thinking that a political appeal showing that Savage has strong

9    political views somehow has an impact on the outcome of this motion.

10   **Conclusion**

11        Plaintiff further submits that his counsel's attempts to meet and confer have gone abovfe

12   and beyond that expected of counsel and that defendants have maligned that cooperative

13   attititude and have maliciously spun it to attempt to deceive this Court.   Plaintiff submits that

14   defendant did a mock meet and confer on the fee aspect of this motion as it suited its purpose to

15   have a contentious motion with a false allegations and a political appeal for fees.

16        The bloated alleged fees are not fees they are an attempt to obtain a political sanction,

17   ironically for Savage expressing his views on his website.   Defendant should receive nothing for

18   this bad faith petition.  Further, if the Court agrees that CAIR and its attorneys have maliciously

19   maligned plaintiff's counsel, filed this petition with a bad faith basis for absurd fees and have

20   deliberately fudged the meet and confer, Rule 11 or other sanctions should be awarded against

21   CAIR.

23   Dated: October 18, 2008

25                                    _____
                                            Daniel Horowitz
26                                     Attorney for Plaintiff - Michael Savage

28   Opposition to Motion for Award of Fees                    25