DANIEL A. HOROWITZ State Bar No. 92400
Attorney at Law
P.O. Box 1547
Lafayette, California 94549
(925) 283-1863


Attorney for Plaintiff


# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA


MICHAEL SAVAGE,

                   aka (Michael Weiner)

                          No. 3:07 cv 06076

        Plaintiff,


                  vs.

Counsel on American-Islamic
Relations, Inc. and Does
1-100

        Defendants.

_____/


     I, Daniel Horowitz declare as follows:

**Settlement Attempts**

     1. Exhibit 4 is a true and correct copy of the letter that I mailed and faxed to CAIR before

the lawsuit was filed. There was no response to this letter.

     2. This was not the only attempt to communicate with CAIR prior to the filing of the

lawsuit. Michael Savage's syndicator sent a similar letter which was likewise ignored.

3. Before the lawsuit was filed I reviewed the legal issues with Martin Garbus who is one of the most experienced First Amendment attorneys in the United States. I also consulted with Ian Boyd who is Michael Savage's copyright and business attorney. Ian Boyd has an extraordinary background in copyright law and related matters.

4. I then researched the background of CAIR to confirm with hard evidence the fact that CAIR was not only founded by members of Hamas but continued to function as an Hamas outlet in the United States. During this case I interviewed the attorneys and investigators involved in the major United States cases involving CAIR and terror groups. I reviewed the allegations in the O'Neill case out of New York and the Boim case that (although reversed on appeal), had led to a massive award against Hamas and its related groups.

5. When the case was filed, CAIR continued to ignore me. The letters attached as Exhibits 5-6 were sent to CAIR's attorney, Mr. Khalid but ignored me. The Texas branch that Khalid represents is particularly important because it is the branch of CAIR that originally hosted and housed CAIR's computer system along with the branch in Santa Clara. This was the branch most directly tied to terror convictions. It was also a branch involved with many of the founding members of CAIR.

6. As Exhibit 6 shows, I could have taken the default against CAIR in Texas but I did not. Instead, I informed CAIR's attorney and agent for service that I was amending the complaint to name additional CAIR related entities and that I would be reserving them.

7. Mr. Khalid, despite being an attorney and having an office, was never available for the reservice. It seems that he took the knowledge that I was amending and not taking his client's default as an invitation to play hide and seek.

8. When Thomas Burke contacted me we reached agreement on which corporate entities using the name CAIR would be included in this lawsuit. He agreed to represent all these parties under the name CAIR. I broached settlement at that time and in virtually all conversations that we

had during the pendency of this case.

9. During this same time period I continued to investigate CAIR and it became obvious that they were receiving millions of dollars in funding from Saudi Arabia, Dubai and Kuwait. I informed Michael Savage that CAIR was refusing to even discuss settlement and that they likely had unlimited funding for this case.

**Legal Fees**

10. Now that the case is finished I can represent to this Court that my bills (including the billings for my paralegal) approximately $ 30,000.00. The amount might even be less as I didn't break it out that specifically. It certainly wasn't more. The real work in the case was unraveling the intricate web of CAIR. To accomplish this, I reviewed thousands of pages of documents, the entire transcript of U.S. v. Holy Land Foundation, documents from the O'Neill and Boim cases. My paralegal also reviewed thousands of pages. My investigator made a large number of FOIA requests and received hundreds of pages of documents responsive to these requests. When I compare my bills to those submitted by CAIR's "pro bono" attorneys I can only think that their bills are absurd. Absurd is the kindest word I can use for them. Being completely honest, to me it seems close to fraudulent.

**Client's Motivation Not Financial**

11. If we had prevailed on this case, it was Michael Savage's intention to use the money received to set up a foundation to fund conservative First Amendment causes. In fact he has done that with the money donated in this case. His motive was never to gain money from the lawsuit. He genuinely believed and believes that CAIR is a dangerous organization. His motivation is not that he "disagrees" with CAIR but that he fears what CAIR will do to this country. While opposing counsel may feel comfortable with his view that CAIR is a civil rights organization, Michael Savage has the right to believe and does believe, that the evidence establishes otherwise.

**There Was No Intimidation by This Attorney**

12. Exhibits 11-13 are letters and documents that I have sent in other cases in the U.S. District Court. I have a practice of giving the other side as much discovery as have at a given time even if they do not request it. My background is criminal law and most of my career was spent in Alameda County. As many people know, criminal law attorneys tend to cooperate more with each other than civil attorneys. In addition, in Alameda County the informal cooperation system was almost an institution. It arose from years of cooperation and leadership during the tenures of D. Lowell Jensen and Jim Hooley when they were District Attorney and Public Defender (respectively). The established a premise for working together that they enforced in their offices. The rule was simple. You be professional and cooperative outside of the courtroom and fight as hard as you can in the courtroom. Among the informal rules that they established is that you do not play games with discovery and that you give the other side what they are entitled to even if they don't ask. When I first started, this rule was communicated to me by judge Stanley P. Golde who said "Don't ever &$%$ with the D.A. unless it is the last case you want to do in this county." He didn't mean don't fight hard, he meant don't cheat. In all my communications with Tom Burke I attempted to meet that ethical standard. I intended to treat Tom Burke with respect and to foster an atmosphere of cooperation that would lead to a possible resolution of the dispute. I have attached the series of letters and emails that I sent to Tom Burke and in the motion itself I have explained the context.

12. I have adopted this way of practice and throughout my career I have easily and/or voluntarily provided discovery, worked with other counsel on scheduling and then fought as hard as I possibly could in the courtroom. I did this in the CAIR case as I always do. Tom Burke's characterization of my conduct and his spin to make it a type of intimidation, is insulting. Perhaps he was intimidated by something that he was unfamiliar with. Cooperation.

13. This is the same cooperation that I extended to Mr. Khalid when I sent him this Court's standing orders and did not take his client's default when I could have.

14. I presently have litigation regarding a construction defect on my own house. I have

given the other attorneys my expert's cell phone number and have invited them to call him and consult anytime they want. I have given them carte blanche to come to the house and inspect (and they have taken me up on this offer).

15. As a further exhibit I have attached a letter that I sent to opposing counsel in a Northern District case where I made an very earlier disclosure of my potential witnesses.

16. During all of my telephone calls with Tom Burke he was professional and courteous. However, he never made any effort to settle this case or to even discuss the issues. He never reciprocated with discovery production, narrowing of issues or in any substantial manner. This did not bother me as I did not extend my courtesies in the expectation of obtaining a quid pro quo.

14. I tried to call a "cease fire" so that we could get the settlement process going. He agreed to consult his clients but this offer was refused.

15. After the Rule 12 motion was filed and argued, Tom Burke tried to put a stop to the settlement process. I refused to stop it. I felt that the case would being going forward on the RICO cause of action if not both. In my experience cases settle in a process and that process should be started as soon as possible. This allows the attorneys to find the sticking points in a case and to resolve them factually or legally. It allows the clients to get to know each other and in many cases (as corny as it may seem), the getting to know process sometimes creates a grudging respect and encourages settlement.

16. Tom Burke made an ex parte application to stall the settlement process and succeeded. Perhaps he was correct legally but in the context of the refusal of CAIR to even begin discussion it seemed to me to be somewhat unreasonable. As I see it, his ex parte application (in the context in which it was filed) made it seem like we did poorly on the Rule 12 argument so now we wanted to push settlement. In fact it was not that, I was continuing a process of attempting to initiate discussion and this attempt on my part had started at the inception.

**Development of Factual Allegations in Complaints**

17. The initial lawsuit relied heavily on the O'Neill case but as the case developed I was able to prepare a fact based pleading (Exhibit 1 with Exhibit 2 being the exhibits) which details how CAIR was formed by Hamas in 1993-1994. I have documents obtained by the F.B.I. and transcripts of surveillance recordings where the concept of CAIR was discussed. The subject matter was very complex and I was not an expert in "CAIR" or the organization structure and financing of international Islamist organizations. It took time and effort to develop a highly cogent and organized theory that was fact and evidence based. This is reflected in the Amended RICO cause of action which unfortunately was not filed.

18. Since the last court appearance I have been able to establish with evidence that CAIR was formed by Hamas for the specific purpose of promoting the interests of Hamas in Palestine. This is explicit in the transcripts and documents. I also have the transcripts of an FBI surveillance where CAIR founders discuss how American Muslims will reject them if their true beliefs are known. They decide to imitate the civil rights organization of James Zogby in order to present an acceptable face to the American Muslim population. The discuss how the charitable aspects of their work in America yield few political results (as contrasted with the success of the Hamas charities in Palestine).

## The RICO Claim Has Vitality Even Absent a Copyright Claim

19. I have included in the not filed amended RICO, which documents these allegations through a detailed history, reasoning and with evidence. It also addresses the Noerr-Pennington and First Amendment issues that had previously been raised by this Court.

20. It is my belief that CAIR functions in a manner similar to the Ku Klux Klan. I am aware that this analogy stands directly in contrast to CAIR's claim that it is the Arab American NAACP. I believe that the conduct of CAIR with respect to Michael Savage is the modern day version of a cross burning. I believe that the Amended RICO if filed would make a strong argument that the conduct of CAIR is unprotected just as the conduct of cross burners was unprotected in *Virginia v. Black*, , 538 U.S. 343 (2003). In that case, the Supreme Court held that

a statutory prohibition of cross-burning with the intent to intimidate did not violate cross burner's right to freedom of speech, since the statute banned intentional intimidating conduct rather than expression. I had hoped that this Court would reassess its ruling on the Copyright Claim in light of the more detailed pleading. I have no doubt that even without the copyright claim, the RICO action would have gone forward.

21. The case was not only filed in good faith but I believe that as the case developed, this Court would have seriously reconsidered its original view. After all, I had only several weeks to prepare my presentation. If I am correct about CAIR deliberately creating a civil rights persona to hide more sinister conduct, they have had years to perfect that persona. A few weeks of preparation is not enough to complete pierce that veil.

22. I cannot personally comment on the failure of CAIR to meet and confer on fees except to say that I was called by Matt Zimmerman on this point and I asked that he discuss settlement with Michael Savage's business attorney, Ian Boyd. As soon as my call with Matt Zimmerman ended, I called Ian Boyd and asked him to contact Matt Zimmerman. I told him that although I personally wanted the case to go forward, it was in everyone's best interests to settle. I told Mr. Boyd that the "big firm" (Tom Burke) had claimed to be working "pro bono". I suggested that the "big firm" forgo fees and that instead, we make a sizable donation to the Electronic Frontier Foundation.

23. I disagree with the position of the EFF on this case but I have supported their efforts in the past. In fact, I donated my time to this organization on the "Eric Corley" vs. Motion Picture Association case where they sued him for developing and/or distributing the code that allowed the copying of encrypted DVD's. This code was later repackaged and sold by the company (DVDxCOPY?) that argued its case before this Court.

24. Therefore, I can assure the Court that my call to Ian Boyd had a level of strength in suggesting settlement (despite my disappointment in not going forward). Ian Boyd and I discussed

What happened (or did not happen) after that is contained in the Declaration of Ian Boyd.

23. Plaintiff's decision not to go forward in this case followed the assassination Democratic Party Chairman Bill Gwatney at the party's headquarters in Little Rock, Arkansas and the discovery during our investigation of the fact that Civil Rights Coordinator of CAIR-California, Affad Shaikh had been questioned (in late 2007) about his alleged involvement in a plot to assassinate President Bush. Prior to this there had been threatening telephone calls which appeared related to this case, including one which contained only gunshots. In addition, Michael Savage's home address has been published on the internet and he has received unsolicited personal mail at these addresses.

24. Michael Savage's wife was always concerned about his safety. She was well aware of the murder of a radio talk show host in Denver, Colorado. That person was Alan Berg. Berg was known for taking a strong stand on many topics and was, at times, abrasive and combative to callers and guests who held opposing views. Berg, was assassinated in his driveway on the evening of June 18, 1984.

25. When the CAIR case was filed and the threats started, Savage had full time security not only for himself but for his wife and her employees. His wife manages a major corporation and locally they have many employees.

25. Following the assassination of Mr. Gwatney, Michael Savage's wife asked me a simple question. Can I directly connect CAIR to Hamas. Not just associate them but connect them to show that they are the same. I answered "Yes".

26. After a flurry of calls, I received the final call from Michael Savage. He told me, "Dan, I don't really care what happens to me but I can't do this to my wife. Pull the plug." I did.

27. Had we continued, I believe that we would have prevailed on the RICO claim and once the Court had the opportunity to review the new RICO filing I intended to see if there was a way to ask this Court to reconsider its ruling on the copyright claim.

**Sanctions**

file:///C|/civil/Savage%20c%20drive/Fee%20Motion/DECLARATION.htm

28. To this writer, the request for fees is outrageous. In all honesty, it appears to me to be a blatant, **insulting** and absurd attempt to use political appeals to obtain an punitive sanction under the guise of a fee award. The deliberate attempt to feign a meet and confer underscores the desire of CAIR's attorneys to make this political appeal. If the Court agrees, I respectfully request that sanctions under Rule 11 or as otherwise appropriate, be imposed against CAIR's attorneys.

I declare the above to be true and correct under penalty of perjury. Executed this October 23, 2008 at Stockton, California.

_____
Daniel Horowitz